JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GREENWOOD GAMING & ENTERTAINMENT, INC.

**(b)** County of Residence of First Listed Plaintiff   NA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gary Samms & Richard Limburg, OBERMAYER, 1500 Market St., Ste. 3400, Phila., PA 19102; 215-665-3000

## DEFENDANTS

POM OF PENNSYLVANIA, LLC; PACE-O-MATIC, INC.; and MIELE MANUFACTURING. INC.

County of Residence of First Listed Defendant   NA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Matthew H. Haverstick, KLEINBARD LLC, 1717 Arch St., 5th Fl. Philadelphia, PA 19103; 215-568-2000
Marc F. Lovecchio, MCCORMICK LAW FIRM, 835 W. Fourth St., Williamsport, PA 17701; 570-326-5131

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC sec. 1125 (Lanham Act)

Brief description of cause:
Lanham Act false advertising claim and related state tort causes of action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Excess of $50k

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/04/2022

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ **2999 Street Road, Bensalem, PA 19020** _____

Address of Defendant: _____ 3870 Peachtree Industrial Blvd., Ste. 340-194, Deluth, GA 30096 | 3450 Corporate Way, Duluth GA 30096 | 535 E. Third Street, Williamsport, PA 17701 _____

Place of Accident, Incident or Transaction: _____ **Bucks County** _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __11/4/22__     _[signature]_     **309565**
    *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* __15 USC sec. 1125 (Lanham Act)__

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* ____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____     Sign here if applicable     _____
    *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 2:22-cv-4434 |
|  | : |  |
| *Plaintiff,* | : |  |
| v. | : |  |
|  | : |  |
| POM OF PENNSYLVANIA, LLC, PACE-O-MATIC, INC., and MIELE MANUFACTURING, INC., | : |  |
|  | : |  |
| *Defendants.* | : |  |

**POM OF PENNSYLVANIA, LLC AND PACE-O-MATIC, INC.'S
<u>NOTICE OF REMOVAL</u>**

PLEASE TAKE NOTICE THAT under 28 U.S.C. §§ 1441 and 1446,

Defendants POM of Pennsylvania, LLC and PACE-O-MATIC, Inc. (jointly, the

"POM Defendants") hereby remove this action from the Philadelphia County Court

of Common Pleas to the United States District Court for the Eastern District of

Pennsylvania. In support of this Notice of Removal, the POM Defendants aver as

follows:

**I.   PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS**

1.     On April 7, 2022, Plaintiff Greenwood Gaming & Entertainment, Inc.,

d/b/a Parx Casino (hereafter, "Parx") filed a praecipe to issue writ of summons in

the Philadelphia County Court of Common Pleas (Exhibit "A").

2.     On the same day, the Court of Common Pleas issued a writ of

summons against the POM Defendants (*Id.*).

3.      A party in Pennsylvania may commence an action by filing a praecipe for writ of summons. *See* Pa.R.C.P. 1007(1).

4.      A writ of summons is not, however, an initial pleading that permits removal under 28 U.S.C. § 1446. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223 (3d Cir. 2005).

5.      On July 12, 2022, the Court of Common Pleas issued a case management order (Exhibit "B").

6.      On August 8, 2022, the Court of Common Pleas issued a show-cause order, which, among other things, directed Parx to show cause at a hearing why the matter should not be dismissed for failure to file a complaint; however, the order also permitted Parx to file a complaint on or before October 10, 2022 to avoid the need for the show cause hearing (Exhibit "C").

7.      On October 7, 2022, Parx filed a complaint against the POM Defendants and Miele (Exhibit "D").

8.      Parx served the complaint on the POM Defendants via the Court of Common Pleas' e-filing system, meaning the POM Defendants first received the complaint on October 7, 2022 (the same day it was filed).

9.      In the complaint, Parx pleads four counts: (1) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) common law unfair competition; (3) tortious interference with business relations; and (4) negligence per se.

10.     In general, Parx alleges Defendants unlawfully compete with Parx, a casino, through the manufacture, sale, and leasing of certain games that Parx

alleges are unlawful slot machines (these allegations are, strenuously denied by the POM Defendants).

11.     As the complaint concerns the Lanham Act claim in particular, Parx alleges the Defendants falsely advertise their games as "legal" under Pennsylvania law.

## II.     GROUNDS FOR REMOVAL

12.     This Court has subject matter jurisdiction over this matter, and the complaint could have been originally commenced in this Court, based on federal question jurisdiction under 28 U.S.C. § 1331.

13.     This is so because Count I—entitled "Federal False Advertising (Lanham Act)"—avers a claim arising under the laws of the United States; specifically, the Lanham Act, 15 U.S.C. § 1125(a)(1). *See* Compl. ¶¶ 98-129.

14.     For this reason, this Court has jurisdiction under 28 U.S.C. § 1331.

15.     Further, the Court has supplemental jurisdiction over Counts II-IV under 28 U.S.C. § 1367, since they are so related to the claim over which this Court has original jurisdiction that they form part of the same case or controversy.

## III.     THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

16.     All of the other procedural requirements for removal to this Court have been satisfied.

17.     First, the POM Defendants have the power to remove this civil action since they are named Defendants in the complaint and they have been served with the complaint.

18.     Second, this action is being removed within 30 days after the receipt by the POM Defendants, through service on October 7, 2022, of a copy of the initial pleading—i.e., the complaint—setting forth the claim for relief upon which such action or proceeding is based. *See* 28 U.S.C. § 1446(b)(1).

19.     Third, removal to the District Court for the Eastern District of Pennsylvania is proper because it is the district court that embraces Philadelphia County, where the action was originally commenced. *See* 28 U.S.C. § 1441(a).

20.     Fourth, Defendant Miele Manufacturing, Inc., who has been named as a defendant in the complaint, consents to removal. *See* 28 U.S.C. § 1441(b)(2)(A). Attached hereto as Exhibit "E" is written consent from Defendant Miele, consenting to removal of this civil action.

21.     After filing this Notice of Removal, the POM Defendants will promptly serve written notice of this Notice of Removal on counsel for Plaintiff Parx and for Defendant Miele and file the same with the Prothonotary of the Philadelphia County Court of Common Pleas in accordance with 28 U.S.C. § 1446(d).

22.     True and correct copies of all process, pleadings, and orders served on the POM Defendants in the action pending in the Philadelphia County Court of Common Pleas are attached.

**IV.     NON-WAIVER OF DEFENSES**

23.     By removing this action from the Philadelphia County Court of Common Pleas, the POM Defendants do not waive any defenses available to them.

24.     By removing this action from the Philadelphia County Court of Common Pleas, the POM Defendants do not admit any of the allegations in Plaintiff's complaint.

WHEREFORE, the POM Defendants remove the above-captioned action from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Dated: November 4, 2022

*/s/ Edward T. Butkovitz*
Matthew H. Haverstick (No. 85072)
Edward T. Butkovitz (No. 309565)
Shohin H. Vance (No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
ebutkovitz@kleinbard.com
svance@kleinbard.com

*Attorneys for the POM Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Notice

of Removal to be served via U.S. mail and email, on the following:

Gary Samms, Esq.
Richard Limburg, Esq.
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Gary.Samms@obermayer.com
Richard.Limburg@obermayer.com

*Attorneys for Plaintiff Greenwood Gaming & Entertainment, Inc.*

Marc F. Lovecchio, Esq.
McCORMICK LAW FIRM
835 West Fourth Street
Williamsport, PA 17701
mlovecchio@mcclaw.com

*Attorney for Defendant Miele Manufacturing, Inc.*

Dated: November 4, 2022                    */s/ Edward T. Butkovitz*
                                           Edward T. Butkovitz

# EXHIBIT "A"

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By:     Gary Samms, Esquire (Attorney I.D. 58096)
        Gary.Samms@obermayer.com
        Richard Limburg, Esquire  (Attorney I.D. 39598)
        Richard.Limburg@obermayer.com
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102                     Counsel for Plaintiff
(215) 665-3000



| | |
|---|---|
| GREENWOOD GAMING<br>& ENTERTAINMENT, INC.<br>2999 Street Road<br>Bensalem, PA 19020<br><br>                         Plaintiff,<br><br>v.<br><br>POM OF PENNSYLVANIA, LLC<br>1001 State Street,<br>Erie, PA 16501,<br><br>PACE-O-MATIC, INC.,<br>3450 Corporate Way<br>Duluth, GA 30096,<br><br>                         Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>                 TERM, 2022<br><br>NO.: |

### PRAECIPE TO ISSUE WRIT OF SUMMONS

**TO THE PROTHONOTARY**

        Please issue a Writ of Summons in the above-captioned matter.

                        Respectfully submitted,

                        **OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

                        By:     /s/ Richard Limburg
                                Gary Samms, Esquire (Attorney I.D. 58096)
                                Richard Limburg, Esquire  (Attorney I.D. 39598)

Dated: April 8, 2022

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By:    Gary Samms, Esquire (Attorney I.D. 58096)
       Gary.Samms@obermayer.com
       Richard Limburg, Esquire  (Attorney I.D. 39598)
       Richard.Limburg @obermayer.com
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102                         Counsel for Plaintiff
(215) 665-3000

| | |
|---|---|
| GREENWOOD GAMING<br>& ENTERTAINMENT, INC.<br>2999 Street Road<br>Bensalem, PA 19020 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff, | TERM, 2022<br><br>NO.: |
| v. | |
| POM OF PENNSYLVANIA, LLC<br>1001 State Street,<br>Erie, PA 16501, | |
| PACE-O-MATIC, INC.,<br>3450 Corporate Way<br>Duluth, GA 30096, | |
| Defendants. | |

## WRIT

**To:**    POM OF PENNSYLVANIA, LLC
          1001 State Street
          Erie, PA 16501 and 3450 Corporate Way, Duluth GA 30096

       You are notified that the Plaintiff, Greenwood Gaming & Entertainment, Inc., has
commenced an action against you.

SEAL                          Eric Feder

Date:                   By:    _____
                               Eric Feder, Director, Office of Judicial Records

220400660
07 APR 2022 04:24 pm
S. RICE

Case ID: 220400660

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By:     Gary Samms, Esquire (Attorney I.D. 58096)
        Gary.Samms@obermayer.com
        Richard Limburg, Esquire  (Attorney I.D. 39598)
        Richard.Limburg @obermayer.com
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102                    Counsel for Plaintiff
(215) 665-3000

| | |
|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC. 2999 Street Road Bensalem, PA 19020 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | TERM, 2022 |
| v. | NO.: |
| POM OF PENNSYLVANIA, LLC 1001 State Street, Erie, PA 16501 | |
| PACE-O-MATIC, INC., 3450 Corporate Way Duluth, GA 30096, | |
| Defendants. | |

## WRIT

**To:**     PACE-O-MATIC, INC.
        3450 Corporate Way
        Duluth, GA 30096

    You are notified that the Plaintiff, Greenwood Gaming & Entertainment, Inc., has commenced an action against you.

SEAL                                Eric Feder

Date:

           By: _____
                        Eric Feder, Director, Office of Judicial

220400660
07 APR 2022 04:24 pm
S. RICE

4888-4068-6106 v1

Case ID: 220400660

# **ADDRESSES**

**PLAINTIFF:**
GREENWOOD GAMING
& ENTERTAINMENT, INC.
2999 Street Road
Bensalem, PA 19020

**DEFENDANTS:**
POM OF PENNSYLVANIA, LLC
1001 State Street
Erie, PA 16501 and 3450 Corporate Way
Duluth, GA 30096

PACE-O-MATIC, INC.,
3450 Corporate Way
Duluth, GA 30096

# EXHIBIT "B"



**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION**

| | |
|---|---|
| *GREENWOOD GAMING & ENTERTAINMENT, INC.*<br>*VS*<br>*POM PENN* | *April Term 2022*<br>*No. 00660* |

*COMMERCE PROGRAM
CASE MANAGEMENT ORDER
STANDARD TRACK*

DOCKETED
TRIAL DIVISION - CIVIL
12-JUL-2022
**R. POSTELL**

**AND NOW**, 12-JUL-2022, it is Ordered that:

1. The case management and time standards adopted for Commerce Program, standard track cases shall apply and are incorporated.

1. All *Discovery* shall be completed not later than *01-MAY-2023*.

2. *Plaintiff(s)* shall identify and submit *Curriculum Vitae and Expert Reports* for all expert witnesses intended to testify at trial to all other parties not later than *01-MAY-2023*.

3. *Defendant(s) and any additional defendant(s)* shall indentify and submit *Curriculum Vitae and Expert Reports* for all expert witnesses intended to testify at trial to all other parties not later than *05-JUN-2023*.

4. All *Pretrial Motions* (other than Motions in Limine) shall be filed not later than *20-JUN-2023*.

5. A *Settlement Conference* may be scheduled any time after *07-AUG-2023*.

6. A *Pretrial Conference* may be scheduled any time after *05-SEP-2023*.

7. *It is expected that the case will be ready for trial 02-OCT-2023*, which is the earliest trial date pursuant to Pa.R.C.P. 212.1 and counsel should anticipate trial to begin expeditiously thereafter.

8. All counsel are under a continuing obligation and are hereby Ordered to serve a copy of this Order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this order.

*BY THE COURT:*

_____

*RAMY DJERASSI, J.*
*TEAM LEADER*

RCP94649 (dfccs – rev 12/13 qa)

# EXHIBIT "C"

RECEIVED

AUG - 8 2022

ROOM 521

IN THE COURT OF COMMON PLEAS
COUNTY OF PHILADELPHIA
CIVIL TRIAL DIVISION

| | | | |
|---|---|---|---|
| Greenwood Gaming and Entertainment, | : | April Term, 2022 | |
| *Plaintiff* | : | No, 00660 | **DOCKETED** |
| vs. | : | Commerce Program | AUG - 8 2022 |
| | : | | R. POSTELL |
| POM Pennsylvania | : | | COMMERCE PROGRAM |
| *Defendant* | : | | |

ORDER

And now this ___8___ day of August, 2022, a RULE TO SHOW CAUSE is issued to

Plaintiff who is ORDERED to timely prosecute the above captioned matter or face dismissal

with prejudice. The RULE requires Plaintiff TO SHOW CAUSE why a *nol pros* shall not be

entered for failure to file a complaint.

The Rule is Returnable on _Fri. Oct 14_, 2022 at _2:00_ pm and shall take

place in Courtroom 646, City Hall, Philadelphia.

If Plaintiff files its complaint and it is docketed prior to _Mon Oct. 10,_ 2022, counsel's

appearance will not be required and future deadlines will be governed by a Case Management

Order that will be issued in due course.

BY THE COURT

_____
RAMY I. DJERASSI, J.

ORDER-Greenwood Gaming



22040066000018

# EXHIBIT "D"

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By: Gary Samms, Esquire (Attorney I.D. 58096)
   Gary.Samms@obermayer.com
   Richard Limburg, Esquire  (Attorney I.D. 39598)
   Richard.Limburg @obermayer.com
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102
(215) 665-3000

*Filed and Attested by the Office of Judicial Records 07 OCT 2022 10:27 am A. STAMATO*

           Counsel for Plaintiff

| | |
|---|---|
| GREENWOOD GAMING<br>& ENTERTAINMENT, INC.<br>2999 Street Road<br>Bensalem, PA 19020<br>     Plaintiff,<br><br>v.<br><br>POM OF PENNSYLVANIA, LLC<br>1001 State Street,<br>Erie, PA 16501,<br><br>PACE-O-MATIC, INC.,<br>3450 Corporate Way<br>Duluth, GA 30096, and<br><br>MIELE MANUFACTURING, INC.<br>535 E. Third Street<br>Williamsport, PA  17701<br>     Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>April TERM, 2022<br><br>NO.: 00660<br><br>CIVIL ACTION |

<table>
<tr>
<td>

**NOTICE**

 You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**PHILADELPHIA BAR ASSOCIATION**
**LAWYER REFERRAL AND INFORMATION SERVICE**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**Telephone:  (215) 238-1701**

</td>
<td>

**AVISO**

 Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecencia escrita en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**ASOCIACIÓN DE LICENCIADOS DE FILADELFIA**
**SERVICIO DE REFERENCIA E INFORMACIÓN LEGAL**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**Teléfono:  (215) 238-1701**

</td>
</tr>
</table>

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By:    Gary Samms, Esquire (Attorney I.D. 58096)
        Gary.Samms@obermayer.com
        Richard Limburg, Esquire  (Attorney I.D. 39598)
        Richard.Limburg @obermayer.com
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102               Counsel for Plaintiff
(215) 665-3000

| | |
|---|---|
| GREENWOOD GAMING<br>& ENTERTAINMENT, INC.<br>2999 Street Road<br>Bensalem, PA 19020<br>           Plaintiff,<br><br>v.<br><br>POM OF PENNSYLVANIA, LLC<br>1001 State Street,<br>Erie, PA 16501,<br><br>PACE-O-MATIC, INC.,<br>3450 Corporate Way<br>Duluth, GA 30096,<br><br>and<br><br>MIELE MANUFACTURING, INC.<br>535 E. Third Street<br>Williamsport, PA  17701<br><br>          Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>April TERM, 2022<br><br>NO.: 00660<br><br>CIVIL ACTION |

## <u>COMPLAINT</u>

Plaintiff Greenwood Gaming and Entertainment, Inc., d/b/a Parx Casino ("Parx Casino") commenced this action by writ of summons and served pre-complaint discovery. Plaintiff now files this complaint, by and through its undersigned counsel, against defendants Pace-O-Matic, Inc., POM of Pennsylvania, LLC, and Miele Manufacturing, Inc. for false advertising, unfair competition, tortious interference with prospective business relations, and negligence *per se*. Parx Casino seeks preliminary and permanent injunctive relief as well as monetary damages.

Case ID: 220400660

**PARTIES**

1.      Parx Casino is a Category 1 slot machine licensee and certificated table game operator that has its principal place of business at 2999 Street Road, Bensalem, PA 19020.

2.      As a slot machine licensee, Parx Casino is authorized to place and operate approved slot machines in approved locations subject to strict regulatory oversight under the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §1101 *et seq.*, as amended (the "Gaming Act") with the Pennsylvania Gaming Control Board as the responsible regulatory entity.

3.      Defendant Pace-O-Matic, Inc. ("Pace-O-Matic") is a Wyoming corporation with a principal place of business at 3450 Corporate Way, Duluth, Georgia  30096.

4.      Pace-O-Matic designs and sells software and game fills for electronic slot machines advertised under the trade name "Pennsylvania Skill."

5.      Pace-O-Matic is registered to do business in Pennsylvania as a foreign corporation.

6.      Pace-O-Matic is not licensed under the Gaming Act, 4 Pa.C.S. §1101 *et seq.*, as amended.

7.      Defendant POM of Pennsylvania, LLC ("POM") is a Wyoming corporation with a principal place of business at 3870 Peachtree Industrial Blvd, Suite 340-194, Duluth, GA  30096.

8.      On information and belief, POM is a subsidiary and agent of Pace-O-Matic.

9.      POM is registered to do business in Pennsylvania as a foreign corporation.

10.     POM is not licensed under the Gaming Act, 4 Pa.C.S. *et seq.*

11.     Defendant Miele Manufacturing, Inc. ("Miele") is a Pennsylvania corporation whose principal place of business is located at 535 E. Third Street, Williamsport, PA  17701.

12.     Miele manufactures electronic slot machines to Pace-O-Matic's specifications, which includes loading "Pennsylvania Skill" branded software and game fills onto the machines.

Case ID: 220400660

13.     Miele's Amusements division operates "Pennsylvania Skill" game machines in Pennsylvania.

14.     Pace-O-Matic sells "Pennsylvania Skill" branded software and game fills into Pennsylvania through POM and Miele.

15.     POM licenses the "Pennsylvania Skill" branded software, game fills, and trademarks to Miele.

16.     Miele distributes the "Pennsylvania Skill" branded slot machines and sublicenses the software and game fills used in the "Pennsylvania Skill" branded slot machines to operators who enter into Operator Agreements with POM and Miele and have exclusive territories.  POM licenses the trademarks to operators.

17.     The operators place the slot machines at locations approved by POM and Miele, including locations in Philadelphia.

18.     Through the operators, POM and Miele are responsible for placing "Pennsylvania Skill" branded slot machines in clubs and businesses, including bars, restaurants, gas stations, and convenience stores, throughout Pennsylvania, including Philadelphia.

## VENUE

19.     Venue is proper in Philadelphia County, pursuant to Rule 2179 of the Pennsylvania Rules of Procedure, because Philadelphia is a county where defendants regularly conduct business.

## FACTS

**A.     "PENNSYLVANIA SKILL" BRANDED SLOT MACHINES ARE ILLEGAL GAMBLING DEVICES**

20.     "Pennsylvania Skill" branded game s are illegal gambling devices *per se*.

21.     Section 5513(a) of the Pennsylvania Crimes Code makes it illegal to intentionally or knowingly make, assemble, set up, maintain, sell, lend or lease "any … slot machine" except

Case ID: 220400660

as permitted under the Gaming Act, the State Lottery Law, Bingo Law, or the Local Option

Small Games of Chance Act.  18 Pa. C.S. §5513(a) and (e.1).

22.     Since the Crimes Code does not define "slot machine," the definition under

Pennsylvania law must be found elsewhere.  1 Pa.C.S. §1921(c)(5); *PHD v. RRD*, 56 A.3d 702,

706 (Pa.Super. 2012); *PPL Holtwood, LLC v. Pike County Board of Assessment & Revision of

Taxes*, 846 A.2d 201, 207 (Pa.Cmwlth. 2004).

23.     The only legislative definition of "slot machine" in Pennsylvania is in §1103 of

the Gaming Act as amended.  It includes "slot machines," "skill slot machines," and "hybrid slot

machines," regardless of the extent to which skill or chance determines the outcome.

24.     Section 1103 of the Gaming Act, 4 Pa.C.S.§1103, as amended by 2017, October

30, P.L. 419, No. 42, §3, provides that the term **"Slot Machine"** includes:

> (i) Any mechanical, electrical or computerized contrivance, terminal, machine or other
> device approved by the Pennsylvania Gaming Control Board which, upon insertion of
> a coin, bill, ticket, token or similar object therein or upon payment of any consideration
> whatsoever, including the use of any electronic payment system except a credit card or
> debit card, is available to play or operate, the play or operation of which, <u>whether by
> reason of skill or application of the element of chance or both</u>:
>> (A)     May deliver or entitle the person or persons playing or operating the
>> contrivance, terminal, machine or other device to receive cash, billets, tickets,
>> tokens or electronic credits to be exchanged for cash or to receive merchandise or
>> anything of value whatsoever, whether the payoff is made automatically from the
>> machine or manually.
>> (B)     May utilize spinning reels or video displays or both.
>> (C)     May or may not dispense coins, tickets or tokens to winning patrons.
>> (D)     May use an electronic credit system for receiving wagers and making
>> payouts.
> (ii) Associated equipment necessary to conduct the operation of the contrivance,
> terminal, machine or other device.  4 Pa.C.S. §1103.  (Emphasis supplied.)
> (iii) A skill slot machine, hybrid slot machine and the devices or associated
> equipment necessary to conduct the operation of a skill slot machine or hybrid
> slot machine.

25.     In a skill slot machine, the outcomes are predominantly affected by skill.  In a

hybrid slot machine, the outcomes are affected by a combination of skill and chance.  4 Pa.C.S.

Case ID: 220400660

§1103, as amended by 2017, October 30, P.L. 419, No. 42, §3, definitions of "Skill slot

machine" and "hybrid slot machine."4 P.

26.    As far as slot machines are concerned, the Gaming Act abolished any distinction

between games of skill and games of chance.

27.    The Gaming Act specifically repeals §5513 of the Crimes Code in so far as it is

inconsistent with the Gaming Act.  4 Pa.C.S. §1903(a)(2), as enacted by 2004, July 5, P.L. 572,

No. 71, §1, effective immediately, provides:

(a) The following acts and parts of acts are repealed as follows:

(2) the provisions of 18 Pa.C.S. §5513(a) are repealed insofar as they are inconsistent
with this part.

28.    For that reason, any definition of "slot machine" for purposes of §5513 must be

consistent with the Gaming Act.

29.    Section 5513 therefore prohibits "slot machines," "skill slot machines" and

"hybrid slot machines" as defined in the Gaming Act, unless they are licensed under the Gaming

Act.

30.    As a result, all such unlicensed slot machines are illegal under the Crimes Code

regardless of the extent to which skill or chance determines the outcome.

31.     "Pennsylvania Skill" branded slot machines are not licensed under the Gaming

Act and are therefore illegal under the Crimes Code.  18 Pa.C.S. §5513(a)(1) and §5513(e.1)(4).

32.    Alternatively, "Pennsylvania Skill" branded slot machines are illegal gambling

devices under 18 Pa.C.S. §5513, and they are represented to be games of skill when they are not.

Upon information and belief, consideration is required to play, the machines employ random

number generators, there is a reward for successful play, and the results of play are not

predominantly determined by skill and the gaming experience offered by "Pennsylvania Skill"

Case ID: 220400660

branded slot machines is essentially the same as the gaming experience offered by licensed slot machines.

33.     Because skill does not predominate, "Pennsylvania Skill" branded slot machines are illegal gambling devices under 18 Pa.C.S. §5513.

## B.     DEVELOPMENT OF LEGAL, REGULATED GAMING IN PENNSYLVANIA

34.     In 2004, the General Assembly authorized the conduct of slot machine gaming in Pennsylvania by enacting the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904 (the "Gaming Act").

35.     Pennsylvania's licensed casinos have expended hundreds of millions of dollars to conduct lawful slot operations in the Commonwealth since that time.

36.     Those operations have generated billions of dollars for the Commonwealth of Pennsylvania and its citizens, in the form of licensing fees, tax revenue, local share funding and fees, and other financial benefits.

37.     Parx Casino and Pennsylvania's other licensed casinos have been of great financial benefit to the Commonwealth and its citizens.

38.     Pennsylvania receives more tax revenue from gaming than any other jurisdiction in the United States, taking approximately 54 cents of every dollar wagered in the slot machines of each licensed casino.

39.     In Fiscal Years 2017-2021, Pennsylvania's licensed casinos, including Parx Casino, generated slot machine tax revenue for the Commonwealth in approximately the following amounts:

2015-2016, $1.180 billion

2016-2017, $1.151 billion

Case ID: 220400660

2017-2018, $1.169 billion

2018-2019, $1.90 billion

2019-2020, $841 million

2020-2021, $931 million

2021-2022, $1.153 billion

40.     In Fiscal Years 2017-2021, slot operations by Pennsylvania's licensed casinos, including Parx Casino, contributed approximately the following amounts in local share funding and fees that were distributed to host counties and municipalities:

2015-2016, $95.5 million

2016-2017, $85.2 million

2017-2018, $23.3 million

2018-2019, $46.4 million

2019-2020, $33.5 million

2020-2021, $41.5 million

2021-2022, $67.2 million

41.     Pennsylvania's licensed casinos, including Parx Casino, spend approximately $230 million annually with local business entities in their host and contiguous counties.

42.     Pennsylvania's licensed casinos, including Parx Casino, employ more than 14,000 employees, the vast majority of whom reside in Pennsylvania.

43.     The success of Pennsylvania's licensed casinos in slot machine gaming was achieved while operating under a highly regulated environment, ensuring the highest integrity in gaming operations, while simultaneously promoting responsible gaming.

Case ID: 220400660

## C.    PARX CASINO'S INVESTMENT IN LEGAL GAMING

44.    The Gaming Act originally established three categories of slot machine licensees — Category 1, 2 and 3 licensees — which have the exclusive right to place and operate licensed slot machines in the Commonwealth.  4 Pa.C.S. §1301.

45.    The Gaming Act expressly limits the placement and operation of slot machines only to licensed facilities.  *See, e.g.*, 4 Pa.C.S. §1302.

46.    After completing the extensive and costly application process, Parx Casino was awarded a Category 1 slot machine license by the Pennsylvania Gaming Control Board ("PGCB").

47.    Parx Casino paid a $50 million license fee for its Category 1 slot machine license.

48.    In return, Parx Casino was assured that the number of establishments where slot machines could be offered legally would be limited and their locations would be geographically dispersed throughout the Commonwealth.

49.    In 2017, the General Assembly passed Act 42 of 2017.  Act of Oct. 30, 2017, P.L. 419, No. 42 ("Act 42"), 4 Pa.C.S. § 1305.1.

50.    As part of Act 42, the Commonwealth authorized interactive gaming in Pennsylvania, with slot machine licensees having the exclusive right, in the first instance, to offer interactive games.  Act 42 also authorized the issuance of Category 4 licenses.

51.    Pursuant to Act 42, slot machine licensees are entitled to apply for an interactive gaming certificate that will enable them to conduct gaming over the Internet, including offering online slot machines, table games and poker. 4 Pa. C.S. §§ 13B11, 13B12.

52.    On August 15, 2018, Parx Casino was awarded an interactive gaming certificate.

53.    Parx Casino paid a $10 million fee for its interactive gaming certificate.

Case ID: 220400660

54.     Parx Casino began offering interactive gaming on July 15, 2019 and currently accepts wagers from eligible persons anywhere within the Commonwealth of Pennsylvania.

55.     Parx Casino also secured the right to apply for a Category 4 license at a cost of approximately $8.1 million.  A Category 4 license allows the holder to offer slot machines at approved facilities outside its primary location.  As with Category 1 licenses, Category 4 licenses are limited and their locations are geographically dispersed throughout the Commonwealth.

56.     In addition to paying license fees, Parx Casino has invested approximately $500 million in the development and expansion of its casino, including additions to offer dining options, a poker room, and a live entertainment venue.

57.     Legal gaming in Pennsylvania is among the most highly regulated industries in the Commonwealth.  Licensed slot machines are overseen by the Pennsylvania Gaming Control Board and are subject to stringent and detailed regulations that protect consumers. Among these are regulations that: The regulations require (1) subject slot machines to be tested rigorous testing through software laboratories and the Board and elsewhere to ensure that they are fair to players; (2) to return make certain that a required percentage of wagers is returned to players so that players know that the games are fair as well as the basic cost of playing; (3) impose various complex internal controls and regulatory requirements to ensure and proper financial reporting to protect against money laundering; (4) require that the involved entities as well as owners and management personnel and manufacturers and suppliers of slot machines be licensed after thorough investigations and that all employees also be licensed.; and (5)  Strict background checks ensure that proceeds do not go to criminal elements.  The regulations provide for the collection and resolution of consumer complaints about unfair games.  In addition, the regulations limit gaming

Case ID: 220400660

to persons over 21 and provide programs for self-exclusion from gaming, and all licensees are subject to extensive fines for violations of the regulations.

58.     All of these regulations for licensed slot machines do not protect consumers who play on unlicensed slot machines, including Pace-O-Matic, POM, and Miele's "Pennsylvanian Skill" branded slot machines.

## D.    DEVELOPMENT OF UNLICENSED, UNREGULATED, AND UNTAXED SLOT MACHINES ACROSS THE COMMONWEALTH

59.     The number of unlicensed slot machines in bars, restaurants, convenience stores, gas stations, and other unlicensed establishments in Pennsylvania has grown tremendously in recent years.

60.     These unlicensed and unregulated slot machine locations are operating outside of the comprehensive regulatory framework and tax scheme implemented by the Gaming Act as amended.

61.     In October 2019, Major Scott T. Miller, Director of the Pennsylvania State Police Bureau of Liquor Control Enforcement, testified that one manufacturer had placed approximately 10,000 unlicensed slot machines in Pennsylvania and that five manufacturers have marketed unlicensed slot machines in Pennsylvania.  (Testimony of Major Miller before the House Gaming Oversight Committee, October 30, 2019).

62.     Major Scott testified that the annual revenue from 10,000 slot machines would be approximately $260 million.

63.     In earlier testimony, Major Miller identified various problems associated with unlicensed, skill based slot machines, including:

Case ID: 220400660

a.   The lack of controls to prevent minors from gambling, as contrasted with licensed gaming, which is "strictly controlled and limited to individuals over 21 years of age";

b.   The proceeds from unlicensed slot machines are typically paid in cash to the owners of the facilities where the machines are located, such that proceeds are not reported to taxing authorities;

c.   "Skill-based" games are unregulated and, thus, do not have set payout requirements like licensed slot machines; and

d.   The technology and software for "skill-based" games are constantly changing, making prosecution more difficult.

(Testimony of Major Scott T. Miller before House Gaming Oversight Committee, June 10, 2019.)

64.   To the above-listed problems may be added the lack of background checks on the owners of the establishments where the unlicensed machines are placed and the lack of responsible gaming policies to prevent compulsive and problem gambling.

65.   The Pennsylvania Lottery has complained about competition from unlicensed, skill based slot machines.

66.   In June 2019, Drew Svitko, the Executive Director of the Pennsylvania Lotter, testified that the Lottery was losing $138 million every year to unlicensed, skill based slot machines.  (Testimony of Drew Svitko before the House Gaming Oversight Committee, June 10, 2019).

67.   In 2021, Mr. Svitko testified that the Lottery was losing $145 million annually to unlicensed, skill based slot machines counting only reduced scratch-off ticket sales.

Case ID: 220400660

68.     The Pennsylvania Lottery has reportedly claimed a loss of $500 million in lottery sales between October 2017 and July 2021 due to competition from skill slot machines. Pennsylvania Bar News, Vol. 32, No. 13, July 11, 2022 at p. 8.

69.     Manufacturers and distributors of these unlicensed slot machines have misleadingly branded them as legal "games of skill" or "skill games."

**E.     ECONOMIC IMPACT OF UNLICENSED SLOT MACHINES ON THE LICENSED GAMING MARKET**

70.     Both the number of licensed casinos and the number of licensed slot machines are limited in Pennsylvania.

72.     By contrast, the number of unlicensed slot machines and locations is not subject to any limit.

73.     On information and belief, Pace-O-Matic and POM and other skill slot manufacturers and distributors have placed as many as 80,000 "skill" slot machines throughout Pennsylvania to date.  Pennsylvania Bar News, Vol. 32, No. 13, July 11, 2022 at p. 3.  This is the equivalent of more than three times the number of legal slot machines currently in use at casinos in Pennsylvania.

74.     Unlicensed slot machines compete with licensed casinos (as well as their internet-based games) and inevitably divert business from licensed casinos and interfere with the growth of licensed gaming in Pennsylvania.

75.     At a public meeting on September 15, 2021 before the Gaming Control Board, the Chief Operating Officer of Mount Airy #1 casino testified that physical casinos have experienced a reduction in slot machine revenue in six out of the last eight years.  *Tr. Pa. Gaming Control Bd. Pub. Mtg. of Sept. 15, 2021,* p. 24, lines 9-12.  He

Case ID: 220400660

testified "there's no question in my mind that [the proliferation of unregulated skill slot machines] has had a material impact on land-based casino revenue [and] slot revenue throughout the Commonwealth over the past several years." *Tr. Pa. Gaming Control Bd. Pub. Mtg. of Sept. 15, 2021,* p. 24, lines 16-19.  He further testified that the proliferation of unregulated skill slot machines "certainly contributed" to Mount Airy's request to remove 130, or 7.15%, of its slot machines from the gaming floor.  *Tr. Pa. Gaming Control Bd. Pub. Mtg. of Sept. 15, 2021,* p., 25, lines 3-6; *Petition of Mount Airy #1 LLC to Reduce the Number of Slot Machines and Gaming Floor* (Docket No. 9911-2021).

76.     At the Gaming Control Board's November 10, 2021 public meeting, the General Manager of Hollywood Meadows Casino testified that "I think we've seen that the proliferation of [unregulated skill slot machine] gaming and the additional devices out there certainly are cannibalizing the market." *Tr. Pa. Gaming Control Bd. Pub. Mtg. of Nov. 10, 2021, OHA 10002-2021,* p., 12, line 18 to p. 13, line 2.

77.     Later during the same November 10, 2021 Public Meeting, counsel for Hollywood Penn National casino agreed that the proliferation of unregulated skill machines was impacting Hollywood's slot business: "[L]ogically, it should come as no surprise, if slot machine patrons can play at the local bar, tavern or convenience store and avoid a trip to the casino, they will." *Tr. Pa. Gaming Control Bd. Pub. Mtg. of Nov. 10, 2021, OHA 10003-2021,* p. 14, lines 23-25 and p. 17, lines 6-9.

78.     The number of licensed slot machines at Category 1 and 2 casinos has reportedly been reduced by approximately 24% from the maximum that once was offered.  Pennsylvania Bar News, Vol. 32, No. 13, July 11, 2022 at p. 8.

Case ID: 220400660

79.     On information and belief, if unlicensed slot machine operations were halted in Pennsylvania, the players would play licensed slot machines at casinos and/or online instead, and the revenue currently generated from unlicensed machines would be realized by licensed, tax-paying slot machine operators.

## F.  DEFENDANTS' UNLAWFUL CONDUCT

80.     Pace-O-Matic, POM and Miele are leading designers, manufacturers, suppliers, distributors, and owners of unlicensed slot machines in Pennsylvania, which they brand as "Pennsylvania Skill" games.

81.     Pace-O-Matic, POM and Miele have continually violated 18 Pa.C.S. §5513 by making, selling, leasing and promoting illegal unlicensed slot machines to operators and contracting with operators to place the slot machines at unlicensed locations.

82.     Pace-O-Matic, POM, and Miele misrepresent the nature of their slot machines by branding them as lawful games of skill or "skill games" on their websites and in their promotional materials.

83.     Pace-O-Matic, POM and Miele are not licensed to sell or distribute slot machines for use in Pennsylvania.

84.     Pace-O-Matic, POM and Miele are not licensed to offer their slot machines to the operators of bars, restaurants, convenience stores, gas stations, and other commercial premises across Pennsylvania.

85.     Pace-O-Matic, POM and Miele intentionally and knowingly make, assemble, set up, maintain, sell, loan, lease, offer for sale, and distribute unlicensed "Pennsylvania Skill" branded slot machines to unlicensed operators of unlicensed premises throughout Pennsylvania.

Case ID: 220400660

86.     Unlicensed "Pennsylvania Skill" branded slot machines compete with Parx Casino.

87.     Unlicensed "Pennsylvania Skill" branded slot machines also compete with Parx Casino's on-line gaming throughout Pennsylvania.

88.     Each unlicensed "Pennsylvania Skill" branded slot machine is manufactured by Miele Manufacturing to the specifications of Pace-O-Matic and POM.

89.     Each unlicensed "Pennsylvania Skill" branded slot machine is operated through the insertion of coins or cash.

90.     Each unlicensed "Pennsylvania Skill" branded slot machine offers several titles such as Amigos Locos, Lucky Liberty, Pirates, Bombs and Bombshells, and Wild Beasts.  However, on information and belief, the games, the rules, and the prizes are substantially the same.

91.     Each unlicensed "Pennsylvania Skill" branded slot machine utilizes random number generators, digital reels, and video displays, upon information and belief.

92.     Each unlicensed "Pennsylvania Skill" branded slot machine offers free games and cash prizes.

93.     Pace-O-Matic and POM supply game fills containing pre-programmed games that are loaded on each "Pennsylvania Skill" branded slot machine.  When a batch of games is used up, Pace-O-Matic and POM supply a new batch for loading on the slot machine.

94.     Pace-O-Matic, POM, and Miele's sale, leasing, distribution, servicing and maintenance of its unlicensed "Pennsylvania Skill" branded slot machines or hybrid slot machines to unlicensed operators of unlicensed venues violates Section 5513 of the Pennsylvania Crimes Code.

Case ID: 220400660

95.     Pace-O-Matic, POM, and Miele falsely represent that their products are legal.  On their website, Pace-O-Matic and POM state, "We lead the industry with compliant, dominant skill-based games that are exciting to play."  The website further states:

> POM develops the best earning games that are both legal and defendable. We're committed to building up the communities where we do business. Our games create a unique opportunity to boost business and draw in loyal customers.
>
> Pace-O-Matic develops, produces and licenses legally compliant games in every state where we operate.

www.paceomatic.com (visited on November 15, 2021).

96.     On its website, Miele states: "Pennsylvania Skill Games are 100% legal." The website further states, "Legal games of skill, such as Pennsylvania Skill, and gambling are not the same."  www.mielemfg.com/pages/faq (visited on September 21, 2022).

97.     Pace-O-Matic, POM, and Miele deceptively market "Pennsylvania Skill" branded games as "legal" and as "skill games" when they are not legal and the outcomes are not predominantly determined by skill.

### COUNT I – FEDERAL FALSE ADVERTISING (Lanham Act)

98.     Parx Casino incorporates by reference the paragraphs above as if set forth fully herein.

99.     The false advertising provisions of the Lanham Act provide a private right of action.  Section 1125(a)(1) of Title 15 of the United States Code states in pertinent part:

**(a) Civil action**

Case ID: 220400660

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(Emphasis supplied.)

100. As explained in *National Artists Management Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1230 (SDNY 1991):

To establish an unfair competition claim under Section 43(a)(2), plaintiffs in this action must demonstrate the following: (1) that defendants made false or misleading factual representations of the nature, characteristics, or qualities of plaintiffs' services; (2) that defendants used the false or misleading representations "in commerce", on or in connection with any services; (3) that defendants made the false or misleading representations in the context of commercial advertising or commercial promotion; and (4) that defendants' actions made plaintiffs believe that they were likely to be damaged by such false or misleading factual representations.

101. On their website, Pace-O-Matic and POM state "We lead the industry with compliant, dominant skill-based games that are exciting to play." The website further states:

POM develops the best earning games that are both legal and defendable. We're committed to building up the communities where we do business. Our games create a unique opportunity to boost business and draw in loyal customers.
Pace-O-Matic develops, produces and licenses legally compliant games in every state where we operate.

Case ID: 220400660

From the website at www.paceomatic.com (visited on November 15, 2021).

102.     According to its website, Miele operates skill games in Pennsylvania, Virginia, and Kentucky.  Miele's website contains the following statements: "Pennsylvania Skill Games are 100% legal;" and "Legal games of skill, such as Pennsylvania Skill, and gambling are not the same."  www.mielemfg.com/pages/faq (visited on September 21, 2022

103.     The foregoing statements of Pace-O-Matic, POM, and Miele constitute commercial advertising or promotion "in commerce."

104.     The foregoing statements misrepresent the nature, characteristics and qualities of Pace-O-Matic, POM, and Miele's "Pennsylvania Skill" branded slot machines.

105.     Pace-O-Matic, POM, and Miele's slot machines are not legally compliant because they are not licensed under the Gaming Act.  Unlicensed slot machines are illegal under Section 5513 of the Criminal Code.

106.     Furthermore, Pace-O-Matic, POM, and Miele's slot machines are not properly described as games of skill because, upon information and belief, (a) the machines employ random number generators; (b) the outcomes of the games are not predominantly determined by skill; and (c) the gaming experience offered by "Pennsylvania Skill" branded  slot machines is essentially the same as the gaming experience offered by licensed slot machines.

107.     Parx Casino reasonably believes that Pace-O-Matic, POM, and Miele's misrepresentations injure Parx Casino's legal slot machine business by taking market share and customers away from the legal and licensed slot machines offered by Parx Casino at its casino and online.

Case ID: 220400660

108.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's activities, the growth of Parx Casino's licensed slot machine business has stagnated relative to other states, and relative to Parx Casino's internal forecasts

109.    Pace-O-Matic, POM, and Miele deprive Parx Casino of profits and cause it pecuniary harm in excess of $50,000.

110.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's wrongful conduct, Parx Casino has suffered and will continue to suffer a great risk of financial losses, permanent irreparable harm, and other continuing harm.

111.    The risk and harm to Parx Casino is ongoing and cannot be remedied by monetary damages alone.

112.    A remedy at law is insufficient to fully compensate Parx Casino and to protect it from further risk of loss and harm due to Pace-O-Matic, POM, and Miele's ongoing wrongful conduct.

113.    Pace-O-Matic, POM, and Miele's wrongful conduct has caused, and continues to cause, harm to Parx Casino that is different in kind and magnitude from the harm caused to the general public.

114.    Parx Casino is one of a limited number of Category 1 and Category 4 licensees, who pay heavily for the privilege of licensed gaming and are protected by statute from unlicensed and unregulated slot machine operators.

WHEREFORE, Parx Casino respectfully requests that this Court enjoin Pace-O-Matic, POM, and Miele from advertising that "Pennsylvania Skill" branded slot machines and software are games of skill and are legal and compliant with Pennsylvania law, award damages to Parx Casino for false advertising, and order such other relief as the Court may deem appropriate.

Case ID: 220400660

## COUNT II -- COMMON LAW UNFAIR COMPETITION

115.    Parx Casino incorporates by reference all of the paragraphs above as if set forth fully herein.

116.    Pace-O-Matic, POM, and Miele's business competes with the licensed gaming offered by Parx Casino, which paid hundreds of millions of dollars in fees, taxes, and local share assessments for the right to lawfully offer slot machines, skill slot machines and hybrid slot machines.

117.    Pace-O-Matic, POM, and Miele's false representations that the "Pennsylvania Skill" branded games available on their slot machines are "legally compliant" are likely to and do deceive and mislead prospective purchasers and players concerning the approval of its games for use in Pennsylvania as well as the nature, characteristics, and qualities of its games, to the commercial detriment of Parx Casino.

118.    Pace-O-Matic, POM, and Miele do not comply with Pennsylvania laws concerning slot machine.

119.    Pace-O-Matic, POM, and Miele's advertising unlicensed slot machines as legal in Pennsylvania is unfair to Parx Casino as a Pennsylvania gaming licensee who is properly licensed and regulated.

120.    Pace-O-Matic, POM, and Miele's advertising of unlicensed slot machines as legal in Pennsylvania, without being subject to the same regulations as licensees, violates Pennsylvania's public policy.

121.    Unlicensed, unregulated slot machines put the public at risk of dishonest gaming and defeat the intent of the Gaming Act.

122.    Pace-O-Matic, POM, and Miele's false representations that the "Pennsylvania Skill" branded games available on its slot machines are "legally

Case ID: 220400660

compliant" games of skill have diverted and are likely to continue to divert trade from Parx Casino.

123.    Parx Casino reasonably believes that it has been and will continue to be harmed by Pace-O-Matic, POM, and Miele's conduct.

124.    Pace-O-Matic, POM, and Miele's operations in violation 18 Pa.C.S. §5513 amount to unfair competition.

125.    Pace-O-Matic, POM, and Miele's business takes market share and customers away from the slot machines and online games offered by Parx Casino.

126.    Pace-O-Matic, POM, and Miele deprive Parx Casino of profits and cause it pecuniary harm in excess of $50,000.

127.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's activities, the growth of Parx Casino's business has stagnated relative to other states, and relative to Parx Casino's internal forecasts.

128.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's wrongful conduct, Parx Casino has suffered and will continue to suffer a great risk of financial losses, permanent irreparable harm, and other continuing harm.

129.    The risk and harm to Parx Casino is ongoing and cannot be remedied by damages alone.

WHEREFORE, Parx Casino respectfully requests that this Court enjoin Pace-O-Matic, POM, and Miele from advertising that "Pennsylvania Skill" branded slot machines and software are games of skill and are legal and compliant with Pennsylvania law, award damages to Parx Casino for unfair competition, and order such other relief as the Court may deem appropriate.

Case ID: 220400660

## COUNT III – TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONS

130.   Parx Casino incorporates by reference the paragraphs above as if set forth fully herein.

131.   A substantial amount of Parx Casino's revenue from slot machines and online slot machines is repeat business.

132.   Parx Casino invests substantially in cultivating repeat business and encouraging customers to return.

133.   Pace-O-Matic, POM, and Miele are well aware of Parx Casino's efforts to cultivate long-term relationships with customers.

134.   Pace-O-Matic, POM, and Miele have saturated bars, restaurants, convenience stores, gas stations, and other unlicensed establishments in Pennsylvania with "Pennsylvania Skill" branded slot machines resembling casino slot machines.

135.   Upon information and belief, Pace-O-Matic, POM, and Miele know or should know that "Pennsylvania Skill" branded slot machines attract repeat and potential repeat customers of Parx Casino.

136.   Upon information and belief, Pace-O-Matic, POM, and Miele intentionally misrepresent the nature of their slot machines to attract repeat and potential repeat customers of Parx Casino and other licensed gaming operations to play their unlicensed slot machines.

137.   Pace-O-Matic, POM, and Miele's business takes repeat and potential repeat customers away from the slot machines offered by Parx Casino.

138.   Pace-O-Matic, POM, and Miele deprive Parx Casino of profits and cause it pecuniary harm in excess of $50,000.

Case ID: 220400660

139.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's activities, the growth of Parx Casino's slot business has stagnated relative to other states, and relative to Parx Casino's internal forecasts.

140.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's wrongful conduct, Parx Casino has suffered and will continue to suffer a great risk of financial losses, permanent irreparable harm, and other continuing harm.

WHEREFORE, Parx Casino respectfully requests that the Court award damages against Pace-O-Matic, POM, and Miele for tortious interference with business relations.

## COUNT IV – NEGLIGENCE PER SE

141.    Parx Casino incorporates by reference the paragraphs above as if set forth fully herein.

142.    Under Section 5513 of the Criminal Code, slot machines are illegal unless approved and licensed under the Gaming Act.

143.    Under Section 1301 if the Gaming Act, slot machine licensees like Parx Casino, who have expended hundreds of millions of dollars in fees,  taxes, and local share assessments for the right to conduct lawful slot operations in Pennsylvania, have the exclusive right to place and operate slot machines in the Commonwealth. 4 Pa.C.S. § 1301.

144.    Parx Casino is one of a limited number of Category 1 and Category 4 licensees, who pay heavily for the privilege of licensed gaming and are protected by statute from unlicensed and unregulated slot machine operators.

145.    One of the purposes Section 5513 Act is to protect the legalized and regulated gaming industry from unlicensed, unregulated gaming.

Case ID: 220400660

146.     One of the purposes of the Gaming Act is to foster the success of legal gaming in Pennsylvania, which necessarily includes protecting the substantial investment of Parx Casino and other slot machine licensees from unlicensed gaming operations.

147.     The statement of legislative intent in Section 1102 of the Gaming Act includes the following:

> (7)     Participation in limited gaming authorized under this part by any licensee, permittee, registrant or certificate holder shall be deemed a privilege, conditioned upon the proper and continued qualification of the licensee, permittee, registrant or certificate holder and upon the discharge of the affirmative responsibility of each licensee, permittee, registrant and certificate holder to provide the regulatory and investigatory authorities of the Commonwealth with assistance and information necessary to assure that the policies declared by this part are achieved.

> (12)     It is the intent of the General Assembly to authorize the operation and play of slot machines, table games and interactive gaming under a single slot machine license issued to a slot machine licensee when a slot machine licensee has been issued a table game operation certificate and an interactive gaming certificate under this part.

> (12.1) The continued growth and success of the commercial gaming industry in this Commonwealth is dependent upon a regulatory environment which promotes and fosters technological advances and encourages the development and delivery of innovative gaming products.

> (12.2) It is also the intent of the General Assembly to ensure the sustainability and competitiveness of the commercial gaming industry in this Commonwealth by authorizing interactive gaming, the operation of multistate wide-area progressive slot machines, skill and hybrid slot machines.

4 Pa.C.S. §1102 (emphasis supplied.)

148.     Protecting the growth, success, and sustainability of the commercial gaming industry in the Commonwealth in turn protects the Commonwealth's interest

Case ID: 220400660

in gaming as a source of tax revenue and employment.  That interest is expressed in §1102 as follows:

> (2.1)   <u>The authorization of table games and interactive gaming in this part is intended to supplement slot machine gaming by increasing revenues to the Commonwealth and providing new employment opportunities</u> by creating skilled jobs for individuals related to the conduct of table games at licensed facilities in this Commonwealth and related to the conduct of interactive gaming.
>
> (3)   <u>The authorization of limited gaming is intended to provide a significant source of new revenue to the Commonwealth</u> to support property tax relief, wage tax reduction, economic development opportunities and other similar initiatives.

4 Pa.C.S. §1102 (emphasis supplied.)

149.   Pace-O-Matic, POM, and Miele have violated and continue to violate §5513 by making, selling, leasing and promoting illegal unlicensed slot machines to unlicensed operators of unlicensed premises.

150.   At a minimum, Pace-O-Matic, POM, and Miele's violation of §5513 is negligence per se.

151.   Pace-O-Matic, POM, and Miele have a duty under §5513 not to harm Gaming Act licensees by manufacturing, selling, leasing and promoting unlicensed slot machines.

152.   Parx Casino reasonably believes that Pace-O-Matic, POM, and Miele's business takes market share and customers away from the legal and licensed slot machines and on-line games offered by Parx Casino.

153.   Pace-O-Matic, POM, and Miele deprive Parx Casino of profits and cause it pecuniary harm in excess of $50,000.

Case ID: 220400660

154.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's activities, the growth of Parx Casino's slot business has stagnated while legalized slot gaming in other states has continued to grow.

155.    As a direct and proximate result of Pace-O-Matic, POM, and Miele's wrongful conduct, Parx Casino has suffered and will continue to suffer a great risk of financial losses, permanent irreparable harm, and other continuing harm.

WHEREFORE, Parx Casino respectfully requests that the Court award damages against Pace-O-Matic, POM, and Miele for negligence per se.

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

By:    _____

Gary Samms, Esquire (Attorney I.D. 58096)
Richard Limburg, Esquire  (Attorney I.D. 39598)
Attorneys for Plaintiff Parx Casino
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, Pennsylvania 19102
(215) 665-3000

Dated: October 7, 2022

Case ID: 220400660

## **VERIFICATION**

I, Karin Ashford, state that I am the Chief Legal Officer of the Plaintiff, Parx Casino; that I am authorized to make this verification on behalf of Parx Casino; and that the statements made in the foregoing complaint are true and correct to the best of my knowledge, information, and belief.

I understand that this Verification is subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Name: Karin Ashford

Date: October 6, 2022

# EXHIBIT "E"

## CONSENT TO REMOVAL

Defendant Miele Manufacturing, Inc. consents to the removal of *Greenwood Gaming & Entertainment, Inc. v. POM of Pennsylvania, LLC et al.*, April Term 2022, No. 00660, currently pending in the Court of Common Pleas of Philadelphia County to the United States District Court for the Eastern District of Pennsylvania.

By filing this consent, Miele Manufacturing, Inc. does not waive, and expressly reserves, all defenses. Further, by filing this consent, Miele Manufacturing, Inc. does not admit any of the allegations in the complaint.

Dated: _____          _____

Marc Lovecchio, Esq.
Attorney for Miele Manufacturing, Inc.
Atty Id. 41244
McCormick Law Firm
835 W. Fourth St.
Williamsport Pa. 17701

570-326-5131