## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 2:22-cv-4434-MMB |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| POM OF PENNSYLVANIA, LLC, PACE-O-MATIC, INC., and MIELE MANUFACTURING, INC., | : | |
| | : | |
| *Defendants.* | : | |

### POM OF PENNSYLVANIA, LLC AND PACE-O-MATIC, INC.'S
### BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino (hereafter, "Parx") wishes it made more money offering gambling to Pennsylvanians via slot machines, both online and in-person. It seemingly believes the *billions* of dollars hauled in across the Commonwealth by Pennsylvania casinos, like Parx, could be *more billions* still if only other industries were ended. To that end, Parx has come to court with a theory it sincerely wishes were true: competition from lawful skill-game designers and sellers is somehow tortious. But the basis for this wish is a speculative theory of causation unsupported by plausible facts. This causation shortcoming, among others, infects each claim in the Complaint, foreclosing success. Accordingly, Defendants Pace-O-Matic, Inc. and POM of Pennsylvania, Inc. (collectively, "the POM Defendants") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss each of the claims for failure to state a claim.

I.      **PROCEDURAL HISTORY AND FACTS**

    A.      **Procedural History**

On April 7, 2022, Plaintiff Parx, initiated proceedings against the POM

Defendants and Defendant Miele Manufacturing, Inc. ("Miele") by filing a Praecipe

for Writ of Summons in the Court of Common Pleas of Philadelphia County.

Thereafter, on October 7, 2022, Parx filed and served its Complaint. Parx pleads

four counts: (1) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) common law

unfair competition; (3) tortious interference with business relations; and

(4) negligence per se. On November 4, 2022, the POM Defendants, with the consent

of Defendant Miele, removed the Complaint to this Court under 28 U.S.C. §§ 1441

and 1446, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331

and supplemental jurisdiction under 28 U.S.C. § 1367. The POM Defendants have

now filed a Motion to Dismiss for Failure to State a Claim under F.R.C.P. 12(b)(6),

doing so within 7 days of removal, as required F.R.C.P. 81(c)(2)(C).

    B.      **Facts**

As a preliminary matter, this dispute is centrally about whether the games

the Defendants design, manufacture, and sell are lawful games of skill or are illegal

"slot machines" under Pennsylvania law. Parx serially refers to the games as "slot

machines" in the Complaint, *see, e.g.*, Compl. ¶¶ 16-18, which is a description the

POM Defendants strenuously deny. However, because the Motion before the Court

is one to dismiss under Rule 12(b)(6) and all facts in the Complaint are assumed

true, this Brief therefore sometimes uses the "slot machine" nomenclature set forth

in the Complaint.[1] But such usage is solely because of the procedural posture and not because the POM Defendants admit the description applies.

Parx operates a casino in Bensalem, Pennsylvania (Bucks County). Compl. ¶ 1. In addition to table games, it offers gambling opportunities through slot machines, in-person at its facility and online through an interactive gaming license. Compl. ¶¶ 1-2, 54. Parx does not plead it manufactures slot machines or any other gaming device, and does not plead it places slot machines, made by others, at locations other than its own licensed facility. *Cf.* Compl. ¶¶ 1-2. As it concerns slot machines, Parx's customers are the persons who play those games. *See* Compl. ¶¶ 79, 107, 125, 132, 152.

Parx alleges Defendant Pace-O-Matic "designs and sells software and game fills for electronic slot machines advertised under the trade name 'Pennsylvania Skill.'" Compl. ¶ 4. Regarding POM of Pennsylvania, Parx states that it "is a subsidiary and agent of Pace-O-Matic." Compl. ¶ 8. As to Miele, the Complaint alleges it "manufactures electronic slot machines to Pace-O-Matic's specifications, which includes loading 'Pennsylvania Skill' branded software and game fills into the machines." Compl. ¶ 12. Game fills are described in the Complaint as "a batch" of

---

[1] Notably, whether a game is lawful or not under Pennsylvania law is a mixed question of law and fact, so even the "factual" description used by Parx is in meaningful part a legal conclusion. *See POM of Pennsylvania, LLC v. Dep't of State*, 221 A.3d 717, 737 n.19 (Pa. Cmwlth. 2019) ("Our denial of the Department's application, however, does not decide the separate question raised in POM's claim, i.e., whether the POM Game is an illegal gambling device under the Crimes Code, which both parties appear to acknowledge requires discovery in order to resolve.").

"pre-programmed games that are loaded onto each 'Pennsylvania Skill' branded slot machine." Compl. ¶ 93.

The Complaint alleges a tiered business relationship between the Defendants and others. Specifically, Parx claims Pace-O-Matic sells its software and game fills to POM of Pennsylvania, who in turn licenses the "Pennsylvania Skill" software, game fills, and trademarks to Miele. Compl. ¶¶ 14-15. Miele then manufactures physical devices to house the software and game fills, and then distributes those physical devices to operators (hereafter, "the Operators"). Compl. ¶¶12, 16. The Operators enter into Operator Agreements with POM and Miele. Compl. ¶ 16. The Operators, in turn, place the games at locations purportedly approved by POM of Pennsylvania and Miele, which locations include bars, restaurants, gas stations, and convenience stores (hereafter, "the Locations"). Compl. ¶¶ 17-18. The "Pennsylvania Skill" physical devices are then played at the Locations by customers of the Locations. Compl. ¶¶ 77, 79.

The essential core of Parx's claims of aggrievement are twofold. One, it claims the Defendants advertise their games on their websites to the Operators—and also, perhaps, the Locations (it is unclear on the face of the Complaint)—as "legal" games of skill. Compl. ¶¶ 95-96. Parx claims this advertising is not truthful, averring instead the games are games of chance—and not skill—and that they are illegal "slot machines" under Pennsylvania law. *E.g.*, Compl. ¶ 97. Two, Parx claims these games unlawfully compete with the gambling it offers to the public through its licensed in-person and online gaming devices. *E.g.*, Compl. ¶¶ 107, 125, 137, 152.

4

## II.   ARGUMENT

### A.   The Court should dismiss the Lanham Act false advertising claim in Count I because Parx has failed to plead proximate cause.

For a false advertising claim under 15 U.S.C. § 1125(a), the plaintiff must plead (and ultimately prove), among other things, injuries that are "proximately caused by violations of the statute." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).[2] Proximate causation must be "adequately alleged" at the pleading stage to survive a motion to dismiss. *See id.* at 134 n.6. A plaintiff pleading such causation must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133 (emphasis added).

---

[2] The Third Circuit has articulated that "broadly stated" the elements of a false advertising claim are as follows:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 n.7 (3d Cir. 2000). Further, the Supreme Court in *Lexmark*, in addition to proximate cause, also added that the plaintiff must plead interests within the "zone of interests" protected by the Lanham Act. 572 U.S. at 129-32. This Motion focuses solely on Plaintiff's failure to allege proximate causation between its alleged injury and the POM Defendants' conduct, so the foregoing elements are not analyzed.

The Supreme Court further observed that while a Lanham Act claim does not require a direct competitor relationship between the plaintiff and the defendant, the plaintiff in an indirect competitor case will need to demonstrate the "relatively unique circumstances" whereby the plaintiff's injury directly flows from the defendant's conduct without a "discontinuity" between the directly injured victim and the indirect victim. *See id.* at 140. Stated otherwise, "a Lanham Act claim asserting indirect injuries is only viable in 'relatively unique circumstances.'" *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 614 (E.D. Pa. 2018) (quoting *Lexmark*) (*Frompovicz I*); *see also Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp. 3d 498, 507 (E.D. Pa. 2018) ("The Court suggested, however, that an indirect competitor may struggle to satisfy the proximate cause prong absent 'relatively unique circumstances.'" (quoting *Lexmark*)) (*Frompovicz II*).

The "relatively unique circumstances" identified in *Lexmark* were ones where the false advertising by the defendant caused injury to the defendant's competitor with whom the plaintiff had a "1:1 relationship." *See id.* at 139. That is, for every sale lost by the directly injured competitor due to the defendant's conduct, the plaintiff also lost a sale. *See id.* at 139. The Supreme Court noted that this relationship satisfied the proximate cause requirement because the relationship did not require examination of "'speculative … proceedings'" or "'intricate, uncertain inquiries.'" *See id. at* 140.

This Court also found "relatively unique circumstances" for *some* of the defendants in a case where a "spring" water producer alleged Lanham Act claims

against a "well" water producer and various bottlers, who allegedly sold the "well" water as "spring" water. *See Frompovicz II*, *supra*. As it concerned the indirect competition bottlers, the Court found that the plaintiff—who initially failed to plead sufficient proximate cause facts as to *any* of the bottlers, *see Frompovicz I*, 313 F. Supp. 3d at 615—had pleaded proximate cause with only two of the three bottler defendants. As to the first two, the Court found it significant that the plaintiff had pleaded that these indirect competitors previously had relationships directly with the plaintiff. *See Frompovicz II*, 337 F. Supp. 3d at 509-10. But as to the third, where the plaintiff did not allege a "pre-existing commercial relationship," the Court ruled that the claim "stretches Plaintiff's proximate cause theory to its breaking point." *Id.* at 510. The Court so ruled because, effectively, plaintiff's theory required the Court to entertain uncertainties about whether the defendant would have otherwise purchased water from plaintiff. *See id.* (citing *Lexmark*).

Applying the foregoing here, Plaintiff Parx has not pleaded sufficient facts to support a plausible proximate cause theory against the POM Defendants, and thus Count I must be dismissed.

### 1. The POM Defendants and Parx are not direct competitors.

As a preliminary matter, on the face of the Complaint, Parx acknowledges the POM Defendants are not direct competitors of Parx. Indeed, Parx pleads the POM Defendants' customers are the Operators who purchase the machines, *see* Compl. ¶¶ 17-18, 81, 149, doing so seemingly to "boost business and draw in loyal customers." *See* Compl. ¶ 95. The Operators, Parx pleads, place the skill games at

the Locations, which are commercial locations/venues ("bars, restaurants, convenience stores, gas stations and other commercial premises," *see* Compl. ¶ 84; *see also* Compl. ¶¶ 18, 134), so, perhaps Parx is also alleging the Locations are the POM Defendants' customers. *See* Compl. ¶¶ 81, 84, 85, 94, 149.

But what Parx does not plead, because it cannot, is that the POM Defendants' customers are the players of the games, who are the persons Parx claims as its customers (hereafter, "the Players"). *See* Compl. ¶¶ 79, 107, 117, 125, 132, 152. The Players, according to the Complaint, are also the customers of *the Locations* and maybe the Operators, but not the POM Defendants. *See* Compl. ¶¶ 79, 107, 117, 125, 132, 152. And Parx does not plead that the POM Defendants make any representations to the Players; in fact, the Complaint *only* avers that the POM Defendants make representations to the Operators and perhaps the Locations. *See* Compl. ¶¶ 95, 101. Finally, the Complaint never alleges that Parx's customers are now, or ever were, the Operators or the Locations.

As such, Parx pleads that its direct competitors are the Locations and perhaps the Operators, but it does not plead that the POM Defendants are its direct competitors. Above all else, this is so because Parx does not aver it is in the business of "making, selling, leasing and promoting illegal unlicensed slot machines to operators and contracting with operators to place the slot machines at unlicensed locations," Compl. ¶ 81, like it alleges is the case with the POM Defendants. Instead, Parx pleads it is in the business of "operat[ing] approved slot machines in approved locations[.]" Compl. ¶ 2. Stated more simply still, Parx does not plead it is

in the business of making games for gameplay, like it alleges is true of the POM

Defendants, but pleads that it is in the business of buying/leasing games—made by

others—and making them available for play by the Players. Hence, it is not a direct

competitor of the POM Defendants.

> **2.    Parx has not pleaded "unique circumstances" sufficient to support its indirect competitor claim against the POM Defendants.**

As an indirect competitor, Parx must therefore plead "unique circumstances"

to support its proximate cause averment against the POM Defendants. *See*

*Frompovicz II*, 337 F. Supp. 3d at 507. It has not done so.

For starters, Parx has not met its pleading obligation because it has not

averred any injury "*flowing directly*" from "the deception wrought by the

defendant's advertising," *Lexmark*, 572 U.S. at 133 (emphasis added), since such a

showing requires Parx to plead facts supporting that the "deception *of consumers*

causes them to withhold trade from the plaintiff." *Id.* at 133 (emphasis added). Here

this basic test is failed because the allegedly false advertising was *to the* Operators

*and* the Locations, *see* Compl. ¶¶ 95, 101, and *not* to the Players. Thus, the

"consumers" who were allegedly deceived are the Operators and the Locations. And

Parx never avers, because it cannot, that its customers are now, or ever were, the

Operators or the Locations. Hence, the deception "of consumers" under the *Lexmark*

test—again, the Operators and Locations—did not cause them "to withhold trade"

from Parx.

Further still, Parx has not satisfied its proximate cause pleading obligation because its Complaint—like that of the plaintiff in *Frompovicz II*—"stretches [Parx's] proximate cause theory to the breaking point." 337 F. Supp. 3d at 510. To illuminate, it appears Parx's theory of causation is that ***every*** bit of money placed by a Player into a POM Defendant-licensed machine is money that the Player would have otherwise placed into a Parx-operated machine. *See* Compl. ¶ 79 ("if unlicensed slot machine operations were halted in Pennsylvania, the players would play licensed slot machines at casinos and/or online instead, and the revenue currently generated from unlicensed machines would be realized by licensed, tax-paying slot machine operators"). It appears Parx's theory is that Players will play whatever device is closest to them, and if the POM Defendant-licensed machines are closer, they will be used. *See* Compl. at ¶ 77.

This theory of causation requires speculation on speculation to be countenanced as plausible. It requires the Court to accept, based on threadbare allegations, that Players—none of whom are identified by name, by residence within the geographic proximity of Parx, or by which Location or Operator they play at (and how close that Location or Operator is to the Parx casino)—have a 1:1 relationship with Parx; i.e., every "sale" to a Location or Operator from a Player is *per se* a lost "sale" for Parx (as in *Lexmark*). But nowhere is that alleged, nor could it be, because it is wildly speculative.

Lastly, Parx's theory of causation fails on the face of the Complaint since Parx avers it has an online gaming license that allows it to accept "wagers from

eligible persons anywhere within the Commonwealth," *see* Compl. ¶ 54, and then avers that Players will play whatever machine is closest to them. *See* Compl. ¶ 77. By that logic, Players won't get off the couch to play a POM Defendant game since they have a Parx-hosted game in their pocket on their phone, so the theory of causation fails. Stated otherwise, the averments show the utter "'speculative … proceedings'" or "'intricate, uncertain inquiries'" required to guess whether any given Player anywhere in the Commonwealth at any time played a POM Defendant game instead of going to Parx, either online or in person. *See Lexmark*, 572 U.S. *at* 140.

In sum, Parx has failed to plead facts sufficient to support proximate cause for its Lanham Act claim in Count I, and, accordingly, that claim should be dismissed.

**B.    The common law unfair competition claim for deceptive marketing in Count II is coextensive with the Lanham Act and, therefore, should also be dismissed.**

Parx's common law unfair competition claim, like its Lanham Act claim, is a challenge to POM Defendants' marketing of the skill games. Federal courts agree that a common law claim for unfair competition under Pennsylvania law is functionally equivalent to a Lanham Act claim for deceptive marketing. Pennsylvania courts follow the Restatement (Third) of Unfair Competition, under which unfair competition exists where a party harms another's commercial through deceptive marketing, as defined in the Restatement. Restatement (Third) of Unfair Competition § 1. In turn, the Restatement defines deceptive marketing as existing

where a party, "in connection with the marketing of goods or services, makes a representation relating to [a competitor's] own goods, services, or commercial activities that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another[.]" *Id.* § 2. As defined in the Restatement, deceptive marketing mirrors the Lanham Act's description of the same. *See* 15 U.S.C. § 1125(a) (permitting recovery where a party, in connection with goods or services, uses a word or term likely to deceive as to the sponsorship or approval of the goods or services of another).

Recognizing there is no meaningful difference between these standards, this Court stated "[t]he Pennsylvania common law cause of action for unfair competition is identical to claims under the Lanham Act, *sans* the federal interstate commerce requirement." *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504 n.5 (E.D. Pa. 2018); *see also I.M. Wilson, Inc. v. Otvetstvennostyou ("Grichko")*, 500 F. Supp. 3d 380, 414 (E.D. Pa. 2020) ("The common law cause of action mirrors the Lanham Act's cause of action for unfair competition, although the former does not require that the goods travel in interstate commerce."); *Checker Cab Phila., Inc. v. Uber Technologies, Inc.*, No. 14-7265, 2015 WL 966284, at *3 n.3 (E.D. Pa. March 3, 2015) (stating that under "an abundant line of cases from this circuit, an unfair competition claim under Pennsylvania is the equivalent of a federal Lanham Act claim"). Therefore, if a party fails to state a deceptive marketing claim under the Lanham Act, an unfair competition claim premised on the same facts will also fail. In *Larry Pitt*, for instance, this Court granted summary judgment to dismiss a

Lanham Act claim and, subsequently, an unfair competition claim that was premised on the same facts and legal argument supporting the Lanham Act Claim. 294 F. Supp. 3d at 343.

For all the reasons Parx fails to state a claim for relief under the Lanham Act, Parx also fails to state a claim for unfair competition because it cannot plead proximate causation. Parx baselessly avers that the POM Defendants compete with Parx casino, Compl. ¶ 116, in direct contradiction to its earlier averments acknowledging that POM Defendants' customers are the Operators who purchase the machines, *see id.* ¶¶ 17-18, 81, 149. Moreover, Parx cannot allege that the Players are the POM Defendants' customers. Accordingly, Parx is not the POM Defendants' direct competitor such that it can state a claim for an unfair competition claim. Further, Parx cannot show unique circumstances to support its proximate causation for unfair competition claim as an indirect competitor. Again, Parx speculates that the POM Defendants' advertising takes market shares of players and profits from Parx. *See id.* ¶¶ 125-27. This speculation cannot support proximate cause permitting recovery under either the Lanham Act or a common law unfair competition claim. Therefore, Count II should be dismissed.

### C.      The tortious interference with business relations claim in Count III fails because of Parx's failure to plead a non-speculative theory of causation.

A plaintiff averring a Pennsylvania state law claim of tortious interference with business relations must plead four elements:

(1) a prospective contractual relation;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damages *resulting from* the defendant's conduct.

*InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa. Super. 2006) (emphasis added; citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)). Impounded into the tort is a causation requirement that "but for" the defendant's allegedly tortious conduct, it was "reasonably probable" that the plaintiff would have entered into a contractual relation. *See id.* (quoting *Thompson*); *see also id.* at 634 (applying "but for" and "reasonably probable" standards). Furthermore, an absence of actual damages forecloses a tortious interference claim. *See Pelagatti v. Cohen*, 536 A.2d 1337, 1343-44 (Pa. Super. 1987).

Applied here, Parx has failed to plead anything other than an implausible, utterly speculative claim of injury; that is, Parx has failed to plead adequate facts to show (1) that but-for the POM Defendants' conduct Parx would have entered into prospective contractual relations or (2) that it suffered actual damages "resulting from" the POM Defendants' purportedly tortious conduct. This is the case precisely for the reasons explained at length regarding the Lanham Act claim. Parx's theory of injury is entirely based on unsupported, threadbare allegations that some unidentified Player, somewhere, would have gambled at Parx's casino if not for some unidentified Pennsylvania Skill game placed at some unidentified Location by some unidentified Operator. *See supra* § II.A.2. In effect, Parx asks the Court to

accept for pleading purposes that Parx can proceed to discovery based only allegations that skill games exist somewhere in Pennsylvania and that Parx lost business (how much, from whom, when, are all unalleged), which business it hoped to receive based on *other states'* gambling industries or its own undescribed internal forecasts (based on this unadorned pleading, one is left to wonder whether Parx suffered "actual damages" at all). *See* Compl. ¶ 139. But despite Parx's belief in the adequacy of its averments, this speculation-based pleading is not, in fact, enough to survive a Rule 12(b)(6) motion. Consequently, Count III should be dismissed.

> **D.   Parx's claim for negligence per se in Count IV is not an independent cause of action and, in any event, is insufficient to support the claim.**

Parx's failure to state a claim in Count IV is twofold. First, negligence per se is not an independent cause of action and should be dismissed on that basis. Second, even if Parx has properly alleged a negligence claim through a negligence per se liability theory, it has failed to state a claim because Section 5513 of the Crimes Code is not intended to protect Parx.

> **1.      Parx cannot plead a claim for negligence per se alone.**

Parx specifically seeks relief for negligence per se in Count IV. *See* Count IV, Wherefore Cl. It is well established, however, that negligence per se is not an independent, separate cause of action. *See In re Rutter's Inc. Data Security Breach Litigation*, 511 F. Supp. 3d 514, 531 (M.D. Pa. 2021) (collecting cases). Instead, negligence per se is a theory of liability that *may* support a claim of negligence. *Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics*, 2020 WL 7353105

(E.D. Pa. Dec. 9, 2020); *Simmons v. Simpson House*, 224 F. Supp. 3d 406, 413 (E.D. Pa. 2016). Pennsylvania courts follow the traditional four elements of negligence – a duty owed to the plaintiff, a breach of that duty by the defendant, injuries caused by the breach, and resulting damages. *In re Rutters*, 511 F. Supp. 3d at 525. Negligence per se is a theory under which a party can seek to establish the duty of care and breach of that duty through "an applicable statute, ordinance, or regulation designed to prevent a public harm." *Id.* at 531 (quoting *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014)). Indeed, negligence per se is an evidentiary presumption that may establish a breach of duty but does not independently permit a basis for suit. *Simmons*, 224 F. Supp. 3d at 413.

Parx alleges a negligence per se claim for an alleged violation of Section 5513 of the Crimes Code, contending that a "violation [thereof] is negligence per se." Compl. ¶ 142. Regardless of whether Section 5513 creates a duty or whether that duty has been violated, this cannot establish a claim for relief alone. Because negligence per se is not an independent cause of action, Count IV must be dismissed.

### 2.      Section 5513 cannot support a theory of negligence per se.

Even under a generous reading of the Complaint as pleading a cause of negligence (and not negligence per se, as it actually pleads), Parx fails to state a claim. A plaintiff asserting a negligence claim under a theory of negligence per se, must demonstrate that (1) the statute or regulation clearly applies to the defendant's conduct, (2) the defendant violated the statute or regulation, (3) the

violation proximately caused the injuries, and (4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually as opposed to the public. *Schutt v. Melmark, Inc.*, 186 F. Supp. 3d 366, 377 (E.D. Pa. 2016). Where the purpose of the statute is to protect the general interest of the public, there is no viable negligence per se theory. *See Wartluft v. Milton Hershey Sch. and Sch. Trust*, 400 F. Supp. 3d 91, 113-14 (M.D. Pa. 2019).

Some statutes are evidently for the benefit of the plaintiff, as opposed to the general public, and can validly support a theory of negligence per se. For instance, in *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638 (E.D. Pa. 1999), plaintiffs who were sexually abused by their foster parents brought suit against the social service agencies that placed them. Along with other tort claims, the plaintiffs argued the agencies were negligent by violating provisions of the Pennsylvania Child Protective Services Law ("CPSL"), 23 Pa.C.S. § 6301, *et seq.* Recognizing that the CPSL was enacted to address the need of abused children to have child protection services, this Court held that the plaintiffs were the "clear beneficiaries of the statute," the statute applied to the conduct of the agencies and, therefore, the plaintiffs averred sufficient facts to state a claim for negligence. *Jordan*, 66 F. Supp. 2d at 644.

On the other hand, statutes that simply seek to protect the general public from certain harms are not for the benefit of specific plaintiffs and cannot form the basis for a successful negligence per se theory. *See, e.g.*, *Wartluft*, 400 F. Supp. 3d at 113-14; *Fulton Bank N.A. v. Sandquist*, No. 2306 EDA 2016, 2017 WL 4284923, at *14 (Pa. Super. Sept. 27, 2017). The Middle District Court recognized this principle

17

in *Wartluft*, where plaintiff parents claimed a residential school violated the Fair
Housing Act and Americans with Disabilities Act in its discharge of a student.
400 F. Supp. 3d at 113-14. Quoting this Court, the Middle District explained that
claims for negligence per se are "virtually indistinguishable, substantively, from a
direct claim under the same statute," because both causes of action address the
policy behind the statute. *Id.* at 113 (quoting *Nichols v. Ferguson*, No. 03-824, 2004
WL 868222, at *11 (E.D. Pa. Apr. 21, 2004)). Statutes like the Americans with
Disabilities act could not serve the basis for a negligence action because the statute
was enacted to combat discrimination and not to protect disabled individuals or
their families from personal injuries. *Id.* The plaintiff parents were not "within the
class of people designed to be protected by either [statute,]" nor could the statutes
serve as the basis for negligence per se. *Id.* at 114. Therefore, the Court dismissed
the negligence claims brought on the parents' behalf. *Id.*

In *Sandquist*, the Superior Court similarly recognized the futility of a
negligence per se claim premised on a criminal statute that did not plainly intend to
protect specific classes of people. 2017 WL 4284923, at *14. The plaintiff bank in
*Sandquist* brought, *inter alia*, a claim for negligence against an accountant firm for
failing to follow generally acceptable accounting principles for a refinance borrower
engaged in fraudulent finance practices. In relevant part, the bank claimed that the
accountants were negligent and violated state and federal crime statutes for wire
fraud and deceptive business practices, 18 U.S.C. § 1343, 18 Pa.C.S. § 4107.
*Sandquist*, 2017 WL 4284923, at *13. Because these statutes were "too general," the

Superior Court agreed with the trial court that the bank failed to state a viable claim under a negligence per se theory. *Id.* at *13-14. As opposed to statutes that "clearly indicate an intention to protect specific groups from specific types of harm," these criminal statutes were "to protect the interests of the general public against wire fraud and deceptive business practices," not to protect a specific group like banks or lending institutions. *Id.* at *14.

Section 5513 of the Crimes Code, just like the wire fraud and deceptive business practices provisions, is for the purpose of protecting the general public. It does not "clearly indicate an intention to protect specific groups from specific types of harm," whether casinos or otherwise. *Id.* In fact, without reference to casinos, the Gaming Act, or licensed slot machines, Section 5513 simply makes it a misdemeanor to intentionally or knowingly make and/or sell slot machines. 18 Pa.C.S. § 5513(a). The plain language of the statute, which Parx cannot avoid, does not evidence an intent to protect anyone other than the public at large. Therefore, because this is a general provision, it cannot form the basis of negligence per se.

Nevertheless, Parx emphasizes the purpose of the Gaming Act in an effort to support Parx's claim, Compl. ¶¶ 146-48, but the purpose of this separate statutory scheme cannot support a finding that Section 5513 is intended to protect a specific class of people. Indeed, the General Assembly enacted the first iteration of Section 5513 in 1972, *see* Act 334 of 1972, P.L. 1482 (effective June 6, 1973), ***over 30 years before*** the legislation that allowed Parx to conduct business was enacted in 2004.

*See* Compl. ¶ 34 (discussing 2004 amendments to the Gaming Act). The purpose of Section 5513 at that time was evidently not to protect the interests of Parx or other similar entities who wouldn't be licensed under the Gaming Act for another three decades. Thus, because Section 5513 is plainly to protect the interest of the public rather than Parx individually, Parx has no viable negligence per se theory to support Count IV and, therefore, it should be dismissed. *See Wartluft*, 400 F. Supp. 3d at 113.

## III.   CONCLUSION

Parx has not set forth sufficient facts to allege plausible claims for relief against the POM Defendants. In chief part, Parx has failed to allege any viable theory of causation between its alleged injuries and conduct by the POM Defendants. Parx has also otherwise failed to support its claims. Therefore, the POM Defendants respectfully request that the Court grant their Motion to Dismiss and immediately dismiss with prejudice all Counts in the Complaint.

Respectfully submitted,

Dated: November 11, 2022

*/s/ Edward T. Butkovitz*
Matthew H. Haverstick (No. 85072)
Edward T. Butkovitz (No. 309565)
Shohin H. Vance (No. 323551)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000 | Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
ebutkovitz@kleinbard.com
svance@kleinbard.com
*Attorneys for the POM Defendants*