**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 2:22-cv-4434-MMB |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| POM OF PENNSYLVANIA, LLC, PACE-O-MATIC, INC., and MIELE MANUFACTURING, INC., | : | |
| | : | |
| *Defendants.* | : | |

## MIELE MANUFACTURING, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Miele Manufacturing, Inc. ("Miele"), by and through its undersigned counsel, hereby moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss, with prejudice, all Counts of Plaintiff Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino's Amended Complaint for failure to state claim. In support of this request, Miele incorporates by reference the accompanying Brief in Support of the Motion.

Respectfully submitted,

Dated: January 3, 2023

MCCORMICK LAW FIRM

By:    /s/ Marc F. Lovecchio
       Marc F. Lovecchio, Esquire
       PA I.D. No. 41244
       835 West Fourth Street
       Williamsport, PA 17701
       Phone: (570) 326-5131
       Email: mlovecchio@mcclaw.com
       *Attorney for Defendant Miele*
       *Manufacturing, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 2:22-cv-4434-MMB |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| POM OF PENNSYLVANIA, LLC, | : | |
| PACE-O-MATIC, INC., and | : | |
| MIELE MANUFACTURING, INC., | : | |
| | : | |
| *Defendants.* | : | |

**MIELE MANUFACTURING, INC.'S BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino (hereafter, "Parx") wishes it made more money offering gambling to Pennsylvanians via slot machines, both online and in-person. It seemingly believes the *billions* of dollars hauled in across the Commonwealth by Pennsylvania casinos, like Parx, could be *more billions* still if only other industries were ended. To that end, Parx has come to court with a dubious theory it sincerely wishes were true: competition from lawful skill-game manufacturers, distributors and sellers, like Miele Manufacturing, Inc. ("Miele") is somehow tortious. In its Amended Complaint, Parx has doubled down and even added a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq.* to its Lanham Act and state law claims. All of this is to no avail.

Parx's Amended Complaint is an ill-conceived and improper attempt to privately enforce laws regulating gambling—which themselves do not provide for

2

private rights of action—through RICO, the Lanham Act and related state law claims for unfair competition and tortious interference with business relations. As discussed below, courts have rejected similar attempts to enforce state laws and regulations that do not otherwise provide for a private cause of action.

Parx's Amended Complaint also is built upon the legally erroneous assumption that the Miele skill games are subject to the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §1101, *et seq.*, as amended (the "Gaming Act"). They are not, as the Pennsylvania Commonwealth Court expressly found in 2019 in the case *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Dept. of Revenue*, 221 A.3d 717, 736 (Pa. Cmwlth. 2019). Parx completely omits this critical fact from its Amended Complaint. Thus, Parx's claims fail as a matter of law to the extent that they are based on the Gaming Act.

Furthermore, Parx's claims are based on a speculative theory of causation unsupported by plausible facts. This causation shortcoming infects each claim in the Amended Complaint, foreclosing success. Finally, Parx also has failed to plead the wire and mail fraud portions of its RICO claim with the specificity required by Federal Rule of Civil Procedure 9(b).

For all these reasons, as explained in more detail below, Miele moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss each of the claims in Parx's Amended Complaint for failure to state a claim.

I.  **PROCEDURAL HISTORY AND FACTS**

A.  **Procedural History**

On April 7, 2022, Parx initiated proceedings against Miele and POM of Pennsylvania, LLC and Pace-O-Matic, Inc. ("POM Defendants") (collectively referred to as the "Defendants") by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Philadelphia County. Thereafter, on October 7, 2022, Parx filed and served its Complaint, which pled four counts: (1) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) common law unfair competition; (3) tortious interference with business relations; and (4) negligence *per se*. On November 4, 2022, the POM Defendants, with the consent of Miele, removed the Complaint to this Court under 28 U.S.C. §§ 1441 and 1446, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. The Defendants then filed a Motion to Dismiss for Failure to State a Claim under F.R.C.P. 12(b)(6), doing so within 7 days of removal, as required by F.R.C.P. 81(c)(2)(C). Parx responded by filing its Amended Complaint on November 21, 2022, which pleads four counts: (1) a RICO claim pursuant to 18 U.S.C. §1962(c); (2) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (3) common law unfair competition; and (4) tortious interference with business relations. On November 30, 2022, the Court issued an order extending Defendants' deadline for filing a responsive pleading to Parx's Amended Complaint until January 4, 2022. Miele now files its Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim under F.R.C.P. 12(b)(6)

### B.    Facts

As a preliminary matter, this dispute is centrally about whether the skill games the Defendants design, manufacture, distribute and/or sell are lawful games of skill or are illegal "slot machines" under Pennsylvania law. Parx serially refers to the skill games as "illegal slot machines" in the Amended Complaint, *see, e.g.*, Am. Compl. ¶¶ 1,7, 11, 15 and 17, which is a description the Defendants strenuously deny because the skill games are neither illegal nor slot machines. However, because the Motion before the Court is one to dismiss under Rule 12(b)(6) and all facts in the Amended Complaint are assumed true, this Brief therefore sometimes uses the "slot machine" nomenclature set forth in the Amended Complaint.[1] But such usage is solely because of the procedural posture and not because the POM Defendants admit that the description applies.

Parx operates a casino in Bensalem, Pennsylvania (Bucks County). Am. Compl. ¶¶ 4, 70, 81. In addition to table games, it offers gambling opportunities through slot machines, in-person at its facility and online through an interactive gaming license. Am. Compl. ¶¶ 4, 70, 81, 85-89. Parx does not plead it manufactures slot machines or any other gaming device, and does not plead it places slot machines, made by others, at locations other than its own licensed facility. *Cf.* Am.

---

[1] Notably, whether a game is lawful or not under Pennsylvania law is a mixed question of law and fact, so even the "factual" description used by Parx is in meaningful part a legal conclusion. *See POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Dept. of Revenue*, 221 A.3d 717, 737 n.19 (Pa. Cmwlth. 2019) ("Our denial of the Department's application, however, does not decide the separate question raised in POM's claim, i.e., whether the POM Game is an illegal gambling device under the Crimes Code, which both parties appear to acknowledge requires discovery in order to resolve.").

Compl. ¶¶ 4-5. As it concerns slot machines, Parx's customers are the persons who play those games. *See* Am. Compl. ¶¶ 157, 170, 194, 201.

Parx alleges Pace-O-Matic "designs and licenses software and game fills" for the machines branded "'Pennsylvania Skill' Games." Am. Compl. ¶ 7. Regarding POM, Parx states that it "is an affiliate of Pace-O-Matic." Am. Compl. ¶ 11. As to Miele, the Amended Complaint alleges it "manufactures electronic machines, including Illegal Slot Machines made to Pace-O-Matic's specifications." Am. Compl. ¶ 15.

The Complaint alleges a tiered business relationship between the Defendants and others. Specifically, Parx claims: (i) "Pace-O-Matic designs and licenses software and game fills" for the skill games (Am. Compl. ¶ 20); (ii) POM is responsible for licensing the software, game fills and trademarks to Miele (Am. Compl. ¶¶ 21, 23, 35); and (iii) Miele manufactures physical cabinets to Defendant Pace-O-Matic's specifications for the skill games, loads the "Pennsylvania Skill" software into the cabinet and sells the skill games to operators (hereafter, "the Operators") (Am. Compl. ¶¶ 22, 24, 35-37). The Operators enter into Operator Agreements with POM and Miele and are given licenses for the software, trademarks and trade names. Am. Compl. ¶¶ 35-36. The Operators, in turn, place the skill games at locations purportedly approved by POM and Miele, which locations include clubs, bars, restaurants, gas stations, and convenience stores (hereafter, "the Locations"). Am. Compl. ¶¶ 37, 39-41 The skill games are then played at the Locations by customers of the Locations. Am. Compl. ¶ 38.

The essential core of Parx's claims of aggrievement are twofold and both are based on the false assumption that the Defendants' skill games are illegal under Pennsylvania law. First, and primarily, Parx claims the skill games are illegal gambling devices under Pennsylvania law (Am. Compl. ¶¶ 58-68), that Defendants are engaged in unlawful gambling activity (Am. Compl. ¶¶114-119), and that Defendants' skill games unlawfully compete with the gambling Parx offers to the public through its licensed in-person and online gaming devices (Am. Compl. ¶¶ 107-108, 116, 156-158, 169-170, 182, 194-195, 206). Second, Parx alleges the Defendants defraud the Commonwealth of Pennsylvania and consumers by falsely advertising and branding their skill games as lawful games of skill. Am. Compl. ¶120. In particular, Parx alleges that Defendants advertise the games on their websites as "legal" games of skill. Am. Compl. ¶¶ 121-122. Parx claims this advertising is not truthful, averring instead the games are games of chance—and not skill—and that they are "illegal slot machines" under Pennsylvania law. *E.g.*, Am. Compl. ¶ 123.

Parx further alleges that because of Defendants' alleged actions: (i) it has lost profits, market share and customers (Am. Compl. ¶¶ 157, 170, 194-195, 206); and (ii) its "licensed slot machine business has stagnated relative to other states, relative to industry forecasts, and relative to Parx Casino's internal forecasts" (Am. Compl. ¶¶ 157, 172, 196). Parx's Amended Complaint does not identify a single customer who allegedly played one of the Defendants' skill games instead of playing a slot machine at Parx's casino. Likewise, the Amended Complaint does not cite a

single market study or survey to support Parx's conclusory allegations that it

purportedly has lost market share and customers to the Defendants' skill games.

## II.   ARGUMENT

### A.   The Court should dismiss all of Parx's claims because Parx is improperly attempting to enforce laws regulating gambling that do not provide for private causes of action.

As a threshold matter, the Court should dismiss all of Parx's claims because

they are an improper attempt to privately enforce laws regulating gambling—which

do not provide for private rights of action—through RICO, the Lanham Act and

related state law claims. Indeed, Parx's RICO claim, its Lanham Act claim and its

state law unfair competition and tortious interference with business relations

claims are all based upon the same exact underlying premise—the Defendants'

alleged violation of laws that regulate gambling, including the Gaming Act, Section

5513 of the Pennsylvania Crimes Code, 18 Pa.C.S. §5513 ("Section 5513") and

Section 1955 of Title 18 of the United States Code, 18 U.S.C. § 1955 ("Section

1955"), through their design, manufacture, selling and/or distribution of skill

games. *See, e.g.,* Am. Compl. at ¶¶1-3, 58-68, 114-127, 135-159, 163-171, 182-193

and 203-206. Under similar circumstances, courts have rejected indirect attempts to

enforce laws or regulations that do not provide for private rights of action through

RICO, the Lanham Act and related state law tort claims.

For example, in *Checker Cab Philadelphia, Inc. v. Uber Technologies, Inc.*,

2016 WL 950934 (E.D. Pa. March 7, 2016), *aff'd*, 689 Fed.Appx. 707 (3d Cir. May 25,

2017), plaintiffs brought RICO, Lanham Act and unfair competition claims

primarily premised on defendants' alleged unlawful operation of taxi services in

8

Philadelphia in violation of state and local laws. *Id.* at *3 (describing claims as "primarily premised upon Defendants' purported unauthorized and unlawful transportation services in Philadelphia, in violation of various state and local laws and regulations"). Relying on the reasoning of the Third Circuit Court of Appeals in *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990),[2] the D.C. Circuit Court of Appeals in *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996)[3] and other cases, the court found that plaintiffs could not use RICO, Lanham Act and unfair competition claims to indirectly create private rights of action that the state and local laws at issue did not directly create. *Id.* at *4-5 ("This reasoning remains true today, as this Court is unaware of any judicial decision, authoritative or otherwise, in which the Lanham Act was extended to the essential interpretation and enforcement of local regulations or to provide private causes of action where none are provided in the regulations."); *see also id.* at *9 ("Just as the Lanham Act cannot be used to create an otherwise nonexistent private cause of action for enforcement of state and local regulations, neither can the RICO statute. This is just the type of 'widespread abuse of civil RICO' of which courts frequently are critical." (citations omitted)). As a result, the court granted defendants' motions to dismiss. *Id.* at *14; *see also Philadelphia Taxi Assoc. Inc. v. Uber Technologies*, 218 F. Supp. 3d 389, 394-95 (E.D. Pa. 2016) (finding plaintiff's

---

[2] *Sandoz* involved a Lanham Act claim based in part on an alleged mislabeling violation under the federal Food, Drug and Cosmetic Act. *See Sandoz*, 902 F.2d at 230-31.

[3] *Dial A Car* involved a Lanham Act claim based on alleged violations of D.C. taxi regulations. *See Dial A Car*, 82 F.3d at 485.

unfair competition claim "necessarily fails, however, as it is premised on violations of state and local regulations which do not create a private right of action and thus cannot form the basis of an unfair competition claim."); *Coachtrans, Inc. v. Uber Technologies, Inc.*, 2016 WL 4417261, at *4 (E.D. Pa. Aug. 19, 2016) ("We agree with Uber that the holdings in *Checker Cab Phila. Inc. v. Uber Techs., Inc.*, No. 14-7265, 2016 WL 950934 (E.D. Pa. March 7, 2016) and *Dial A Car, Inc. v. Trans., Inc.*, 82 F.3d 484 (D.C. Cir. 1996) warrant dismissal of Plaintiff's Lanham Act claim. Plaintiff's claim is premised on alleged violations of state and local taxi regulations, which, as a matter of law, do not provide a private cause of action.").

Courts have applied similar reasoning to a claim for tortious interference that is premised on an alleged underlying violation of a state law or regulation that does not provide for a private right of action. For example, in *Philadelphia Taxi Assoc., supra,* the court granted a motion to dismiss plaintiffs' claim for tortious interference with an existing or prospective contract, stating:

> Plaintiffs fail to demonstrate an independent basis for their tortious interference claim. Like their unfair competition claim, Plaintiffs' tortious interference claim arises out of Uber's alleged violations of state and local regulations. Just as the Court found these alleged violations cannot support Plaintiffs' unfair competition claim, they likewise cannot support their tortious interference claim. Plaintiffs' tortious interference claim will therefore be dismissed.

*See Philadelphia Taxi Assoc.*, 218 F. Supp. 3d at 396; *see also Coachtrans,* 2016 WL 4417261 at *7.

Similarly, in this case, the Gaming Act, Section 5513 and Section 1955 do not create private rights of action:

- The Gaming Act does not create a private right of action for casino operators, like Parx, to enforce the terms of the Act. Rather, the Gaming Act created the Pennsylvania Gaming Control Board and vested enforcement authority in that entity. *See* 4 Pa.C.S. §1201(a) ("Board established—There is established an independent board which shall be a body corporate and politic to be known as the Pennsylvania Gaming Control Board"); 4 Pa.C.S. §1202(a)(1) ("The board shall have general and sole regulatory authority over the conduct of gaming and related activities as described in this part. The board shall ensure the integrity of the acquisition and operation of slot machines, table games, table game devices and associated equipment and authorized interactive games and interactive gaming devices and associated equipment and shall have sole regulatory authority over every aspect of the authorization, operation and play of slot machines, table games and interactive gaming devices and associated equipment."). The Gaming Act also created, within the Gaming Control Board, an independent Bureau of Investigations and Enforcement. *Id.* at § 1517.

- Section 5513 is a state criminal statute that does not provide for a private cause of action. *See* 18 Pa.C.S. § 5513.

- Section 1955 is a federal criminal statute that also does not provide for a private cause of action. *See* 18 U.S.C. § 1955; *see also ManorCare of Easton PA LLC v. Estate of Nagy*, 2017 WL 4347624, at *4 (E.D. Pa. Sept. 29, 2017) ("Title 18 of the United States Code is a federal criminal statute which 'does not create civil liability or a private right of action.' Generally, a private party may not maintain suit under most provisions of Title 18. In the criminal context, the Supreme Court has refused to imply a private right of action in a bare criminal statute." (citations omitted)); *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.").

Nevertheless, Parx is seeking to enforce these laws through its RICO, Lanham Act and state law tort claims. This Court should reject Parx's attempt to do so for the same reasons that the courts discussed above rejected plaintiffs' attempts to enforce other laws and regulations that did not provide for private rights of action through RICO, the Lanham Act and related state tort claims.

**B.     The Court should dismiss Parx's claims to the extent they are
based on the Gaming Act because the Gaming Act is
inapplicable to the Defendants' skill games.**

The Court also should dismiss Parx's claims to the extent that they are based
on the Gaming Act because the Pennsylvania Commonwealth Court has found that
the Gaming Act does not apply to the Defendants' skill games. *See POM of
Pennsylvania, LLC v. Commonwealth of Pennsylvania, Dept. of Revenue*, 221 A.3d
717, 736 (Pa. Cmwlth. 2019) (the "*POM* Decision").

The Gaming Act is critical to Parx's theories of liability and its Amended
Complaint is built on the assumption that the Gaming Act is applicable to the
Defendants' skill games. Indeed, intertwined throughout Parx's Amended
Complaint are numerous references to the Gaming Act, including that:
(i) Defendants' skill games purportedly are illegal slot machines under the Gaming
Act; (ii) Section 5513, and in particular its reference to "slot machine," must be
interpreted in reliance on the Gaming Act; and (iii) Defendants' are evading the
Gaming Act's tax and regulatory scheme. *See, e.g.,* Am. Compl. ¶¶ 1-3, 56-66, 95,
126-127, 138, 140-141, 167, 184, 187, 190. Notwithstanding these numerous
references to the Gaming Act, Parx does not once in the 41 pages and 209
paragraphs of its Amended Complaint mention that the Pennsylvania
Commonwealth Court in the *POM* Decision found that the Defendants' skill games
***are not subject to the Gaming Act***. Parx is trying to hide the ball.

In the *POM* Decision, the Commonwealth Court addressed the
Commonwealth's claim that the Defendants' skill games are slot machines under
the Gaming Act and that POM violated the Gaming Act by manufacturing and

supplying the skill games without a license from the Gaming Control Board. *See POM of Pennsylvania, LLC*, 221 A.3d at 721. The court conducted a thorough review of the statutory framework created by the Gaming Act and its legislative history and, while not addressing the legality of the skill games under Section 5513, determined: "[B]ased on both the plain language of the Gaming Act, as well as its legislative history, we conclude that unlicensed slot machines and/or slot machines that are not approved by the Gaming Control Board, such as the POM Game, are not subject to the Gaming Act." *Id.* at 734-35.[4] Ultimately, the court concluded:

> Because the plain language of the Gaming Act indicates that the General Assembly did not intend for the Gaming Act to regulate unlicensed slot machines which fall outside the ambit of the licensed facilities clearly delineated by the Gaming Act, and/or supplant the Crimes Code's regulation of the same, we conclude that the POM Game is not subject to the Gaming Act.

*Id.* at 736.[5]

While not binding on this Court, the *POM* Decision is persuasive authority from the only state court to address this issue. *See General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 303, n.1 (3d Cir. 2003) ("We are not bound by the jurisprudence of lower state courts, but often refer to them as persuasive authority."). And based on the Commonwealth Court's holding in the *POM* Decision, Parx cannot maintain its claims to the extent they are based on the Gaming Act.

---

[4] The court also found that the Gaming Act did not repeal Section 5513's regulation of illegal gambling devices and that Section 5513, not the Gaming Act, continued to be the statute that regulated alleged unlicensed gambling devices in Pennsylvania. *See POM of Pennsylvania, LLC*, 221 A.3d at 736.

[5] The court also noted that "we hold that the Gaming Act is inapplicable to the POM Game." *See POM of Pennsylvania, LLC*, 221 A.3d at 736, n.17.

Parx cannot establish any claims through allegations that the Defendants' skill games violate the Gaming Act or that the Defendants are evading the Gaming Act's tax and regulatory schemes because, as the Commonwealth Court found, the Gaming Act simply does not apply to the Defendants' skill games.

Accordingly, this Court should dismiss Parx's claims for failure to state a claim to the extent that they are premised on the Gaming Act, and strike any references to the Gaming Act from the Amended Complaint.

### C. The Court should dismiss Parx's RICO claim in Count I because Parx has failed to plead proximate cause.

Parx's RICO claim also fails to state a claim for the additional reason that the Amended Complaint fails to plead facts that satisfy RICO's proximate cause requirement.

#### 1. The RICO proximate cause standard

Count I of the Amended Complaint asserts a claim pursuant to Section 1962(c) of RICO. 18 U.S.C. § 1962(c). Persons injured by violations of Section 1962 can bring a civil action under Section 1964 of RICO. *Id.* at § 1964(c). The United States Supreme Court has interpreted Section 1964(c) to require that a plaintiff plead that a RICO predicate offense was both the "but for" and proximate cause of any alleged injury:

> [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.*, at 268, 112 S.Ct. 1311. Proximate cause for RICO purposes, we made clear, should be evaluated in light of its common-law foundations; proximate cause thus requires "some direct relation between the injury asserted and the injurious conduct alleged." *Ibid.* A link that is "too remote," "purely

14

contingent," or "indirec[t]" is insufficient. *Id.*, at 271, 274, 112 S.Ct. 1311.

*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 271, 274 (1992)).

Regarding proximate cause, the Supreme Court has observed that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step" and that this "general tendency applies with full force to proximate cause inquiries under RICO." *Id.* at 10 (quoting *Holmes,* 503 U.S. at 271-72). Among the factors that the Supreme Court has found to be indicia of a lack of RICO proximate cause are indirectness of an alleged injury, speculative or complicated damages and the existence of another party better situated than plaintiff to sue the defendant. *Id.* at 9-12; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (discussing RICO proximate cause standard); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 263-66 (3d Cir. 1999) (analyzing three key factors in determining RICO proximate cause: (i) directness of injury; (ii) difficulty in apportioning damages; and (iii) whether plaintiff's claim can be vindicated by another more directly injured party).

The Supreme Court has been clear that RICO's "reach is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm." *See Hemi*, 559 U.S. at 17-18 (citing *Anza*, 547 U.S. at 460). Whether a plaintiff sufficiently pleads proximate cause to support a RICO claim is typically addressed in the context of a Rule 12(b)(6) motion. *See Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) ("Civil RICO 'standing' is usually viewed as a 12(b)(6)

15

question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction.").

### 2. The Supreme Court's decisions in *Hemi* and *Anza*

The Supreme Court's decisions in *Hemi* and *Anza,* where the Court found RICO plaintiffs had failed to plead proximate cause, are directly on point in this case. This Court need look no further than these two cases to conclude that Parx has failed to plead the proximate cause required for its RICO claim in the Amended Complaint.

In *Hemi*, the City of New York brought a RICO claim against the Hemi Group, an out of state company that sold cigarettes online to residents of the City. *See Hemi*, 559 U.S. at 4.[6] The City taxed the possession of cigarettes but state and city law did not require an out of state vendor like the Hemi Group to charge, collect or pay the cigarette tax. *Id.* at 4-5. Federal law, however, required out of state vendors to submit information concerning the customers to whom they sold cigarettes to the states into which the cigarettes were shipped. *Id.* The State of New York shared this information with the City, which the City used to recover the cigarette tax from City residents who bought cigarettes from out of state vendors like Hemi. *Id.* at 5-6. Hemi failed to submit the required customer information to the State and the City brought RICO claims against Hemi, alleging this failure

---

[6] The appeal in *Hemi* arose from a motion to dismiss. *See Hemi*, 559 U.S. at 5. The decision in *Hemi* was a plurality opinion, in which four Justices joined. Three Justices dissented from the plurality opinion, one Justice filed a concurring opinion joining in part and in the judgment, and one Justice did not participate in the consideration or decision of the case.

constituted mail and wire fraud and caused the City to lose millions of dollars in unrecovered cigarette taxes. *Id.* at 4-6.

Based on the foregoing factual allegations, the Court found that the City had failed to plead RICO proximate cause and, therefore, could not state a claim under RICO. *Id.* at 5, 17-18. The Court found that the City's causal theory—i.e., Hemi committed fraud by not submitting the customer information, which precluded the State from supplying the information to the City, which in turn prevented the City from being able to identify which customers had failed to pay the cigarette tax and pursue those customers for payment—was too "attenuated" to satisfy RICO's direct relationship requirement and "require[d] [the Court] to move well beyond the first step." *Id.* at 9-10. Relying on its decision in *Anza*, the Court held there was no direct causal connection between the RICO acts and the City's harm because the acts causing the City's harm were distinct from the RICO acts and these separate acts were carried out by separate parties. *Id.* at 11; *see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 931-32 (3d Cir. 1999) (finding plaintiffs had not pled RICO proximate cause and stating: "Here, the alleged conspiracy that delayed introduction of safer tobacco products only caused damages to the plaintiff Funds after working its way through another party (i.e., smokers) …."). The Court also noted that its finding of a lack of proximate cause was supported by the fact that the "State certainly is better situated than the City to seek recovery from Hemi." *See Hemi*, 559 U.S. at 12.

*Anza* involved a dispute between competitors in the steel mill products industry. *See Anza*, 547 U.S. at 453-54.[7] One company (Ideal) sued a second company (National) and its owners. *Id.* Ideal alleged that National had a practice of failing to charge New York state sales tax to cash-paying customers, which allowed National to reduce its prices without affecting its profit margin. *Id.* at 454. Ideal further alleged that National submitted fraudulent tax returns to the State to conceal its conduct. *Id.* Ideal brought RICO claims against National and its owners, including a Section 1962(c) claim against the owners, alleging that they had committed mail and wire fraud by submitting fraudulent tax returns. *Id.* Ideal claimed it was harmed because National's alleged scheme allowed it to gain sales and market share at Ideal's expense, giving it a competitive advantage over ideal *Id.* at 454-55.

Based on the foregoing factual allegations, the Court determined that Ideal could not maintain its Section 1962(c) claim because it could not establish the proximate cause required by RICO. *Id.* at 457-58, 460. The Court found that the actions causing Ideal's alleged harm were distinct from the alleged RICO violation:

> Ideal's theory is that Joseph and Vincent Anza harmed it by defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers. The RICO violation alleged by Ideal is that the Anzas conducted National's affairs through a pattern of mail fraud and wire fraud. The direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result.

---

[7] The appeal in *Anza* also arose from a motion to dismiss. *See Anza*, 547 U.S. at 453.

> The proper referent of the proximate-cause analysis is an alleged practice of conducting National's business through a pattern of defrauding the State. To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. The cause of Ideal's asserted arms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State). The attenuation between the plaintiff's harms and the claimed RICO violation arises from a different source in this case than in *Holmes* . . . . Nevertheless, the absence of proximate causation is equally clear in both cases.

*Id.* 457-58.

The Court also noted that one "motivating principle" underlying RICO's proximate cause directness requirement was "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* at 458; *see also Holmes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of plaintiff's damages attributable to a violation, as distinct from other, independent factors."). The Court found the case before it illustrated this point, in part because: "Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices." *Id.* at 459; *see also Steamfitters Local Union No. 420 Welfare Fund*, 171 F.3d at 932 (finding plaintiffs had not pled RICO proximate cause and stating: "Applied to the present case, if the Funds are allowed to sue, the court would need to determine the extent to which their increased costs for smoking-related illnesses resulted from the tobacco companies' conspiracy to suppress health and safety information, as opposed to smokers' other health problems, independent (i.e., separate from the

19

fraud and conspiracy) decisions to smoke, smokers' ignoring of health and safety warnings, etc. As in *Holmes*, this causation chain is much too speculative and attenuated to support a RICO claim.").

Anticipating the complicated damages inquiry that would be required if Ideal were allowed to proceed with its theory of liability, the Court observed that the proximate cause requirement is designed to prevent such a speculative, complex damage analysis: "The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws." *See Anza*, 547 U.S. at 460; *see also Holmes*, 503 U.S. at 274 ("Allowing suits by those injured only indirectly would open the door to 'massive and complex damages litigation[, which would] not only burde[n] the courts, but [would] also undermin[e] the effectiveness of treble-damages suits.'") (quoting *Associated General Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 545 (1983)).

As a last point, the *Anza* Court also observed that the "requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *See Anza*, 547 U.S. at 460. It then noted that if Ideal's tax fraud allegations were true, the State of New York could pursue appropriate remedies and "[t]here is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." *Id.*

Of critical importance in the present case, the *Anza* Court also held that a "RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *See Anza*, 547 U.S. at 460. Other courts similarly have rejected RICO claims as lacking proximate cause where a plaintiff sued a purported competitor and the plaintiff's alleged harm was loss of market share or customers.

For example, in *Callahan, supra,* a group of small beer distributors brought RICO and other claims against larger beer distributors and related parties, alleging defendants fraudulently obtained and retained licenses to operate beer distributorships and that defendants' conduct caused plaintiffs to lose customers and business because customers stopped patronizing plaintiffs' stores. *See Callahan,* 182 F.3d. at 240-41, 262. The Third Circuit Court of Appeals found that plaintiffs' alleged losses—lost business—were too remote from the conduct underlying the RICO claim for there to be proximate cause:

> The defendants contend that, with respect to the plaintiffs' RICO claim, the causal connection between the defendants' racketeering activities—defrauding the LCB—is too remote as a matter of law from the plaintiffs' losses—lost business. We agree. The LCB and the Commonwealth more generally were the direct victims of the defendants' actions; the plaintiffs' losses are at most derivative of any injuries to the LCB's regulatory mission. The plaintiffs are simply too remote to be able to bring a claim based on the defendants' actions.

*Id.* at 261. Similarly, in *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 669 (D. Del. 2008), the court found plaintiff did not have standing to bring a RICO claim against competitors for alleged lost sales:

> While plaintiff makes general allegations of lost sales, he provides no specifics. For example, he alleges defendants used fear and coercion in

an attempt to obtain property in the form of revenue and market share, without identifying the lost revenue or the market share percentage. The amended complaint does not allege "proof of concrete financial loss" and does not allege that orders for goods or services plaintiff provided were actually cancelled as a result of alleged RICO conduct. *See Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303, 1310 (9th Cir.1992). A thorough review of the amended complaint reveals that plaintiff has not alleged he has suffered an injury to his business or property sufficient to confer RICO standing.

*Id.* at 678-79.

### 3. Application of *Hemi* and *Anza* to the allegations of the Amended Complaint

Applying the Court's reasoning in *Hemi* and *Anza* to the allegations of the Amended Complaint leaves no doubt that Parx has failed to plead the proximate cause required by Section 1964(c) of RICO. Parx's RICO theory, as articulated in the Amended Complaint, is that Defendants have violated RICO by engaging in a scheme to manufacture, sell and/or distribute alleged illegal slot machines in violation of applicable laws regulating gambling. *See* Am. Compl., Count I, ¶¶133-159. Specifically, Parx alleges the following predicate acts by Defendants, all of which are premised on a purported scheme to manufacture, sell and/or distribute alleged illegal slot machines:

(i)    Manufacturing, selling, distributing and maintaining alleged illegal slot machines in violation of Section 5513, *see* Am. Compl. ¶ 141(a);

(ii)   Manufacturing, selling, distributing and operating alleged illegal slot machines in violation of Section 1955, *see* Am. Compl. ¶ 141(b);

(iii)  Wire fraud related to the publication of alleged false statements concerning the legality of the POM Defendants' skill games, *see* Am. Compl. ¶ 141(c);

(iv)   Money laundering related to the proceeds of alleged illegal gambling activities, *see* Am. Compl. ¶ 141(d);

22

(v)    Engaging in money transactions derived from unlawful activity related to the proceeds of the sale and use of the POM Defendants' skill games, *see* Am. Compl. ¶ 141(e);

(vi)   Wire and mail fraud related to filing false tax returns that allegedly disguised and concealed the proceeds from the sale and use of the POM Defendants' skill games, *see* Am. Compl. ¶ 141(f); and

(vii)  Wire and mail fraud related to communications between Georgia and Pennsylvania concerning selling, distributing and operating alleged illegal slot machines, *see* Am. Compl. ¶ 141(g).

Parx also alleges that Defendants have failed to pay taxes required by the Gaming Act. *See, e.g.,* Am. Compl. ¶¶ 1, 3, 127, 141(f). Parx further alleges harm in the form of lost profits, customers and market share because customers allegedly play the Defendants' skill games instead of visiting Parx's casino and playing its slot machines. *See, e.g.,* Am. Compl. ¶¶ 113, 157, 186. At the same time, Parx pleads in its Amended Complaint that the direct victims of Defendants' alleged conduct are the Commonwealth of Pennsylvania and its citizens, not Parx.[8]

The (at least) four similarities between the present case, on the one hand, and *Hemi* and *Anza*, on the other hand, are striking.

*First,* like plaintiffs in *Hemi* and *Anza*, the actions that directly caused Parx's alleged harm (customers' decisions to play the Defendants' skill games) are distinct

---

[8] *See, e.g.,* Am. Compl. ¶¶ 120 (alleging "a scheme to defraud the Commonwealth and consumers by fraudulently misrepresenting the nature of their Illegal Slot Machines, falsely branding them as lawful games of skill or 'skill games'"), 143 ("The predicate acts described above were related to one another and were conducted to establish and continue the common plan to operate gambling devices illegally, . . . . The purpose of that plan is to make and sell Illegal Slot Machines, place and operate those machines at Location Businesses, and defraud the people of the Commonwealth into illegal gambling activities while evading payment of taxes and undermining the lawful, regulated gaming industry.") and 149 ("[T]hey defraud the machine-using public").

from the RICO predicate acts (manufacturing, selling and distributing alleged illegal slot machines, failing to pay taxes required by the Gaming Act and related mail fraud, wire fraud and money laundering). Indeed, the *Anza* Court's reasoning applies equally here: "The cause of [Parx's] asserted harms, however, is a set of actions ([customers' decisions to play the skill games]) entirely distinct from the alleged RICO violations ([manufacturing, selling and distributing alleged illegal slot machines, failing to pay taxes required by the Gaming Act and related mail fraud, wire fraud and money laundering])." *See Anza*, 547 U.S. at 458.

*Second,* Parx's theory of liability, like the plaintiff's theory in *Hemi*, is attenuated because Parx's theory rests on separate actions carried out by separate parties. While the alleged RICO acts were engaged in by Defendants, Parx's alleged harm resulted directly from customers' actions. The *Hemi* Court's reasoning applies with equal force: "[Parx's] theory thus requires that we extend RICO liability to situations where the [Defendants'] alleged fraud on the third party ([the Commonwealth of Pennsylvania and its citizens]) has made it easier for a fourth party ([the customers]) to cause harm to [Parx]." *See Hemi,* 559 U.S. at 11; *see also Longmont United Hosp. v. Saint Barnabas Corp.*, 2007 WL 1850881, at *7 (D.N.J. June 26, 2007) ("Where, as here, the complained of harm flows through an intermediary that has the discretion to act in a certain way or not, there is no proximate cause sufficient to establish a RICO violation."), *aff'd*, 305 Fed.Appx. 892 (3d Cir. Jan. 5, 2009).

24

*Third,* like the plaintiff in *Anza* who sued his competitor seeking damages for lost sales and market share, Parx's damages are highly speculative and would require a complicated and uncertain damages analysis. *See Anza*, 547 U.S. at 458-59. They also would require this Court "to move well beyond the first step" in a damages analysis, which the *Hemi* Court cautioned against. *See Hemi,* 559 U.S. at 9-10. Indeed, in the Amended Complaint, Parx has not identified a single customer—by name, by residence within the geographic proximity of Parx, or by which Location or Operator they play at (and how close that Location or Operator is to the Parx casino)—that allegedly played one of the Defendants' skill games instead of playing a slot machine at Parx's casino. *Without such facts, it is impossible to demonstrate if Parx has lost even a single customer because of the Defendants' skill games.* Parx also has not pled any market studies or any facts that would support its conclusory claim that it has lost market share because persons who otherwise would visit its casino are playing the Defendants' skill games. In fact, the allegations in the Amended Complaint do not even quantify this purported reduction in market share. The Court's admonition in *Anza* that other factors could cause such damages is well taken in this case. *See Anza*, 547 U.S. at 460 ("Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices."); *see also Magnum v. Archdiocese of Philadelphia,* 2006 WL 3359642, at *8 (E.D. Pa. Nov. 17, 2006) (finding plaintiffs failed to plead

proximate cause for RICO claim and noting that "[a]ny number of independent forces and decisions may have intervened between" the alleged RICO conduct and plaintiffs' alleged harm).

Similarly, Parx's alleged loss of customers and market share could have resulted from any number of factors other than customers playing the Defendants' skill games, including but not limited to: (i) general economic conditions (like the Covid-19 pandemic, for example) that caused customers to visit Parx's casino less frequently or to gamble less on slot machines at Parx's casino; (ii) customers visiting casinos other than Parx to play slot machines; or, (iii) customers playing unlicensed games outside of any casino that are not the Defendants' skill games. The point is, there are zero factual allegations in the Amended Complaint that tie Parx's alleged loss of customers and market share to those same customers instead of playing Defendants' skill games. Thus, the present case is similar to other lost customer/market share cases where courts have refused to find proximate cause for a RICO claim. *See, e.g., Anza*, 547 U.S. at 458-59; *Callahan,* 182 F.3d. at 261; *Parker*, 530 F. Supp. 2d at 678-79.

*Fourth*, and finally, as in *Hemi* and *Anza*, there is a direct victim of the alleged RICO conduct better situated to pursue the claims. Here, the Commonwealth of Pennsylvania, who Parx admits is a direct victim of the Defendants' alleged wrongful conduct (if Parx's allegations are to be believed), is better situated to pursue claims based on the Defendants' alleged violation of laws regulating gambling. *Cf. Callahan*, 182 F.3d at 266 ("More significantly, the LCB—

the direct victim of the defendants' alleged fraud—is an additional possible alternative agent for vindicating the public interest."). In fact, the Commonwealth already is doing so in ongoing litigation in the Commonwealth Court. *See POM Decision, supra* at § II(B).

In the end, the result here also should be the same as in *Hemi* and *Anza*—a finding that Parx has not satisfied RICO's proximate cause requirement. At best Parx pleads that it has suffered an indirect and remote injury. Indeed, Parx pleads that its alleged injury was not caused by the alleged RICO predicate acts described above, but by the decisions of customers to play the Defendants' skill games instead of Parx's slot machines. Under these circumstances, Parx has failed to plead the necessary proximate cause.

### D. Parx has failed to plead wire and mail fraud with the required specificity.

Parx's RICO claim is based, in part, on the predicate acts of mail and wire fraud. To the extent that the Court does not dismiss Parx's RICO claim in its entirety for the reasons set forth above (which it should), the Amended Complaint fails to plead wire and mail fraud claims with the specificity required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* F.R.C.P. 9(b). Courts regularly apply Rule 9(b)'s heightened pleading standard to fraud allegations that are part of a RICO claim, including allegations of mail or wire

fraud. For example, in *Northeast Revenue Services, LLC v. Maps Indeed, Inc.*, 685

Fed.Appx. 96 (3d Cir. April 12, 2017), the court observed:

> Where, as here, the plaintiff relies on bank fraud, mail fraud, and wire
> fraud as the basis for a RICO violation, it must pled [sic] with
> specificity as required by Federal Rule of Civil Procedure 9(b). Rule
> 9(b) requires that a plaintiff "state with particularity the
> circumstances constituting fraud or mistake." We have held that
> "[p]laintiffs may satisfy this requirement by pleading the 'date, place
> or time' of the fraud, or through 'alternative means of injecting
> precision and some measure of substantiation into their allegations of
> fraud.' ". A plaintiff "also must allege who made a misrepresentation to
> whom and the general content of the misrepresentation."

*Id.* at 102 (citations and footnotes omitted); *see also Morales v. Superior Living*

*Products, LLC*, 398 Fed.Appx. 812, 814 (3d Cir. Oct. 28, 2010) (affirming dismissal

of RICO claim for failure to plead fraud with specificity and stating: "Because

Appellants present a fraud-based RICO claim, they must plead with particularity

the circumstances of the alleged fraud. They may meet this requirement by

pleading the 'date, place or time' or by 'injecting precision and some measure of

substantiation into their allegations.'" (citations omitted)); *Franks v. Food*

*Ingredients Int'l., Inc.*, 2010 WL3046416, at *4-5 (E.D. Pa. July 30, 2010); *Park v.*

*Connecticut General Life Ins. Co.,* 2007 WL 9810908, at *2-3 (E.D. Pa. March 9,

2007).

Here, Parx has not pled its wire or mail fraud allegations with the required

specificity. The allegations of mail and wire fraud in the Amended Complaint are

extremely general. *See, e.g.,* Am. Compl. ¶¶141(c) (wire fraud), 141(f) (wire and mail

fraud), 141(g) (wire and mail fraud). These allegations do nothing more than

reference the publication of allegedly false statements on Defendants' websites,[9] the filing of unidentified tax returns through U.S. mails or wires and the "use of telephones between their offices in Georgia and Pennsylvania, as well as by calls to Operators and Locations Businesses, by electronic transfers of funds between Georgia and Pennsylvania, and through the mailing of checks." *Id.* Specifics like time, place or persons involved in any of the alleged communications or transfers are missing. Likewise, the Amended Complaint does not identify who allegedly viewed the website statements, any specifics as to the filing of tax returns (such as what entity filed them, when they were filed, etc.) or a single specific transfer or check. In short, Parx's wire and mail fraud allegations fail to satisfy Rule 9(b)'s heightened pleading standard and, therefore, Parx's RICO claim also fails to state a claim to the extent that it is premised on wire or mail fraud allegations.

**E.    The Court should dismiss Parx's Lanham Act false advertising claim in Count II because Parx has failed to plead proximate cause.**

Parx's Lanham Act claim also fails to sufficiently plead proximate cause. For a false advertising claim under 15 U.S.C. § 1125(a), a plaintiff must plead (and ultimately prove), among other things, injuries that are "proximately caused by violations of the statute." *Lexmark Intern., Inc. v. Static Control Components, Inc.*,

---

[9] Of significant note, one of the websites identified in the Amended Complaint *does not* belong to the Defendants and is not authorized by them in any way; something Parx appears to know since it referred to the website opaquely as a "website used to sell Defendants' Illegal Slot Machines," as opposed to a website belonging to the Defendants. *See* Am. Compl. at ¶ 26

572 U.S. 118, 132 (2014).[10] Proximate causation must be "adequately alleged" at the

pleading stage to survive a motion to dismiss. *See id.* at 134 n.6. A plaintiff pleading

such causation must "show economic or reputational injury flowing directly from

the deception wrought by the defendant's advertising," which "occurs when

deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

The Supreme Court further observed that while a Lanham Act claim does not

require a direct competitor relationship between the plaintiff and the defendant, the

plaintiff, in an indirect competitor case will need to demonstrate the "relatively

unique circumstances" whereby the plaintiff's injury directly flows from the

defendant's conduct without a "discontinuity" between the directly injured victim

and the indirect victim. *See id.* at 140. Stated otherwise, "a Lanham Act claim

asserting indirect injuries is only viable in 'relatively unique circumstances.'"

*Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 614 (E.D. Pa. 2018)

---

[10] The Third Circuit Court of Appeals has articulated that "broadly stated"
the elements of a false advertising claim are as follows:

> 1) that the defendant has made false or misleading statements as to
> his own product [or another's]; 2) that there is actual deception or at
> least a tendency to deceive a substantial portion of the intended
> audience; 3) that the deception is material in that it is likely to
> influence purchasing decisions; 4) that the advertised goods traveled in
> interstate commerce; and 5) that there is a likelihood of injury to the
> plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 n.7 (3d Cir. 2000).
Further, the Supreme Court in *Lexmark*, in addition to proximate cause, also added
that a plaintiff must plead interests within the "zone of interests" protected by the
Lanham Act. 572 U.S. at 129-32. This Motion focuses solely on Parx's failure to
allege proximate causation between its alleged injury and the Defendants' conduct,
so the foregoing elements are not analyzed.

(quoting *Lexmark*) (*Frompovicz I*); *see also Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp. 3d 498, 507 (E.D. Pa. 2018) ("The Court suggested, however, that an indirect competitor may struggle to satisfy the proximate cause prong absent 'relatively unique circumstances.'" (quoting *Lexmark*)) (*Frompovicz II)*.

The "relatively unique circumstances" identified in *Lexmark* were ones where the false advertising by the defendant caused injury to the defendant's competitor with whom the plaintiff had a "1:1 relationship." *See id.* at 139. That is, for every sale lost by the directly injured competitor due to the defendant's conduct, the plaintiff also lost a sale. *See id.* at 139. The Supreme Court noted that this relationship satisfied the proximate cause requirement because the relationship did not require examination of "'speculative … proceedings'" or "'intricate, uncertain inquiries.'" *See id. at* 140.

This court also found "relatively unique circumstances" for *some* of the defendants in a case where a "spring" water producer alleged Lanham Act claims against a "well" water producer and various bottlers, who allegedly sold the "well" water as "spring" water. *See Frompovicz II*, *supra.* As it concerned the indirect competition bottlers, the court found that the plaintiff—who initially failed to plead sufficient proximate cause facts as to *any* of the bottlers, *see Frompovicz I*, 313 F. Supp. 3d at 615—had pleaded proximate cause with only two of the three bottler defendants. As to the first two, the court found it significant that the plaintiff had pleaded that these indirect competitors previously had relationships directly with the plaintiff. *See Frompovicz II*, 337 F. Supp. 3d at 509-10. But as to the third,

where the plaintiff did not allege a "pre-existing commercial relationship," the court ruled that the claim "stretches Plaintiff's proximate cause theory to its breaking point." *Id.* at 510. The court so ruled because, effectively, plaintiff's theory required the court to entertain uncertainties about whether the defendant would have otherwise purchased water from plaintiff. *See id.* (citing *Lexmark*).

Applying the foregoing here, Parx has not pleaded sufficient facts to support a plausible proximate cause theory against the Defendants, and thus the Court should dismiss Count II.

### 1.     The Defendants and Parx are not direct competitors.

As a preliminary matter, while the Amended Complaint contains conclusory allegations that the Defendants directly compete with Parx, *see, e.g.,* Am. Compl. ¶¶ 169, 181-182, in the more detailed allegations of the Amended Complaint, Parx in fact acknowledges the Defendants are not direct competitors of Parx. Indeed, Parx pleads that the Defendants' customers are the Operators who purchase the machines and with whom Defendants enter into Operator Agreements, *see, e.g.,* Am. Compl. ¶¶ 35-48, 114-115, 135, 147, 148(c) and (d), doing so seemingly to "boost business and draw in loyal customers." *See* Am. Compl. ¶ 121. The Operators, Parx pleads, place the skill games at the Locations, which are commercial locations/venues ("bars, restaurants, convenience stores and gas stations," *see, e.g.,* Am. Compl. ¶ 37, 203), so, perhaps Parx is also alleging the Locations are the Defendants' customers. *See* Am. Compl. ¶¶ 114-115.

But what Parx does not plead, because it cannot, is that the Defendants' customers are the players of the games, who are the persons Parx claims as its

customers (hereafter, "the Players"). *See, e.g.,* Am. Compl. ¶¶ 170, 183, 194, 200-201. The Players, according to the Amended Complaint, are also the customers of *the Locations* and maybe the Operators, but not the Defendants. *see, e.g.,* Am. Compl. ¶¶ 37-38, 50, 116-117, 148(f), 183, 203. Finally, the Amended Complaint never alleges that Parx's customers are now, or ever were, the Operators or the Locations.

As such, Parx pleads that its direct competitors are the Locations and perhaps the Operators, but it does not plead that the Defendants are its direct competitors. *See, e.g.,* Am. Compl. ¶ 116 ("Over the course of several years and including at present, multiple locations within a short distance of Parx Casino are Location Businesses offering Illegal Slot Machines in direct competition to legal slot machines at Parx Casino."). Above all else, this is so because Parx does not aver it is in the business of "making, assembling, setting up, selling, leasing and promoting Illegal Slot Machines to Operators and contracting with Operators to place these slot machines at unlicensed locations," Am. Compl. ¶ 114, like it alleges is the case with the Defendants. Instead, Parx pleads it is in the business of "operat[ing] approved slot machines in approved locations[.]" Am. Compl. ¶ 5. Stated more simply still, Parx does not plead it is in the business of making games for gameplay, like it alleges is true of the Defendants, but pleads that it is in the business of buying/leasing games—made by others—and making them available for play by the Players. Hence, it is not a direct competitor of the Defendants.

**2.      Parx has not pleaded "unique circumstances" sufficient to support its indirect competitor claim against the Defendants.**

As an indirect competitor, Parx must therefore plead "unique circumstances" to support its proximate cause averment against the Defendants. *See Frompovicz II*, 337 F. Supp. 3d at 507. It has not done so.

For starters, Parx has not met its pleading obligation because it has not averred any injury "*flowing directly*" from "the deception wrought by the defendant's advertising," *Lexmark*, 572 U.S. at 133 (emphasis added), since such a showing requires Parx to plead facts supporting that the "deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Here this basic test has failed because the allegedly false advertising identified in the Amended Complaint is on the Defendants' websites, *see* Am. Compl. ¶¶ 121, 122, 163, 164 and Parx makes only conclusory allegations in the Amended Complaint concerning the alleged deception of consumers, such as: "Because unregulated slot machines are illegal in Pennsylvania, players and Location Businesses rely on the representations … in determining that playing the Illegal Slot Machines in unregulated retail locations is legal and safe when that is not the case." *See* Am. Compl. ¶ 171; *see also id.* at ¶¶ 120 (generally referencing "scheme to defraud the Commonwealth and consumers" through alleged misrepresentations on website), and 124 (generally referencing publishing "false statements to the public and Commonwealth through the internet"). These conclusory allegations of deception of

the Players, i.e., the "consumers" for purposes of the *Lexmark* test, and the public are insufficient to satisfy the *Lexmark* standard.[11]

Further still, Parx has not satisfied its proximate cause pleading obligation because its Amended Complaint—like that of the plaintiff in *Frompovicz II*—"stretches [Parx's] proximate cause theory to the breaking point." 337 F. Supp. 3d at 510. To illuminate, it appears Parx's theory of causation is that the money placed by a Player into a Defendant-licensed machine is money that the Player would have otherwise placed into a Parx-operated machine. *See* Am. Compl. ¶¶ 113 ("if unlicensed illegal slot machine operations were halted in Pennsylvania, the revenue currently generated from unlicensed machines would be in whole or part realized by licensed, tax-paying slot machine operators, including Parx Casino."), and 186 ("A portion of the money players spend on the Defendants' Illegal Slot Machines would be played on legal slot machines at Parx Casino or on Parx Casino's legal on-line digital slot machines if Defendants did not make the Illegal Slot Machines available and promote them as legal."). It appears Parx's theory is that Players will play whatever device is closest to them, and if the Defendant-licensed machines are closer, they will be used. *See* Am. Compl. at ¶ 111.

This theory of causation requires speculation on speculation to be countenanced as plausible. It requires the Court to accept, based on threadbare

---

[11] Any allegations that the Operators and the Locations were deceived also fails to satisfy the *Lexmark* standard. Parx never avers, because it cannot, that its customers are now, or ever were, the Operators or the Locations. Hence, if the Operators and Locations are the "consumers" under the *Lexmark* test, there is no allegation that any alleged deception caused them "to withhold trade" from Parx.

allegations, that Players—none of whom are identified by name, by residence within the geographic proximity of Parx, or by which Location or Operator they play at (and how close that Location or Operator is to the Parx casino)—have a 1:1 relationship with Parx; i.e., every "sale" to a Location or Operator from a Player is per se a lost "sale" for Parx (as in *Lexmark*). But nowhere is that alleged, nor could it be, because it is wildly speculative.

Lastly, Parx's theory of causation fails on the face of the Amended Complaint since Parx avers it has an online gaming license that allows it to accept "wagers from eligible persons anywhere within the Commonwealth," *see* Am. Compl. ¶¶ 87, 89, and then avers that Players will play whatever machine is closest to them. *See* Am. Compl. ¶ 111. By that logic, Players won't get off the couch to play the Defendants' skill game since they have a Parx-hosted game in their pocket on their phone, so the theory of causation fails. Stated otherwise, the averments show the utter "'speculative … proceedings'" or "'intricate, uncertain inquiries'" required to guess whether any given Player anywhere in the Commonwealth at any time played the Defendants' skill game instead of going to Parx, either online or in person. *See Lexmark*, 572 U.S. *at* 140.

In sum, Parx has failed to plead facts sufficient to support proximate cause for its Lanham Act claim in Count II, and, accordingly, the Court should dismiss that claim.

**F.      The Court should dismiss Parx's common law unfair competition claim for deceptive marketing in Count III because it is coextensive with Parx's Lanham Act claim.**

Parx's common law unfair competition claim also fails for the same reasons as its Lanham Act claim. Like its Lanham Act claim, Parx's unfair competition claim is a challenge to the Defendants' marketing of the skill games. Federal courts agree that a common law claim for unfair competition under Pennsylvania law is functionally equivalent to a Lanham Act claim for deceptive marketing. Pennsylvania courts follow the Restatement (Third) of Unfair Competition, under which unfair competition exists where a party harms another's commercial interests through deceptive marketing, as defined in the Restatement. Restatement (Third) of Unfair Competition § 1. In turn, the Restatement defines deceptive marketing as existing where a party, "in connection with the marketing of goods or services, makes a representation relating to [a competitor's] own goods, services, or commercial activities that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another[.]" *Id.* § 2. As defined in the Restatement, deceptive marketing mirrors the Lanham Act's description of the same. *See* 15 U.S.C. § 1125(a) (permitting recovery where a party, in connection with goods or services, uses a word or term likely to deceive as to the sponsorship or approval of the goods or services of another).

Recognizing there is no meaningful difference between these standards, this court stated "[t]he Pennsylvania common law cause of action for unfair competition is identical to claims under the Lanham Act, *sans* the federal interstate commerce requirement." *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504 n.5 (E.D. Pa.

37

2018); *see also I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 414 (E.D. Pa. 2020) ("The common law cause of action mirrors the Lanham Act's cause of action for unfair competition, although the former does not require that the goods travel in interstate commerce."); *Checker Cab Phila., Inc. v. Uber Technologies, Inc.*, No. 14-7265, 2015 WL 966284, at *3 n.3 (E.D. Pa. March 3, 2015) (stating that under "an abundant line of cases from this circuit, an unfair competition claim under Pennsylvania is the equivalent of a federal Lanham Act claim"). Therefore, if a party fails to state a deceptive marketing claim under the Lanham Act, an unfair competition claim premised on the same facts will also fail. In *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329 (E.D. Pa. 2018), for instance, this court granted summary judgment to dismiss a Lanham Act claim and, subsequently, an unfair competition claim that was premised on the same facts and legal argument supporting the Lanham Act Claim. *Id.* at 343.

For all the reasons Parx fails to state a claim for relief under the Lanham Act, Parx also fails to state a claim for unfair competition because it cannot plead proximate causation. Parx baselessly avers that the Defendants compete with Parx's casino, Am. Compl. ¶¶ 169, 181-182, in direct contradiction to its earlier averments acknowledging that Defendants' customers are the Operators who purchase the machines, *see id.* ¶¶ 35-48, 114-115, 135, 147, 148(c) and (d). Moreover, Parx cannot allege that the Players are the Defendants' customers. Accordingly, Parx is not the Defendants' direct competitor such that it can state an unfair competition claim. Further, Parx cannot show unique circumstances to

support its proximate causation for unfair competition claim as an indirect

competitor. Again, Parx speculates that the Defendants' advertising takes market

shares of players and profits from Parx. *See id.* ¶¶ 194-196. This speculation cannot

support proximate cause permitting recovery under either the Lanham Act or a

common law unfair competition claim. Therefore, the Court should dismiss Count

III.

### G.   The Court should dismiss Parx's tortious interference with business relations claim in Count IV because Parx has failed to plead a non-speculative theory of causation.

Parx's tortious interference with business relations claim also fails to state a

claim for the additional reason that Parx has failed to sufficiently plead causation.

A plaintiff averring a Pennsylvania state law claim of tortious interference with

business relations must plead four elements:

> (1) a prospective contractual relation;
>
> (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual damages ***resulting from*** the defendant's conduct.

*InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa. Super. 2006)

(emphasis added; citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa.

1979)). Impounded into the tort is a causation requirement that "but for" the

defendant's allegedly tortious conduct, it was "reasonably probable" that the

plaintiff would have entered into a contractual relation. *See id.* (quoting *Thompson*);

39

*see also id.* at 634 (applying "but for" and "reasonably probable" standards). Furthermore, an absence of actual damages forecloses a tortious interference claim. *See Pelagatti v. Cohen*, 536 A.2d 1337, 1343-44 (Pa. Super. 1987).

Applied here, Parx has failed to plead anything other than an implausible, utterly speculative claim of injury; that is, Parx has failed to plead adequate facts to show (1) that but-for the Defendants' conduct Parx would have entered into prospective contractual relations, or (2) that it suffered actual damages "resulting from" the Defendants' purportedly tortious conduct. This is the case precisely for the reasons explained at length regarding Parx's RICO and Lanham Act claims. Parx's theory of injury is entirely based on unsupported, threadbare allegations that some unidentified Player, somewhere, would have gambled at Parx's casino if not for some unidentified skill game placed at some unidentified Location by some unidentified Operator. *See supra* §§ II(C)(3) and II(E)(2). In effect, Parx asks this Court to accept for pleading purposes that Parx can proceed to discovery based only on allegations that skill games exist somewhere in Pennsylvania and that Parx lost business (how much, from whom, when, are all unalleged), which business it hoped to receive based on *other states'* gambling industries or its own undescribed internal forecasts (based on this unadorned pleading, one is left to wonder whether Parx suffered "actual damages" at all). *See* Am. Compl. ¶ 208. But despite Parx's belief in the adequacy of its averments, this speculation-based pleading is not, in fact, enough to survive a Rule 12(b)(6) motion. Consequently, the Court should dismiss Count IV.

40

## III.   CONCLUSION

Parx's claims suffer from fatal legal defects and in the Amended Complaint it has not set forth sufficient facts to allege plausible claims for relief against the Defendants. In chief part, Parx has: (i) improperly attempted, through RICO, the Lanham Act and related state torts, to enforce laws regulating gambling that do not provide for private rights of action; (ii) based its Amended Complaint on the legally erroneous premise that the Gaming Act applies to the Defendants' skill games; and (iii) failed to allege any viable theory of causation between its alleged injuries and conduct by the Defendants. Parx also has otherwise failed to support its claims. Therefore, Miele respectfully requests that the Court grant its Motion to Dismiss and immediately dismiss with prejudice all Counts in the Amended Complaint.

Respectfully submitted,

Dated: January 3, 2023

MCCORMICK LAW FIRM

By:   /s/ Marc F. Lovecchio
　　　　　Marc F. Lovecchio, Esquire
　　　　　PA I.D. No. 41244
　　　　　835 West Fourth Street
　　　　　Williamsport, PA 17701
　　　　　Phone: (570) 326-5131
　　　　　Email: mlovecchio@mcclaw.com
　　　　　*Attorney for Defendant Miele*
　　　　　*Manufacturing, Inc.*

41

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 2:22-cv-4434-MMB |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| POM OF PENNSYLVANIA, LLC, PACE-O-MATIC, INC., and MIELE MANUFACTURING, INC., | : | |
| | : | |
| *Defendants.* | : | |

**ORDER**

AND NOW, this _____ day of _____, 20_____, upon

consideration of the Motion to Dismiss Plaintiff's Amended Complaint for Failure to

State a Claim by Defendant Miele Manufacturing, Inc. ("Miele") and any response

thereto, it is hereby ORDERED that the Motion is **GRANTED** and Counts I-IV of

the Amended Complaint against Miele are hereby **DISMISSED WITH**

**PREJUDICE**.

BY THE COURT:

_____
Hon. Michael M. Baylson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the Defendants'

Motion to Dismiss, and Brief in Support, to be served via the Court's CM/ECF

system on the following:

Gary Samms, Esq.
Richard Limburg, Esq.
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Gary.Samms@obermayer.com
Richard.Limburg@obermayer.com

*Attorneys for Plaintiff Greenwood Gaming & Entertainment, Inc.*

Matthew H. Haverstick
Edward T. Butkovitz
Joshua J. Voss
Shohin H. Vance
Samantha G. Zimmer
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Emails: mhaverstick@kleinbard.com
        ebutkovitz@kleinbard.com
        jvoss@kleinbard.com
        svance@kleinbard.com
        szimmer@kleinbard.com

*Attorneys for the POM Defendants*

Dated: January 3, 2023

MCCORMICK LAW FIRM


By: /s/ Marc F. Lovecchio
       Marc F. Lovecchio, Esquire
       PA I.D. No. 41244
       835 West Fourth Street
       Williamsport, PA 17701
       Phone: (570) 326-5131
       Email: mlovecchio@mcclaw.com
       *Attorney for Defendant Miele*
       *Manufacturing, Inc.*