## 22IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREENWOOD GAMING
AND ENTERTAINMENT,
INC.,

    *Plaintiff*,

       v.

POM OF PENNSYLVANIA, LLC,
PACE-O-MATIC, INC., and MIELE
MANUFACTURING, INC.,

    *Defendants*.

Case No.

22-4434-MMB

## COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

Plaintiff Greenwood Gaming and Entertainment, Inc., d/b/a Parx Casino ("Parx Casino") responds to the motions to dismiss filed by defendants Pace-O-Matic, Inc. ("Pace-O-Matic") and POM of Pennsylvania ("POM") (Dkt. 18, 18.1) and Miele Manufacturing Inc. ("Miele") (collectively, "Defendants") (Dkt. 19)[1].

## INTRODUCTION

This is a case under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) & 1964(c), the Lanham Act, 15 U.S.C. § 1125(a)(1), and state-law unfair competition laws. The Amended Complaint alleges a criminal enterprise that Defendants created, manage and control (the "Illegal Slots

---

[1]    The filed briefs are substantively identical, so Parx Casino makes no distinction between the arguments in them in this discussion. When cites are provided, they are provided to both briefs.

Enterprise"). The Illegal Slots Enterprise makes and ultimately operates tens of thousands of illegal slot machines (the "Illegal Slot Machines"). Defendants move to dismiss but do _not_ challenge that Parx Casino has adequately pleaded: the existence of the Illegal Slots Enterprise; that Defendants are RICO persons who manage and control but who are distinct from the enterprise; that the Illegal Slots Enterprise impacts interstate commerce; or even that the Illegal Slots Enterprise has a pattern of committing predicate criminal acts (the motions superficially address just two of the multiple predicate crimes alleged in the Amended Complaint). Neither do Defendants deny that the Illegal Slots Enterprise generates hundreds of millions of dollars a year annually for the Defendants and other enterprise participants. The purpose of the Illegal Slots Enterprise was to divert this money from Parx Casino and other legal operators, which is exactly what it has done – proximately causing Parx Casino millions of dollars in damages. Every RICO element is alleged and supported in the Amended Complaint.

The Amended Complaint further states claims for false advertising and unfair competition pursuant to the Lanham Act and common-law. The Amended Complaint's Lanham Act claim is not about violation of gaming regulations but rather alleges that Defendants have lied and concealed the truth from the public about their products, advertising their Illegal Slot Machines as legal when they are not. Defendants do not deny their false advertising but contend that they do not compete directly with Parx Casino. However, the Amended Complaint plainly alleges facts that demonstrate Defendants and the Illegal Slots Enterprise they manage and control do directly compete with Parx Casino and that this has intentionally and

directly damaged Parx Casino through its deceptive advertising. Those facts must be accepted as true at this juncture in the case.

Instead of addressing Parx Casino's actual allegations, Defendants attack a case that was not pleaded. To be clear: the Amended Complaint does not attempt to enforce state gaming regulations. Neither is there anything speculative about the damages to Parx Casino from the diversion of hundreds of millions of dollars to the Defendants and other participants in the Illegal Slots Enterprise. The 41-page, 209-paragraph Amended Complaint more than adequately alleges facts that put Defendants on notice of Parx Casino's claims. It includes more than sufficient factual matter to plausibly support those claims. That is all the pleading rules require and Defendants' motions to dismiss should be denied.

## THE PLEADED FACTS

**A.    The Complaint Details the Existence of a Criminal Enterprise that Engages in a Scheme to Manufacture and Operate Illegal Slot Machines**

Pace-O-Matic designs, produces and licenses software and game fills for slot machines, including the "Pennsylvania Skill" games that are referred to in the Amended Complaint as the "Illegal Slot Machines." Am. Compl. ¶¶ 7, 20. POM, an affiliate of Pace-O-Matic, is responsible for licensing the Pace-O-Matic software, game fills and trademarks for the Illegal Slot Machines. *Id.* ¶¶ 11, 21, 36. POM licenses the "Pennsylvania Skill" branded software, game fills and trademarks to Miele, which manufactures the Illegal Slot Machines to Pace-O-Matic's specifications and then loads the software onto the machines. ¶¶ 22-24.

3

As Defendants concede, for the purposes of this motion, it is undisputed the machines at issue are "slot machines". Dkt 18-1 at 4; Dkt. 19 at 5. The Amended Complaint includes this image of the machines that shows that is precisely what they are:



Am. Compl. ¶ 27.

The Illegal Slot Machines are played by inserting coins or cash for which they promise the possibility of a cash payout. *Id.* ¶ 25. The machines are sold by representations that they "function very much like a typical slot machine…to start playing these games, you would insert cash into the terminal and then spin the reels in the hopes of landing on some paylines with matching symbols. If you succeed once, you will very likely keep playing again and again." *Id.* ¶ 26. The machines use random number generators, digital reels and video displays and then offer the user

free games and the possibility of cash payouts. *Id.* ¶¶ 29-30. The outcome is predominately determined by chance. *Id.* ¶ 123.

Once manufactured, the Illegal Slot Machines are sold to operators (the "Operators") who enter into Operator Agreements with POM and Miele. *Id.* ¶ 35. Miele sublicenses the gaming software to the Operators while POM licenses the "Pennsylvania Skill" trademarks and trade name to the Operators. *Id.* ¶ 35-36. The Operators place the Illegal Slot Machines in clubs and businesses, including bars, restaurants, convenience stores and gas stations (the "Location Businesses") throughout Pennsylvania where patrons use the Illegal Slot Machines to gamble. *Id.* ¶¶ 37-38. Through the Operator Agreements, Pace-O-Matic, POM and Miele manage and maintain control over the Operators and the Location Businesses, and all business pertaining to the Illegal Slot Machines. *Id.* ¶¶ 36, 39-49. Miele further operates Illegal Slot Machines through its Amusements division. *Id.* ¶ 17.

The purpose of the enterprise is to operate and profit from Illegal Slot Machines and Defendants divvy up the proceeds generated from the machines amongst themselves and other participants in the enterprise. *Id.* ¶ 50. Defendants manage and control the Illegal Slots Enterprise in the same way a crime boss oversees an illegal gambling operation, maintaining control over where the Illegal Slot Machines are placed, how many are placed where, how they are advertised and

how they operate. *Id.* ¶¶ 39-44; *see also id.* ¶¶ 146-149. Defendants' motions do not contest the Amended Complaint adequately sets forth a RICO enterprise.

**B.      The Illegal Slots Enterprise Commits Multiple Predicate Crimes**

RICO identifies multiple predicate crimes that comprise the racketeering activity required to support a private cause of action under the law. *See* 18 U.S.C. § 1961(1). The Amended Complaint alleges the Illegal Slots Enterprise violated various of these laws, most of which are not disputed, or even addressed, by Defendants' motions. For each predicate crime that comprises Defendants racketeering activity, the Amended Complaint alleges supporting facts, as follows.

**Violation of the Crimes Code.** RICO lists as a predicate "any act or threat involving … gambling … which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. 1961(1). Section 5513 of the Pennsylvania Crimes Code describes such an act, making it a first degree misdemeanor to make, assemble, set up, maintain, sell, lend or lease "any … slot machine" unless otherwise permitted. 18 Pa.C.S. § 5513(a)(1); *see also* 18 Pa.C.S. § 106(b)(6) (first degree misdemeanor punishable by up to five years of imprisonment). The Amended Complaint pleads how and why the Illegal Slot Machines are unlawful pursuant to Section 5513, including because consideration is required to play, there is a reward for successful play, and the results are not predominately determined by skill. Am. Compl. ¶¶ 59-67. And Defendants concede

for the purpose of this motion that their products are, in fact, slot machines. Dkt. 18-1 at 4; Dkt. 19 at 5.

In addition, the Operators and Location Businesses who participate in the Illegal Slots Enterprise invite people to assemble for the purpose of unlawful gambling and permit and encourage unlawful gambling on the Illegal Slot Machines at their facilities. Am. Compl. ¶ 115-117. These represent additional violations of the Crimes Code that occur each day these businesses operate. *See* 18 Pa.C.S. § 5513(a)(2)-(4).

**Violation of 18 U.S.C. § 1955.** RICO includes as a predicate the federal crime of illegal gambling activity. *See* 18 U.S.C. § 1961(1). Section 1955 makes it a federal crime to violate state criminal gambling laws like Section 5513 wherever a business that offers illegal gambling involves at least five persons and has been in continuous operation for more than 30 days or has a daily gross revenue of $2,000. Am. Compl. ¶ 141(b). Defendants' motions do not dispute that the Illegal Slots Enterprise has violated this criminal law.

**Money Laundering Under 18 U.S.C. §§ 1956 & 1957.** RICO includes as a predicate the crime of money laundering pursuant to 18 U.S.C. 1956 & 1957. *See* 18 U.S.C. § 1961(1). The Amended Complaint pleads this predicate, explaining that Defendants laundered money through receipt and transfer of unlawfully obtained gambling proceeds and the transfer and conduct of transactions with criminally

derived funds. *See* Am. Compl. ¶¶ 125-126, 141(d) & (e). Again, Defendants'
motions do not dispute that the Illegal Slots Enterprise has engaged in money
laundering in violation of these laws.

**Wire Fraud Under 18 U.S.C. § 1343.** RICO includes as a predicate the crime
of wire fraud. *See* 18 U.S.C. § 1961(1). The Amended Complaint details that
Defendants made use of the interstate wires to further the Illegal Slots Enterprise's
scheme. Specifically, at least on November 15, 2021, POM and Pace-O-Matic
falsely stated on their website that the Illegal Slot Machines are "legal and
defendable" and "legally compliant." Am. Compl. ¶ 121. And on September 21,
2022, Miele falsely stated on its website that the Illegal Slot Machines were "legal
games of skill." *Id.* ¶ 122. In fact, the Illegal Slot Machines "are not 'legal'"; and
they are not games of skill because "the outcomes are not predominately determined
by skill, but rather by chance." *Id.* ¶ 123. Through these statements and uses of
interstate wires to transmit them, Defendants attempted to advance the fraudulent
purpose of the Illegal Slots Enterprise.  Am. Compl. ¶¶ 124, 141(c).

While discovery is required to specify the dates and times of individual wires
or phone calls, the Amended Complaint further alleges that the Defendants are
located in different states (Georgia and Pennsylvania), and Defendants in turn
manage and control various Operators and Location Business, each of whom have
unique roles within the enterprise, such that the use of interstate wires would be

required for the communications necessary to manage and control the Illegal Slots Enterprise. This includes electronic transfers of funds between the Defendants themselves or between the Defendants and other participants in the Illegal Slots Enterprise. Am. Compl. ¶ 141(g).

**Mail Fraud Under 18 U.S.C. § 1341.** RICO includes as a predicate the crime of mail fraud. *See* 18 U.S.C. § 1961(1). The Amended Complaint alleges that Defendants sought to conceal the nature of their income derived from the Illegal Slots Enterprise by falsely representing its nature in tax returns and failing to identify gaming revenue in those returns. Am. Compl. ¶ 126, 141(d) & (f). Again, discovery would be required to identify the dates of these mailings, but the Amended Complaint provides more than adequate notice to Defendants which uses of the mail are referenced and how Parx Casino asserts those mailings advanced the purposes and goals of the Illegal Slots Enterprise.

### C. The Intended, Logical and Practical Impact of the Proliferation of Illegal Slot Machines by the Illegal Slots Enterprise is Harm to Lawful Slot Machine Operators Like Parx Casino

The Illegal Slots Enterprise directly competes with, and was intended to and has taken business from, lawful slot machine operators like Parx Casino. The annual revenue from just 10,000 slot machines is approximately $260 million, *id.* ¶ 97, and as many as 80,000 Illegal Slot Machines have been placed around Pennsylvania, *id.* ¶ 107. The number of these Illegal Slot Machines has exploded since 2017 and they

now generate hundreds of millions of dollars in revenue for the Illegal Slots Enterprise. *Id.* ¶¶ 57, 94. As alleged in the Amended Complaint, multiple gaming industry witnesses have testified that this has led directly to a reduction in the use of lawful slot machines. *Id.* ¶¶ 109-111.

The Amended Complaint further alleges the Illegal Slots Enterprise has placed and operates Illegal Slot Machines at multiple locations within a short distance from Parx Casino in direct competition with it. *Id.* ¶ 116.

As the Illegal Slots Enterprise has proliferated Illegal Slot Machines across Pennsylvania, falsely advertising these machines as lawful, Parx Casino indeed has seen a corresponding loss of profits and customers. *Id.* ¶ 157. While this will be the subject of discovery, Parx Casino estimates that the diversion of its customers as a direct and proximate result of the criminal conduct of the Illegal Slots Enterprise has cost Parx Casino millions of dollars over the past five years. *Id.* ¶ 158. The Amended Complaint's allegations of damages and causation are further discussed below.

### D.    Defendants Falsely Represent and Advertise the Nature of the Illegal Slot Machines

As noted above, Defendants routinely and falsely represent that the Illegal Slot Machines are in fact legal and are games of skill, including on their websites. *Id.* ¶¶ 121-22. The Amended Complaint specifically pleads these and other false statements that Defendants make in order to market and sell the Illegal Slot Machines to the public, via the Illegal Slots Enterprise, as something that they are not. *See also*

4858-0268-4750 v1

*id.* ¶¶ 163-164 (alleging specific false and misleading statements upon which the Lanham Act claim is based).

These factual allegations support each of the claims in the Amended Complaint.

## **ARGUMENT**

The purpose of a complaint is to advise the Defendants of the claims against them. The Amended Complaint in this case more than accomplishes that task. Defendants' motions are based either on mischaracterizations of the Amended Complaint, incorrect reading of the law, or attempts to dispute the substance of Parx Casino's allegations in the guise of a motion to dismiss. In each case, the motion fails as a matter of law.

## I.     **Parx Casino's Claims Are Founded in Federal Statutory Causes of Action and the Common Law – Not on Gaming Regulations**

Defendants miscast Parx Casino's claim as being that Defendants do not comply with state gambling regulations. *See* Dkt 18-1 at 7-10; Dkt. 19 at 8-11. That is not what this case is about. Rather, the Amended Complaint alleges a pattern of criminal conduct by the Illegal Slots Enterprise (giving rise to a civil RICO claim), false and misleading advertising (giving rise to a Lanham Act claim) and tortious conduct pursuant to Pennsylvania common law.[2]

---

[2]      Defendants suggest a red herring argument in their lengthy discussion of the Pennsylvania Gaming Act, citing to non-binding state court decisions about whether the Gaming Act regulates the Illegal Slot Machines at issue. Dkt. 18-1 at 11-13; Dkt. 19 at 12-14. This case is not about the Gaming Act but rather is about the Crimes Code and other federal criminal statutes cited in the Amended Complaint. As

Concerning RICO and the Lanham Act, Defendants cite *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) for the proposition that "private rights of action to enforce federal law must be created by Congress." Dkt. 18-1 at 10; Dkt. 19 at 11. That is correct but only supports Parx Casino's RICO and Lanham Act counts, both of which are based on private causes of action that Congress *did* in fact create and for which every element is properly alleged. *Compare* Dkt. 18-1 at 7; Dkt. 19 at 8 (falsely arguing that Parx Casino is "attempting to enforce laws regulating gambling that do not provide for private causes of action").

Defendants plainly do not to understand RICO, which explicitly provides a private right of action in 18 U.S.C. § 1964(c) for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter …." Section 1962 makes it unlawful to associate or be employed with an enterprise engaged in a pattern of racketeering activity. 18 U.S.C. § 1962(c). And Section 1961(1) defines "racketeering activity" to include the various predicate crimes that the Amended Complaint alleges were committed by the Illegal Slots Enterprise. 18 U.S.C. § 1961(1); *see also supra* at 7-9. Accordingly, Parx Casino is not attempting to state a private cause of action arising from any one of the criminal predicate crimes or based

---

Defendants concede, those state law decisions did "not address[] the legality of the [Illegal Slot Machines] under Section 5513." Dkt. 18-1 at 12; Dkt. 19 at 13. The Gaming Act is only relevant here as an interpretative aid for Section 5513 pursuant to the Pennsylvania Rules of Construction, which require that they be read together to the extent possible as they both concern the same class of things. *See* Am. Compl. ¶¶ 59-64, citing 1 Pa.C.S. § 1921(c)(5); *see also POM v. Comm. of Penn. Dept. of Rev.*, 221 A.3d 717, 733 & 737 n. 19 (Pa. Cmwlth. 2019) (stating "illegal devices have been historically regulated by the Crimes Code" and that the court "does not decide the separate question raised in POM's claim, *i.e.*, whether the POM Game is an illegal gambling device under the Crimes Code….").

on violation of any local regulation. Rather, for RICO, the Amended Complaint states a claim based on the express private cause of action Congress created in that law for plaintiffs, like Parx Casino, who have been injured by a pattern of racketeering activity that includes those crimes.

Indeed, were Defendants correct that no RICO claim lies unless private causes of action were further established in the underlying criminal statutes defined to comprise racketeering activity, then no RICO claim could ever be stated. That is not the law and no case holds otherwise. Even *ManorCare of Easton PA LLC v. Nagy*, cited by Defendants, Dkt. 18-1 at 10; Dkt. 19 at 11, observed that "[a]lthough Title 18 of the U.S. Code does not typically provide for a private cause of action, the Supreme Court has stated that one of RICO's enforcement mechanisms grants a private right of action to '[a]ny person injured in his business or property by reason of a violation' of RICO." *ManorCare of Easton PA LLC v. Estate of Nagy*, No. 13-5957, 2017 U.S. Dist. LEXIS 161722, at *12 (E.D. Pa. Sep. 29, 2017) (quoting 18 U.S.C. § 1964(c)). No other construction can stand against the plain language of 18 U.S.C. § 1964.

Besides *ManorCare of Easton*, the only case Defendants cite for this point that includes any reference to RICO is *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, No. 14-7265, 2016 U.S. Dist. LEXIS 28447 (E.D. Pa. Mar. 7, 2016). Dkt. 18-1 at 7-9; Dkt. 19 at 8-10. The RICO issue in *Checker Cab* was that "the bulk of Plaintiffs' RICO claims are premised on allegations that Defendants operated taxicab services in violation of state and local laws and regulations" that were not included in the definition of racketeering activity in 18 U.S.C. § 1961(1). *Id.* at *29. By contrast, the Amended Complaint here alleges violations of multiple state and federal crimes that

each fit squarely within RICO's definition of racketeering. Notably, where the *Checker Cab* plaintiff did not rely on violation of taxi regulations but on wire fraud based, as here, upon false statements made over the wires, the court did not dismiss the allegations out of hand but turned to whether a pattern of racketeering had been alleged. 2016 U.S. LEXIS at *29-*31. Defendants' motions nowhere challenge the Amended Complaint's allegations of pattern.[3]

The Lanham Act also plainly creates a private cause of action in 15 U.S.C. § 1125(a)(1). *See Sandoz Pharmaceuticals*, 902 F.2d at 230 ("the statute provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising"). This remains the case even where the alleged false advertising implicates a regulation. The U.S. Supreme Court has stated in this regard that "neither the Lanham Act nor the [Federal Food, Drug, and Cosmetic Act], in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA" and that "[b]y its terms, the Lanham Act subjects to suit any person who 'misrepresents the nature, characteristics, qualities, or geographic origin' of goods or services." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 113 (2014); *see also Glaxosmithkline LLC v. Teva Pharm. USA, Inc.*, No. 13-726, 2014 U.S. Dist. LEXIS 192939, at *2 n.2 (E.D. Pa. Mar. 10, 2014) (private plaintiff "not precluded from bringing a suit under the Lanham Act even though the FDA or Federal Trade Commission could also pursue an action.").

---

[3]      *Checker Cab* was affirmed on appeal but on narrow grounds not involving RICO. *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, 689 F. App'x 707, 709 (3d Cir. 2017).

The Lanham Act was the sole subject of the other cases primarily relied upon by Defendants to support their argument that Parx Casino's claims are instead covered by regulation, and also cited by *Checker Cab*. Dkt. 18-1 at 8-9; Dkt. 19 at 9-10, citing *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990) and *Dial a Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996). Those cases do not, however, hold as Defendants would prefer. Both involved claims of false statements by competitors that were based on an interpretation of administrative rules. In *Sandoz*, the Court assumed *arguendo* "that false labeling is actionable under the Lanham Act," but concluded that the plaintiff had not proved its claim, including because it was based on an interpretation of FDA regulations that the FDA had not made. *Id.* at 230-31. Likewise, in *Dial a Car*, the alleged falsity of the challenged statement required an interpretation of a local taxi regulation that the Court held was the province of a local taxi commission. 82 F.3d at 488-89 (stating case involved a "quintessentially local dispute"). The Court determined that, at least, there would have to be a declarative interpretation of the local regulation by the taxi commission before a Lanham Act claim would lie. *Id.* at 489. By contrast, Defendants' alleged false statements do not depend on any matter delegated to any local commission or regulator. Parx Casino's contention is that Defendants falsely advertise Illegal Slot Machines as "legal" when the machines are illegal under Section 5513 of the Crimes Code. And application of the criminal law is a matter squarely within the province of the Court.

Similar to the federal claims, for the state law claims of common law unfair competition and tortious interference, the relevant question is whether, based on the conduct alleged, Parx has alleged those causes of action. *Synthes (USA) v. Globus*

*Med., Inc.*, No. 04-CV-1235, 2005 U.S. Dist. LEXIS 19962, at *16, 18-19 (E.D. Pa. Sep. 14, 2005) (While "no private right of action [exists] under the Medicare Criminal Fraud and Abuse statute" "[t]he mere fact the Anti-Kickback provision prohibits Synthes' conduct does not mean that the same conduct cannot provide a basis for civil liability under another state or federal statute. The question then is whether the underlying conduct violates Pennsylvania state law" and denying motion to dismiss tortious interference and unfair competition claims); *see also Phila. Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 337 (3d Cir. 2018) (noting that the District Court "dismissed the state law claims, for failure to plead the proper elements of an unfair competition or a tortious interference claim" not because its Sherman Act claim failed). Here, Defendants do not argue that Parx Casino has failed to allege the elements of tortious interference or unfair competition, just that these claims cannot coincide with regulations on the same topic. There is no legal support for that position.

Ultimately Defendants' argument fails because this case does not concern compliance with business regulations but rather an alleged pattern of criminal, deceptive and tortious conduct.

## II. Each Count of the Amended Complaint States a Claim

"When reviewing a 12(b)(6) motion, [the Court must] 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 Fed. Appx. 159, 2019 U.S. App. LEXIS 26688 (3d Cir. Sept. 4, 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts must be

"construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). Moreover, pleadings are not evidence and a plaintiff is not required to allege its evidence – some of which is properly developed through discovery. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) (holding "a complaint need not establish a *prima facia* case in order to survive a motion to dismiss. A *prima facie* case is 'an evidentiary standard, not a pleading requirement,' and hence is 'not a proper measure of whether a complaint fails to state a claim.'") (citations omitted).

The standard for sufficiency of a complaint is simply whether the facts alleged plausibly support an inference that the defendants may be liable. As the Third Circuit recently explained in reversing dismissal of a complaint pursuant to Rule 12(b)(6):

> [A] claim should survive a motion to dismiss if it contains sufficient factual allegations that, if accepted as true, 'state a claim of relief that is plausible on its face.' 'A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' In assessing the claims, we must construe the complaint liberally and assume the veracity of all 'well-pleaded factual allegations.'

*Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) among other authorities).

These standards must be applied liberally in RICO cases to accomplish the remedial goals of RICO. *See Dockery v. Heretick*, No. 17-4114, 2019 U.S. Dist.

LEXIS 81748, at *48 (E.D. Pa. May 14, 2019) (Baylson, J.) (denying motion to dismiss and properly construing allegations in favor of plaintiff, noting that regardless of defendant's factual arguments, the allegations in the complaint were "enough, at this stage of the proceedings, to satisfy the broad requirements of the RICO statute," citing *Boyle v. United States*, 556 U.S. 938, 944 (2009) (RICO must be "liberally construed to effectuate its remedial purposes")).  Additionally, a complaint may properly allege the contents of documents whose authenticity is not challenged.  *GOLO LLC v. HighYa, LLC*, 310 F.Supp.3d 499, 503 (E.D.Pa. 2018) (Bayslon, J.), citing *Pryor v. National College Athletic Association*, 288 F.3d 548, 560 (3d Cir. 2002).

Defendants' motions nowhere in their collective 80 pages acknowledge or discuss these pleading standards, which the Amended Complaint satisfies as to each of its counts.

## A.   Parx Casino States a Civil RICO Claim

The Amended Complaint pleads more than sufficient facts to state a claim for civil RICO. "To establish a RICO claim, a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Defendants' lengthy motions do not challenge any of these elements, with the exception of two of the four predicate crimes alleged, *i.e.,* wire and mail fraud. Defendants do not dispute conduct; the

existence of the Illegal Slots Enterprise; that the Amended Complaint alleges a pattern; or even that the Amended Complaint alleges that pattern consisted of violations of Section 5513, 18 U.S.C. § 1955 or money laundering in violation of 18 U.S.C. §§ 1956 & 1957. The motions also do not challenge the distinctness of the Illegal Slots Enterprise from Defendants and its impact on interstate commerce. *Compare* Am. Compl. ¶¶ 134-159 (pleading the equivalent of a RICO case statement).

The motions challenge Parx Casino's RICO claims on only two bases: (1) whether the Amended Complaint adequately alleges that Parx Casino's injuries were proximately caused by the Illegal Slots Enterprise; and (2) whether the predicates of wire and mail fraud were pleaded with sufficiently particularity. Neither of these challenges survives proper application of the law to Parx Casino's allegations.

### 1. The Amended Complaint Adequately Alleges that the Illegal Slots Enterprise Has Proximately Caused Parx Casino Damages

The Amended Complaint more than adequately describes the direct damages Parx Casino has suffered as a proximate result of the Illegal Slots Enterprise placing and operating Illegal Slot Machines. Defendants are wrong that application of the Supreme Court's decisions in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) and the plurality decision in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) require any different conclusion. *See* Dkt. 18-1 at 15; Dkt. 19 at 16 (arguing the Court "need look no further" than those decisions to resolve its motion). *Hemi* and *Anza* involved attenuated and indirect theories of causation that are readily

distinguished from this case. Parx Casino's theory of liability is direct and entirely in line with the third leg of the Supreme Court's more recent RICO proximate cause jurisprudence, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) – a decision the Defendants ignore altogether – as well as more recent Third Circuit and District Court authority that is also disregarded by Defendants. Those authorities hold that allegations of lost profits and market share that are the direct, foreseeable and natural result of Defendants' predicate crimes *do* support a civil RICO claim, particularly at the pleadings stage.

a.    **The Illegal Slots Enterprise Was Intended to and Has Directly Damaged Parx Casino**

The Amended Complaint plainly states facts that support Parx Casino's damages and identify the Illegal Slots Enterprise as their direct cause.

Parx Casino paid $50 million for a license to operate legal slot machines and invested approximately $500 million to build and develop its facility. Am. Compl. ¶¶ 82 & 91. The slot machine market, like any other, is finite and when Parx Casino made this investment it was assured the numbers and locations of competing slot machines would be regulated to ensure a return. *Id.* ¶¶ 83, 105. By contrast, there is no limit on the number or location of Illegal Slot Machines and no licensing investment is required. *Id.* ¶ 106. Defendants, along with other purveyors, have accordingly flooded the market with Illegal Slot Machines, of which there are as many as 80,000 now in Pennsylvania. *Id.* ¶ 107. In fact, the number of Illegal Slot Machines in the Commonwealth is now more than three times the number of lawful machines. *Id.* This includes placement of Illegal Slot Machines at multiple locations

20

surrounding Parx Casino. *Id.* ¶ 116. A foreseeable and natural consequence of these Illegal Slot Machines is reduced market share and profits for Parx Casino.

The Amended Complaint recites the testimony of numerous experts and industry professionals concerning the impact of the Illegal Slot Machines on legal gambling. *Id.* ¶¶ 109-112. There can be no doubt that if the Illegal Slots Enterprise was shut down, the profits generated on those illegal machines would be realized in whole or in part by licensed operators like Parx Casino. *Id.* ¶ 113. In the meantime, the diversion of its customers by the Illegal Slots Enterprise has resulted in damages to Parx Casino of millions of dollars over the past five years. *Id.* ¶ 158.

Parx Casino's theory of proximate causation is straightforward: Defendant and the Illegal Slots Enterprise's placement and operation of tens of thousands of Illegal Slot Machines in and around it, each of which constitutes a predicate crime under Section 5513 of the Crimes Code and 18 U.S.C. § 1955, is intended to and has had the direct result of damaging Parx Casino's business and property by diverting the finite market for slot machines from Parx Casino's legal machines to the enterprise's Illegal Slot Machines. The Amended Complaint pleads facts that more than plausibly support this theory of causation.

**b.     Proximate Cause Requires Only that the Natural and Foreseeable Result of Defendants' Conduct is the Alleged Harm**

The standard by which to judge the Amended Complaint's proximate cause allegations is whether the alleged damages are the foreseeable and natural consequence of Defendants' predicate acts. "'Proximate cause…is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every

case.'" *Bridge*, 553 U.S. at 654 (citation omitted). What proximate cause does is "'limit a person's responsibility for the consequences of that person's own acts' … with a particular emphasis on the 'demand for some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (citations omitted). As the Supreme Court put it in *Bridge*, which is completely ignored by Defendants, proximate cause is pleaded where it is alleged the plaintiffs' injury was "the direct result of petitioners' fraud" because "[i]t was a *foreseeable and natural consequence* of petitioners' scheme." *Id.* at 658 (emphasis added); *see also Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 637-638 (6th Cir. 2016) (*en banc*) (reviewing case law from different Circuits, all concluding that RICO proximate cause is pleaded and established whenever a plaintiff's alleged injuries are the foreseeable and logical consequence of the defendant's conduct).

Third Circuit law is consistent, requiring only "some direct relation between the injury asserted and the injurious conduct alleged," such that the injury alleged is not "purely contingent" on another event or action. *Saint Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 301 (3d Cir. 2020) (reversing dismissal of RICO claim based on overly narrow construction of pleading requirements for proximate cause). In this case, there is a direct and foreseeable relation between the Illegal Slots Enterprise's placement of tens of thousands of Illegal Slot Machines in Pennsylvania and around Parx Casino and Parx Casino's loss of slot machine market share and profits. Defendants' contrary position is deficient factually and legally.

Factually, Defendants describe the conduct of the Illegal Slots Enterprise as if it were limited to the manufacture and sale of Illegal Slot Machines. *See* Dkt. 18-1 at 21-22; Dkt. 19 at 22-23. That is not what is alleged. Rather, as discussed above, it

is alleged that Defendants oversee and manage an enterprise that not only manufactures and distributes Illegal Slot Machines, but also places, operates, maintains and advertises those machines – all of which put the Illegal Slots Enterprise in direct competition with lawful slots operators like Parx Casino. *See supra* at 5-6.

Legally, Defendants misstate what is required to plead proximate cause and ignore controlling authority holding that proximate cause is pleaded where the alleged harm is the foreseeable and natural consequence of a defendant's conduct.

In *Bridge*, bidders in a tax sale avoided a "single bidder" rule by sending multiple representatives to bid and having those representatives make false statements that they were independent. *Id.* at 644. There were only a finite number of bids at the auctions and plaintiffs alleged defendants' scheme led to defendants getting more of those bids, which in turn reduced the number plaintiff could receive. *Id.* While the representatives' false statements of independence were not directed to plaintiffs, the Supreme Court concluded that plaintiffs had adequately alleged a "direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles." *Id.* at 657-58. The Court held that plaintiffs' loss of a share of bids to the unlawful bidders was the "foreseeable and nature consequence" of plaintiff's actions. *Id.* at 658.

More recently, the Third Circuit has followed this approach to RICO proximate cause in similar cases, *i.e.*, where the alleged predicate crimes foreseeably result in diversion of a finite set of resources from plaintiffs to defendants. Thus, in its 2020 decision in *Saint Luke's Health Network, Inc, supra*, plaintiffs' RICO theory was that defendant's submission of allegedly fraudulent claims to a reimbursement

program led to injury to plaintiff because claims made by the defendant to a government office decreased the funds available for plaintiffs' own claims. 967 F.3d *Id.* at 301. The Court explained: "Because the EE Program has a fixed pool of assets, Defendants' alleged manipulation to increase their share of the limited funding necessarily resulted in Plaintiffs receiving a decreased proportion of those assets." *Id.* at 302.

Likewise, in *In re Avandia Mktg.*, 804 F.3d 633 (3d Cir. 2015), third party payors sued a drug manufacturer under RICO based on false statements of efficacy and safety the manufacturer made to doctors, thereby increasing the market share of the drugs prescribed and which the payors must therefore reimburse. *Id.* at 636-637 (describing plaintiff's "quantity effect" theory). This is like Parx Casino's allegations that Defendants increased the Illegal Slots Enterprise's market share by falsely stating that the Illegal Slot Machines were lawful. The Third Circuit held as a matter of law that plaintiff stated a claim in *Avandia*, stating that, notwithstanding the independent decisions of the prescribing doctors (the customers), plaintiff had sufficiently alleged proximate cause, "[k]eeping in mind that at the motion-to-dismiss stage we must accept all plausible allegations in the complaint as true …." *Id.* at 643-44 (further stating that the case, like this one, is "more akin to *Bridge* than to *Holmes, Anza or Hemi*").

The *Avandia* decision puts to rest Defendants' argument that allegations of lost profits or market share cannot support proximate cause in the RICO context. Dkt. 18-1 at 20; Dkt. 19 at 21. That argument was never well founded. This is demonstrated by the *Checker Cab Phila., Inc.* decision that Defendants cite elsewhere in their brief and that is discussed above. Concerning proximate cause,

the court in *Checker Cab* held the plaintiffs in that case <u>had</u> adequately pleaded proximate cause based on lost goodwill and business opportunities as a result of defendants' false statements to the public about defendants' insured status. Noting the case was at the pleadings stage, the court held: "[T]his Court finds that Plaintiffs have sufficiently alleged that they lost taxicab fares as a direct result of Defendants' alleged misrepresentations regarding Plaintiffs' insured status." *Checker Cab Phila., Inc.*, 2016 U.S. Dist. LEXIS 28447, at \*33. This same reasoning applies to Defendants' repeated alleged statements that their Illegal Slot Machines are legal when they are not.

In fact, there are multiple decisions in this District in which lost profits or market share that are the foreseeable consequence of predicate crimes have been sufficient to support a RICO claim. *E.g. Expotech Eng'g, Inc. v. Cardone Indus.*, No. 19-1673, 2020 U.S. Dist. LEXIS 139438, at \*13 (E.D. Pa. Aug. 5, 2020) (proximate cause adequately alleged where "Cardone's theory of causation is straightforward: Expotech and Ghani bribed [Cardone's vice-president] into tricking Cardone into accepting a contract that Expotech was not qualified to perform, and as a result, Cardone lost money and clients. Had Expotech not committed the predicate bribery, Cardone would not have entered into the contract that led to its losses. Thus, the injury is direct and foreseeable."); *In re Actiq Sales & Mktg. Practices Litig.*, No. 07-4492, 2009 U.S. Dist. LEXIS 43710, \*9-10 (E.D. Pa. May 22, 2009) (defendants allegedly marketed a drug unlawfully and the court rejected the argument that causation was not supported because it was physicians and third parties that decided to prescribe it; holding that "[t]he notion that Defendants' comprehensive marketing scheme had no effect on physicians and third parties, such

4858-0268-4750 v1

that their selection of Actiq was wholly unforeseeable by Defendant, is unrealistic. Indeed, Defendant markets aggressively with the intent that, as a result of their efforts, physicians will prescribe their product."); *Aamco Transmissions, Inc. v. Marino*, Nos. 88-5522, 88-6197, 1992 U.S. Dist. LEXIS 2081, at *20-21 (E.D. Pa. Feb. 20, 1992) ("Construing the language of the statute, courts have held that where the 'damages sustained' by a victim of a RICO violation include lost profits, there is no bar to a recovery of those losses.")

The 24-year old summary judgment decision in *Callahan v. A.E.V.*, 182 F.3d 237 (3d Cir. 1999) does not require any different conclusion. *See* Dkt. 18-1 at 20-21; Dkt. 19 at 21. That decision came only "after extensive discovery." *Id.* at 245-46. Plaintiff's causation theory in that case was indirect, complicated and readily distinguished from this case and the others discussed above. In sum, the plaintiff in *Callahan* argued that fraudulent statements to the Pennsylvania Liquor Board allowed defendants to attain multiple licenses and that after obtaining those licenses defendants were able to negotiate "volume discounts" from a distributor, which volume discounts then harmed plaintiff's business. *Id.* at 264. The case is not like this one, in which it is alleged that the Illegal Slots Enterprise flooded the market with Illegal Slot Machines that were intended to and have taken market share and profits _directly_ from Parx Casino. Moreover, because it was a summary judgment case, and not being decided on the pleadings, the Court considered evidence in that case from the distributor, who testified to different causes for the volume discount about which plaintiff complained. *See id.* In any event, *Callahan* does not stand for the broad statement for which Defendants cite it, *i.e.*, that courts reject on the pleadings any RICO case in which proximate cause is based on lost market share or

customers. Dkt. 18-1 at 20; Dkt. 19 at 21. This is conclusively demonstrated by the subsequent Supreme Court, Third Circuit and District case law discussed above, all of which hold to the contrary.

### c.   *Hemi and Anza* are Readily Distinguished

Primarily, Defendants rely for their proximate cause argument on the Supreme Court's decisions in *Hemi* and *Anza.* But *Hemi* and *Anza* do not control here because causation in those cases was indirect and attenuated and not direct and foreseeable, as alleged in this case.

In *Anza*, plaintiff alleged a competing business harmed it by defrauding the state tax authority and then using the extra money not paid to the state to offer lower prices to attract more customers, while still not reducing defendant's profit margin. 547 U.S. at 454.  The Court held that the cause of plaintiff's harm was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State.)." *Id.* at 458. The theory of causation in *Anza* is nothing like the Amended Complaint in this case. Unlike the plaintiff in *Anza*, Parx Casino does not allege that reduced costs obtained through lies to the Commonwealth allowed the Illegal Slots Enterprise to operate more profitably than it. Parx Casino alleges that the enterprise's placement and operation of Illegal Slot Machines has *directly*, *foreseeably*, and *naturally* taken market share from Parx Casino's legal slots.

*Hemi* is even more remote from the facts here. In that case, New York City alleged lost tax revenue from the sale of cigarettes by Hemi, an out-of-state cigarette seller. 559 U.S. at 6. A city law required Hemi's New York City customers (but not Hemi) to remit sales tax to the city but not all customers did so. *Id.* at 5. Hemi was supposed to report sales to the State of New York, which would then share those

reports with New York City so that the City could try to track down scofflaw buyers who did not pay the tax. *Id.* at 5-6. New York City's theory was that Hemi caused it damages by failing to report to the State, so the State could report to the City, so the City could track down those buyers who in turn did not remit their taxes. *Id.* at 9. Not surprisingly, the Supreme Court rejected this multi-step causation argument as too "attenuated." *Id.* Again, this has no bearing on this case, where Parx Casino alleges that it was directly harmed by the Illegal Slots Enterprise flooding the market with Illegal Slot Machines, including all around Parx Casino, siphoning off a share of the finite slot machine business available in Pennsylvania.

In *Avandia*, the Third Circuit distinguished between cases like *Anza* and *Hemi* and cases like *Bridge* and like *Avandia* itself. Specifically, *Anza* and *Hemi* concern cases "when the conduct directly causing the harm was distinct from the actions that gave rise to the fraud." 804 F. 3d at 642-43. "In contrast, if there is a sufficiently direct relationship between the wrongful conduct and the plaintiff's injury, the Court has held that a RICO plaintiff who did not directly rely on a defendant's misrepresentation can still establish proximate causation." *Id.* at 643, citing *Bridge*, 553 U.S. at 657-58. The predicates in *Avandia* were limited to mail and wire fraud. Here, the predicates include placement and operation of Illegal Slot Machines, itself a predicate crime, which the Amended Complaint plausibly alleges directly caused Parx Casino harm. This case thus falls squarely within the cases held sufficient in *Bridge* and *Avandia*.

### d. Parx Casino's Damages are its Own and Not Speculative

Finally, Parx Casino's damages are its alone. It is true that Defendants have violated the law (which is always the case in RICO cases) and that the Commonwealth may have its own remedies (civil and criminal) against Defendants. However, neither the Commonwealth nor any other party has suffered the lost profits and damages that Parx Casino has suffered directly from the placement of Illegal Slot Machines around it and throughout Pennsylvania. No other party could recover the damages that Parx Casino seeks, which concern damage to its business and property. In these circumstances, even if other direct victims could seek *unique* damages against Defendant, that is no impediment to Parx Casino seeking compensation for harm to it. This was explained by the court in *J & M Turner v. Applied Bolting Tech. Prods.*, Nos. 95-2179, 96-5819, 1997 U.S. Dist. LEXIS 1835, at *35 (E.D. Pa. Feb. 18, 1997). In that case, competitors sued for lost profits and market share and their claim was sustained against a proximate cause challenge. The court acknowledged that defrauded customers were damaged but allowed the competitor's RICO claim because it alleged "injuries – lost sales and revenues – that are distinct from any harm to [defendant's] customers." *Id.* The same is true here. *See also Counts v. GM, LLC*, No. 16-12541, 2018 U.S. Dist. LEXIS 181490, at *37 (E.D. Mich. Oct. 23, 2018) ("There is no reason why Bosch's conduct cannot have multiple 'direct victims,' including EPA, CARB, and the Plaintiffs.").

Neither are Parx Casino's damages too speculative for proof. As already discussed, the Third Circuit and multiple cases in this District have held that lost profits damages are subject to proof and may be recovered. *See e.g. In re Avandia Mktg.*, 804 F.3d at 644 (concerning damages resulting from alleged inflated value of

a drug based on unlawful marketing, rejecting argument that damages were too speculative and stating: "[n]or should there be difficulty in distinguishing between the amount of damages attributable to a defendant's violation and to other, independent factors"; "[t]his issue of damages, rather than demonstrating a lack of proximate causation, raises an issue of proof regarding the overall number of prescriptions…or amount of price inflation" and was "a question for another day."); *Saint Luke's*, 967 F.3d at 303 (rejecting argument that apportionment of damages would be difficult because of "onerous methodological differences" between calculations; stating, "this puts the cart before the horse" and that "damages calculations is a question of fact to be resolved at a later stage of litigation"); *see also Commer. Cleaning Servs. v. Colin Serv. Sys.*, 271 F.3d 374, 383 (2d Cir. 2001) ("[a]lthough we do not deny that there may be disputes as to whether the plaintiff class lost business because of defendant's violation of Section 1324(a) or for other reasons, the plaintiff class was no less directly injured.").

Defendants complain about the quantum of evidence alleged in the Amended Complaint specific to damages (like lost customer names, etc.). Putting aside whether or not the names of specific customers will ever be relevant to calculation of Parx Casino's damages, such details are for another day. Pertinent at this juncture is only whether the Amended Complaint plausibly alleges that surrounding Parx Casino with Illegal Slot Machines damaged its business. The answer to that question is, "Yes." Indeed, such diversion of business from Parx Casino was the intended, foreseeable, and natural consequence of the Illegal Slots Enterprise.

## 2.   The Complaint's Wire and Mail Fraud Allegations Meet the Requirements of Rule 9(b)

The only other challenge Defendants raise to the RICO count in the Amended Complaint concerns whether the predicate crimes of wire and mail fraud are pleaded with the requisite particularity. *See* Dkt. 18-1 at 26-28; Dkt. 19 at 27-29. Parx Casino agrees that when acts of wire and mail fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b). *See Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). However, while the RICO count here does not rise or fall with wire or mail fraud – which are just two of the multiple predicate crimes alleged – the fact is that the Amended Complaint does satisfy Rule 9(b).

Specifically, the allegations of the Amended Complaint place Defendants well "'on notice of the precise misconduct' they are charged with …." *Pierre v. Healthy Bev., LLC*, No. 20-4934, 2022 U.S. Dist. LEXIS 35109, at *22 (E.D. Pa. Feb. 28, 2022) (denying motion to dismiss; citations omitted). As the Third Circuit instructs, "'focusing exclusively on [Rule 9(b)'s] particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility' the rule contemplates.'" *Id.* (citations omitted). Thus, one way of satisfying Rule 9(b) is to specify "time, place or date"; however, the Third Circuit also provides for "'alternative means of injecting precision and some measure of substantiation.'" *Id.* (citations omitted).

4858-0268-4750 v1

Moreover, in applying Rule 9(b), "courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.'" *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 216 (3d Cir. 2002). "Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." *Id.* This Court noted this "relaxed" application to allegations of corporate fraud in cases where "plaintiffs 'cannot be expected to have personal knowledge of the details of corporate internal affairs' and the pertinent 'factual information is peculiarly within the defendant's knowledge or control.'" *Impala Platinum Holdings Ltd. v. A 1 Specialized Servs. & Supplies, Inc.*, No. 16-1343, 2016 U.S. Dist. LEXIS 127055, at *14-15 (E.D. Pa. Sep. 16, 2016) (Balyson, J.) (denying motion to dismiss civil RICO claim based on predicates of mail and wire fraud).

The Amended Complaint alleges that Defendants committed wire fraud by publishing false and fraudulent statements about the Illegal Slot Machines on their websites, identifying the URL for the websites, the specific false and fraudulent statements, and the last date those websites were visited and made the fraudulent statements. Compl. ¶¶ 121-22, 141(c). This more than satisfies Rule 9(b) and Defendants do not explain how or why it does not. *See* Dkt. 18-1 at 26-28; Dkt. 19 at 27-29, failing to address these allegations whatsoever. Standing alone, these allegations would be sufficient to support wire fraud as a predicate crime.

The Amended Complaint further specifically alleges how the Defendants, located in different states, interacted with each other and with other participants in the Illegal Slots Enterprise, so that Defendants could manage and maintain control over that enterprise. *See, e.g.,* Am. Compl. ¶¶ 33-49, 50-52, & 141(g). The Amended Complaint also details the relationships between the parties, both contractually and financially, establishing the necessity and nature of the communications required for the Illegal Slots Enterprise to function. It further alleges that the wires and mails are used to accomplish this coordination, which is not just plausible but in fact necessarily true. *See id.* ¶ 141(g). Additionally, the Amended Complaint alleges that the Illegal Slots Enterprise was advanced through the filing of tax returns that masked the nature of its income, utilizing the mails or wires to annually file those returns. *Id.* ¶ 141(f). Only Defendants know the exact dates and times of these uses of the wires but the Amended Complaint more than adequately describes these uses of the wires and mails so that Defendants know precisely to what it refers. This is more than adequate at this stage of the case.

The Third Circuit decision in *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) is on point. The District Court there dismissed a RICO case because the plaintiff failed to describe "the date, place or time of the phone calls and letters that defendants allegedly used in furtherance of their fraudulent scheme." *Id.* at 790-91. This is the same position that Defendants argue

the Court should adopt here. But the Third Circuit reversed, concluding that the District Court applied "too strict a scrutiny." *Id.* at 791. While date, place and time are often shorthand used in this context (and what Parx Casino was in fact able to allege concerning the internet statements already discussed), the Court held that it is otherwise sufficient to allege "the nature and subject" of the uses of the mails or wires at issue. *Id.*; *see also, e.g., Allied World Ins. Co. v. Perdomo Indus., LLC*, No. 19-2467, 2019 U.S. Dist. LEXIS 230783, at *1-3 n.4 (E.D. Pa. Dec. 5, 2019) (Rule 9(b) met where complaint "details relationships among Defendants, alleged events and transfers between Defendants, and a specific timeline of events supporting circumstances of fraudulent transfer"); *Stevens v. O'Brien Envtl. Energy, Inc.*, No. 94-4577, 1999 U.S. Dist. LEXIS 6660, at *2, *17-18 (E.D. Pa. May 10, 1999) (where entity was alleged to have traded on inside information "tipped" to it by an unidentified insider, Rule 9(b) standard was met where the complaint detailed the substance of the alleged tip and the circumstances of the subsequent sale); *Edgewood Props., Inc. v. J&L Mgmt. Corp.*, No. 08-774, 2009 U.S. Dist. LEXIS 140186, at *28-29 (D.N.J. Jan. 27, 2009) (9(b) standard was met where plaintiff "has alleged with precision and substantiation the existence of an enterprise, the purpose of the scheme, which Enterprise Party did what, to whom, and the general content of the misrepresentations, all aimed at 'depriving' [plaintiff] and others of re-usable concrete.").

Discovery will generate additional specificity about dates and times but Parx Casino obviously lacks access at this juncture to specify individual communications among and between Defendants and other enterprise participants. As for the false tax returns that concealed the nature of Defendants' revenue from the Illegal Slot Machines, while returns must be filed annually (by wire or mail), Parx Casino cannot be expected at the pleading stage to specify the dates Defendants submitted each annual return. It is sufficient at this point, and consistent with *Seville*, to identify the precise nature of the transmission, which the Amended Complaint has done. Certainly, Defendants do not and could not maintain that they are not on notice of Parx Casino's specific allegations in these regards.

## B.    Parx Casino States a Lanham Act Claim, including Proximate Cause

Similar to the RICO arguments, Defendants' arguments regarding the adequacy of Parx Casino's Lanham Act claim focuses exclusively on the element of proximate cause. Dkt. 18-1 at 28; Dkt. 19 at 29. Defendants thus concede the other elements of the claim, including that Defendants made false statements, with an intent to deceive, to influence consumers' choice of slot machines, in circumstances that impacted interstate commerce.

Moreover, Parx Casino has pled an injury resulting directly from the deception in the defendants' advertising. Dkt. 19 at 30. The Amended Complaint clearly alleges that Defendants are direct competitors with Parx Casino. Am. Compl.

¶ 169. It alleges that Defendants' customers include people who play the Illegal Slot Machines because of a belief that they are safe and legal, like the legal slot machines at Parx Casino. *Id.* ¶ 171. It alleges those  customers' belief is the result of the Defendants' false advertising. *Id.* And the Amended Complaint alleges that that flooding the area around Parx Casino with the Illegal Slot Machines that are falsely advertised as equivalent to the legal machines at Parx Casino naturally and foreseeably diverts revenue from Parx Casino's legal slots business. *E.g. id.* ¶ 172; *see also supra* at 20-21. This adequately pleads proximate cause.

### 1. Defendants are All Direct Competitors of Parx Casino

Contrary to Defendants's arguments, Parx Casino does plead that the Defendants' customers include players of the Illegal Slot Machines, who are the same persons that are Parx Casino's customers. *See id.* ¶ 169. Notwithstanding their arguments to the Court, Defendants are not simply in the business of designing and licensing the game software and manufacturing and distributing the Illegal Slot Machines. Rather, each defendant participates in and has a direct pecuniary interest in the operation and play of the Illegal Slot Machines. Thus, Defendants' customers are not just the other members of the enterprise, *i.e.* the Operators and Location Businesses. Rather, their customers include players of the Illegal Slot Machines.

The Amended Complaint incorporates into its Lanham Act count the facts alleged in paragraphs 1 through 159 of the Amended Complaint. Am. Compl. ¶ 160.

Those facts plausibly establish that all three defendants jointly control a business combination that manufactures, distributes, _operates and maintains_ the Illegal Slot Machines in direct competition with Parx Casino, through the use of Operator Agreements, Location Agreements, and licensing agreements and even directly through Miele. _Id._ ¶¶ 17, 35-36, 39, 49, 50-53, 114-117, 141-143, 158 & 164.

Within Count II, paragraph 169 reiterates the allegations of direct competition as follows:

> Pace-O-Matic, POM and Miele directly compete with Parx Casino and other casinos in Pennsylvania through the Illegal Slots Scheme by placing Illegal Slot Machines in Business Locations throughout the Commonwealth, including nearby Parx Casino. POM collects a kick back of money played in every Illegal Slot Machine, which on information and belief is shared with Pace-O-Matic. Miele acts as an Operator of the Illegal Slot Machines and so profits directly from the use of the Illegal Slot Machines by customers who would otherwise go to a licensed casino, like Parx Casino, for the same slot machine experience.

While Defendants acknowledge these machines are unlicensed and thus Illegal Slot Machines for purposes of this motion, there is no doubt that the Amended Complaint alleges facts supporting this allegation. _See supra_ at 3-5.

Moreover, that all three defendants receive a share of funds played by customers of these Illegal Slot Machines is supported by detailed factual allegations. Specifically, in addition to operating the Illegal Slot Machines directly, _see id._ ¶¶ 17, 164, Miele sells the Illegal Slot Machines to Operators who enter into Operator Agreements with POM and Miele, _id._ ¶ 35. The Operators collect revenue derived

from the Illegal Slot Machines from each Location Business every two weeks. *Id.* ¶ 50. The Operator pays 40% of the collected revenue to the Location Business. *Id.* The remaining 60% of revenue is either retained by the Operator or kicked back to POM as its take. *Id.* POM in turns kicks back some of that money to Pace-O-Matic. *Id.* ¶ 51. Thus, Pace-O-Matic and POM profit directly from the trade of customers who play the Illegal Slot Machines. Additionally, as an Operator, Miele also profits directly from the trade of customers who play the Illegal Slot Machines. *Id.* ¶ 52.[4] Defendants' receipt of slots play profits from Illegal Slot Machines puts them in direct competition for slots play with Parx Casino and other operators of legal slot machines.

Defendants ignore the above allegations and argue that Parx Casino is not a direct competitor. Dkt. 18-1 at 31-33, Dkt. 19 at 32-33. They falsely argue that their only participation in the scheme is to design, license, and market software and game fills and then manufacture and distribute the Illegal Slot Machines. *Id.* But this is only part of the story. As detailed above, the Amended Complaint further alleges

---

[4]     The revenue from the Location Businesses necessarily varies according to the number of Illegal Slot Machines at a location, the amount of play and the amount of payouts during each collection period. Therefore, the split of the 60% share is not attributable to any fixed price transaction such as the sale of Illegal Slot Machines by Miele or the sale of game fills by Pace-O-Matic and POM. See *id*. ¶¶ 37, 45. Nor is the split of revenue from Location Businesses attributable to royalties under the various licensing agreements. *See id*. ¶¶ 35-36 (detailing that the licensing agreements are distinct from the Operator Agreement in both subject matter and signatories).

that Defendants manage, control and even directly operate the Illegal Slot Machines as they are advertised by Defendants and used by the same public that uses legal slots. *Supra* at 9-11 & 36-37. As such, Parx Casino is in the zone of interests protected by the Lanham Act. *Lexmark International, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 131-32, 133 (2013) ("to come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales"; and "that occurs when deception of consumers causes them to withhold trade from the plaintiff"). Moreover, while the Supreme Court in *Lexmark* held that even indirect competitors can state Lanham Act claims as a matter of law under this standard, Parx Casino's case is based on Defendants direct diversion of sales from Parx Casino to Defendants and the Illegal Slots Enterprise – what the Supreme Court said "may be the paradigmatic direct injury from false advertising." *Id.* at 138. In these circumstances, no additional "unique circumstances" need be alleged.

### 2.    Parx Casino Pleads a Direct Injury Resulting from Defendants' Deception to Consumers

Specifically, the Amended Complaint alleges that Defendants' use advertising to falsely claim the Illegal Slot Machines are "legal" and "skill games" when they are not legal and the outcomes are not predominantly determined by skill. Am. Compl. ¶ 32.

4858-0268-4750 v1

The Amended Complaint further alleges that Defendants' false advertising affects the purchasing decisions of Location Businesses and the customers who play slot machines. *Id.* ¶¶ 171, 183-85 (alleging that the Defendants' false representations are likely to and do deceive and mislead prospective purchasers and players concerning the nature, characteristics, and qualities of its games, as well as their approval for use in Pennsylvania and that players rely on the false representations of Pace-O-Matic, POM, and Miele that playing the Illegal Slot Machines in unregulated retail locations is legal and safe when that is not the case).

Lastly, the Amended Complaint alleges that the Defendants' misrepresentations have harmed Parx Casino's business by influencing members of the public who play slot machines to play the Illegal Slot Machines and withhold that trade from Parx Casino. *Id.* ¶ 170 (alleging that Defendants' misrepresentations, promotion and placement of Illegal Slot Machines harm Parx Casino by taking market share and customers away from Parx Casino); ¶¶ 186, 191 (alleging that a portion of the money that players spend on the defendants' Illegal Slot Machines would be played on slot machines at Parx Casino if Defendants did not make the machines available and promote them as legal).

The foregoing allegations sufficiently plead proximate cause based upon Defendants' use of false advertising to divert sales from Parx Casino, which as noted is what the Supreme Court called the "paradigmatic direct injury" supporting

proximate cause under the Lanham Act. *Lexmark Int'l, Inc.*, 572 U.S. at 138. Neither is proximate causation broken in the Lanham Act context by the intervention of consumer decisions. As the Court explained, "all commercial injuries from false advertising are derivative of those suffered by consumers who are deceived by the advertising; but since the Lanham Act authorizes suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate cause …." *Id*. at 133. It follows that:

> … a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff. That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff. For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitor's "inability to meet [its] financial obligations."

*Id*. at 133-134. When consumers withhold their trade from Parx Casino, the harm is direct.

Here, the Amended Complaint alleges that consumers who are influenced by the Defendant's false advertising to play the Illegal Slot Machines withhold their trade from Parx Casino. *Supra* at 9-10 & 36-37. This adequately pleads proximate cause. *Steer Mach. Tool & Die Corp. v. SS Niles Bottle Stoppers, LLC*, 331 F. Supp. 3d 429, 434 (M.D. Pa. 2018) (denying motion to dismiss and reasoning: "The

arrangement before us is 'the 'classic Lanham Act false-advertising claim' in which 'one competito[r] directly injur[es] another by making false statements about his own goods … and thus inducing customers to switch.'"; in such cases, as here, "the plaintiff has been and is likely to continue to be injured in its business reputation, and lose revenue and profits"), citing *Lexmark Int'l*, 572 U.S. at 137.

Parx Casino's injury is not speculative, as discussed above, *supra* at 29-30, but Defendants are also wrong that any claimed "speculation" about damages is a basis for dismissal. Dkt. 18-1 at 34-35; Dkt. 19 at 35-36. Even in an indirect competition case, the Supreme Court rejected the "speculativeness of damages" and the "risk of duplicative damages or complexity in apportioning damages" as factors in analyzing proximate cause. *Id*. at 135. The Court explained that:

> … potential difficulty in ascertaining and apportioning damages is not, as *Conte Bros.* might suggest, an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects. Even when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief under §1116(a) (assuming it can prove a likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under §1117(a).

*Id.* at 135-36. Accordingly, the Defendants' emphasis on speculativeness and complexity is both unfounded and premature at this stage of the case.

Nor does Parx Casino's theory of causation require a one-to-one correspondence between the dollars played on the Illegal Slot Machines and dollars not played on Parx Casino's slot machines. It is sufficient if some dollars that are

played on the Illegal Slot Machines would otherwise be played on Parx Casino's physical or online slot machines. *See Key Recycling, LLC v. Appliance & Recycling Ctrs. of Am.*, No. 18-1656, 2018 U.S. Dist. LEXIS 163907, at *6-7 (E.D. Pa. Sep. 24, 2018) (where plaintiff alleged "'lower quotes resulted in [defendant] winning bids and contracts' at the expense of Key," "the allegations make out a 'classic Lanham Act false-advertising claim' that satisfies the proximate cause prong."). Nonetheless, the scale of the distribution of the Illegal Slot Machines and the amount of revenue they generate supports the inference that the amount of dollars lost to Parx Casino is significant.

Defendants also insinuate the claims of legality on their websites are not directed to consumers and therefore Parx Casino's allegations that those claims influence consumers are "conclusory." Dkt. 18-1 at 33-34; Dkt. 19 at 34-35. Defendants thus improperly ask the Court to draw inferences against, rather than in favor of, the Amended Complaint, as required by law. The fact is that publishing false claims on the internet where they can be seen by any person who owns a phone or computer is plainly an advertisement to the public and is logically (and certainly plausibly) intended to reach the users of slot machines. Moreover, the Operator Agreement requires Operators and Location Businesses to cooperate with POM's false advertising and promotion of the Illegal Slot Machines.  Am. Compl. ¶ 42. It

is more than a merely reasonable inference that Defendants' false claims are intended to influence consumer behavior. If not, they have little or no purpose.

Defendants also wrongly criticize Parx Casino's theory of causation because Parx Casino has not identified individual players who patronize the Illegal Slot Machines instead of Parx Casino. Dkt. 18-1 at 35. Just like with RICO, such evidence can await discovery. *See supra* at 8-9 & 16-18; *see also RegScan, Inc. v. Brewer*, No. 04-6043, 2005 U.S. Dist. Lexis 17996, at *9 (E.D.Pa. Aug. 23, 2005) (Baylson, J.) (denying motion to dismiss RICO claim and noting "that this case is still at the pleading stage").

Parx Casino's factual allegations relating to proximate cause are based on and incorporate information from the Defendants' public websites, from the Operator Agreement, from testimony before the Pennsylvania House Gaming Oversight Committee and the Gaming Control Board, as well as reasonable inferences from those sources. Defendants have not questioned the authenticity of these sources. Neither can these allegations be dismissed as mere conclusions of law. Parx Casino has more than adequately pleaded its Lanham Act claim, including with regard to proximate cause.

C.    **Parx Casino has Stated a Claim for Unfair Competition**

Parx Casino agrees that, other than not requiring the presence of interstate commerce, the requirements of its state law unfair competition claim are the same

as its Lanham Act claim. *See* Dkt. 18-1 at 37; Dkt. 19 at 37-38. As shown above, however, Parx has adequately pled its Lanham Act claim, and accordingly, it has also pled a claim for unfair competition (Count III).

Parx Casino's unfair competition claim incorporates by reference all the facts pleaded in paragraphs 1 through 179 of the Amended Complaint. Am. Compl. ¶ 180. It is based on the same facts and occurrences as the Lanham Act claim, and it is directed against the same parties. Parx Casino's common law claim for unfair competition should be upheld for the same reasons that its Lanham Act claim should be upheld:

- Defendants and Parx Casino are direct competitors for the dollars of people who play slot machines.

- Defendants have direct pecuniary interests in the operation and play of the Illegal Slot Machines.

- Defendants' false advertising affects the purchasing decisions of the customers who play slot machines.

- Defendants' misrepresentations have harmed Parx Casino's business by influencing members of the public who play slot machines to instead play the Illegal Slot Machines and withhold that trade from Parx Casino.

These allegations sufficiently plead a Lanham Act claim and thus plead a claim for unfair competition under Pennsylvania law. *Supra* at 35-44; *see also TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 288 (E.D. Pa. 2011) ("Because I found Big Belly's arguments for dismissing TriState's Lanham Act claim unconvincing at this stage of the proceedings, and because Big Belly offers no

further argument as to why TriState's unfair-competition claim must fail, I will deny its motion to dismiss the common-law unfair-competition.").

### D.   **Parx has Stated a Claim for Tortious Interference**

Defendants do not dispute that Parx Casino has adequately pled multiple elements of a tortious interference claim (Count IV), including Parx Casino's prospective contractual relations with repeat customers, Defendants' intent to interfere with those relations, and the absence of privilege or justification. Rather, Defendants, again, make the narrow argument that Parx Casino has failed to allege "a non-speculative theory of causation" of its injury. Dkt. 18-1 at 38; Dkt. 19 at 39. Doing so, Defendants rely upon the same arguments they make and that are addressed above concerning Parx Casino's RICO and Lanham Act claims. *See* Dkt. 18-1 at 39; Dkt. 19 at 40. The same arguments that demonstrate why Defendants are wrong in their RICO and Lanham Act arguments thus also demonstrate why Defendants are wrong here. *See supra* at 19-30 & 35-44.

One difference to Parx Casino's tortious interference claim is that it is limited to customers of Parx Casino who are likely to return. That names of such customers are not included in the Amended Complaint does not impact the proximate cause analysis for this count, as Defendants argue, however.

Causation in this context was taken up in *Peerless Heater Co. Mestek*, No. 98-6532, 2000 U.S. Dist. LEXIS 6664 (E.D. Pa. May 12, 2000). In that case, the

Defendant moved for partial summary judgment on the plaintiff's claim for tortious interference, among others. The court rejected the defendant's argument that the plaintiff could not prove causation. It reasoned:

> To satisfy this causation requirement, the plaintiff must prove that the defendant's activities were a material cause of the injury, but need not eliminate all possible alternative sources of injury as the cause of its injury. The plaintiff also need not prove that the defendant's conduct was the sole proximate cause of the injury. *Id.* It is sufficient that the plaintiff "adduce evidence of specific lost transactions showing causation or fact of injury, which is bolstered by an expert damage report that is not overly speculative as a matter of law."

*Id*. at *11.

The Amended Complaint alleges Defendants' false advertising combined with aggressive distribution of the Illegal Slot Machines diverts repeat customers from Parx Casino. *Supra* at 9-11 & 20-21. Even if a repeat customer returns to Parx Casino after playing one of the defendants' Illegal Slot Machines, their play on the Illegal Slot Machines represents a direct loss to Parx Casino. Furthermore, the Amended Complaint alleges that the Defendants intentionally misrepresent the nature of the Illegal Slot Machines to attract customers of Parx Casino and other casinos to play their Illegal Slot Machines.  Am. Compl. ¶ 205. Taken as true, these allegations sufficiently plead that the Defendant's efforts to take repeat customers from Parx Casino are a material or proximate cause of Parx Casino's injury.

## <u>CONCLUSION</u>

Motions to dismiss are not to resolve facts and plaintiffs are not required to plead their evidence in a complaint. Rather, motions to dismiss put before the Court a simpler question: that is, does the complaint plead sufficient facts to plausibly support the possibility of liability when those facts are taken as true and all reasonable inferences are drawn in favor of plaintiff. The Amended Complaint more than satisfies that standard as to each of its claims.

Indeed, taken as true, the facts alleged by Parx Casino in this case describe an undisputed pattern of criminal racketeering conduct, by an undisputed criminal enterprise, whose natural and foreseeable consequence has been damage to Parx Casino's business and property. Those facts further describe false and deceptive advertising by Defendants, and tortious conduct under state-law, all to that same end. The Amended Complaint does state a claim and Defendants' motions are properly denied.

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

By:  /s/ ***Gary M. Samms***
      Gary Samms, Esquire (Attorney I.D. 58096)
      Richard Limburg, Esquire  (Attorney I.D. 39598)
      Attorneys for Plaintiff Parx Casino
      Centre Square West
      1500 Market Street, Suite 3400
      Philadelphia, Pennsylvania 19102
      (215) 665-3000

Dated:  February 1, 2023