JOSHUA J. VOSS
JVOSS@KLEINBARD.COM
*Direct Dial  267.443.4114*



**KLEINBARD** LLC

March 24, 2023

**VIA CM/ECF**

Hon. Michael M. Baylson
Eastern District of Pennsylvania

**RE:**  *Greenwood Gaming & Entertainment, Inc. v. POM of Pennsylvania, LLC, et al.,* **No. 2:22-cv-4434-MMB**

Dear Judge Baylson:

On behalf of Defendants POM of Pennsylvania, Inc. and Pace-O-Matic, Inc., I write to bring the Court's attention to pertinent authority and developments that have arisen after the close of briefing on the pending motion to dismiss (doc. 18). After the POM Defendants submitted their reply brief on February 17, 2023 (doc. 25), the Court of Common Pleas of Dauphin County found, following a three-day evidentiary hearing, that the Skill Game does **not** violate the Pennsylvania Crimes Code. The Court's opinion is attached hereto as Exhibit A. The Dauphin County Court is the third state court to find the Skill Game does not violate the Crimes Code; the prior two such decisions were cited in the reply brief at page 2. Regarding one of those prior decisions, please be advised that on March 7, 2023 the Commonwealth filed an appeal of the Monroe County matter to the Pennsylvania Superior Court (a docket number has not yet been assigned). Finally, several parties, including Plaintiff Parx Casino, have recently appealed another decision relied upon in the POM Defendants' briefing, *POM of Pennsylvania, LLC v. Com. of Pa. Dept. of Revenue*, 221 A.3d 717 (Pa. Cmwlth. 2019), with Parx's appeal being docketed at 12 EAP 2023 (Pa.).

If the Court would like briefing on any of the foregoing developments, the POM Defendants are happy to supply the same before the scheduled argument in this matter on April 5, 2023.

Respectfully submitted,

Joshua J. Voss

cc:    All parties (via CM/ECF)

# Exhibit A

IN RE:  THREE PENNSYLVANIA          :    IN THE COURT OF COMMON PLEAS OF
SKILL AMUSEMENT DEVICES, ONE        :    DAUPHIN COUNTY, PENNSYLVANIA
GREEN BANK BAG CONTAINING           :
$525.00 IN U.S. CURRENCY, AND       :    NO. 2022-CV-06333-MD
SEVEN RECEIPTS

## MEMORANDUM OPINION

Presently pending before this Court is a Petition for Return of Property that was filed by Capital Vending Company, Inc. ("Capital Vending") and Champions Sports Bar, LLC ("Champions") (hereinafter referred to collectively as "Petitioners"). The background of the case is as follows:  Capital Vending is a business that supplies games and other amusement equipment/devices to bars and restaurants in central Pennsylvania and elsewhere.  Champions is a restaurant/bar located at 300 Second Street, Highspire, Pennsylvania.  Champions holds a restaurant liquor license issued by the Pennsylvania Liquor Control Board.  At all times relevant hereto, Champions had three Pennsylvania Skill Amusement Devices (hereinafter referred to collectively as the "POM Machines") in its establishment that were supplied by Capital Vending.

On December 9, 2019, at approximately 4:45 p.m., agents from the Pennsylvania State Police, Bureau of Liquor Control Enforcement (BLCE), entered Champions and seized the three POM Machines, one green bank bag containing $525.00 in U.S. currency (hereinafter "the Cash"), and seven receipts (hereinafter "the Receipts").  BLCE seized this property based on allegations that the POM Machines were gambling devices *per se*, and the Cash and Receipts were derivative contraband.  No criminal charges were filed related to the seized property, but Champions was issued an administrative citation on April 22, 2020 for permitting gambling.  This citation is still pending.

On August 23, 2022, Petitioners filed a Petition for Return of Property pursuant to 42 Pa. C.S. §5806 and Pa. R.Crim. P. 588. In their filing, Petitioners claim that the POM Machines that were seized by BLCE are not gambling devices but are instead predominately skill games. The Petition also challenged the lawfulness of the seizure.[1]  On September 8, 2022, the Commonwealth of Pennsylvania filed an answer to the Petition and included a new matter in the nature of a Petition for Forfeiture and Condemnation pursuant to 42 Pa. C.S. §5805. In its response, the Commonwealth claims that the POM Machines are games of predominant chance and are therefore subject to seizure and forfeiture as *per se* illegal gambling devices.

This Court held a hearing on the Petition for Return of Property over three days: September 30, 2022; November 22, 2022; and December 2, 2022. The Commonwealth called three witnesses: Dan Wentsler (liquor enforcement officer); Peter Nikiper (expert witness); and David Schoppe (supervisory liquor enforcement officer/expert witness). Petitioners only called Olaf Vancura as an expert witness. After the Hearing concluded, the Court invited the parties to submit proposed findings of fact and conclusions of law, which they did. This matter is now ripe for disposition.

A Petition for the Return of Property is governed by Pennsylvania Rule of Criminal Procedure which states, in relevant part:

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.
> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

---

[1] We did not hear testimony about the lawfulness of the seizure, and Petitioners did not address this issue in their Proposed Findings of Fact and Conclusions of Law. As such, we will not discuss it herein.

Pa. R.Crim. P. 588(A)(B). Under this Rule, the moving party must first establish that it is entitled to lawful possession of the property by a preponderance of the evidence. Commonwealth v. Trainer, 287 A.3d 960, 964 (Pa.Cmwlth. 2022) (citations omitted). Once that is established, the burden then shifts to the Commonwealth to show, by a preponderance of the evidence, that the property is either contraband *per se* or derivative contraband and should not be returned to the moving party. Id. (citations omitted). Contraband *per se* is property that is unlawful to possess, and derivative contraband is property that can be lawfully possessed but is used in the perpetration of an unlawful act. Commonwealth v. Irland, 153 A.3d 469, 473 (Pa.Cmwlth. 2017) (citations omitted).

In the instant matter, the parties stipulated that the three POM Machines are owned by Capital Vending. The parties further stipulated that Champions owns the Cash and the Receipts and has a possessory interest in the three POM Machines pursuant to an agreement with Capital Vending. As such, Petitioners are entitled to lawful possession of the three POM Machines, the Cash, and the Receipts unless the Commonwealth shows, by a preponderance of the evidence, that the POM Machines are contraband *per se* and the Cash and Receipts are derivative contraband. The Commonwealth claims that the POM Machines are illegal gambling devices, and the money and receipts that were seized were derivative of the illegal gambling devices.

The Crimes Code states that it is a misdemeanor of the first degree if a person "(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards." 18 Pa. C.S.A. §5513(a)(1). Unlawful gambling is defined as "gambling not specifically authorized by the Commonwealth." Com. v. Betres, 237 Pa.Super. 361, 368, 352 A.2d 495, 498 (1975). It is undisputed that the POM games

3

in the instant matter were not specifically authorized by the Commonwealth. However, the question remains as to whether these machines are gambling devices.[2]

"A machine is a gambling device *per se* if it can be used for no purpose other than gambling." Com. v. Irwin, 535 Pa. 524, 527, 636 A.2d 1106, 1107 (1993) (citations omitted). "The three elements of gambling are (1) consideration; (2) a result determined by chance rather than skill; and (3) reward." Id. (citations omitted). Where all three of these elements are present, the machine will be considered "'so intrinsically connected with gambling' as to be a gambling device *per se*." Id. (citations omitted). The Commonwealth has the burden of showing that the machines are *per se* gambling devices. Id. (citations omitted).

In determining whether a machine is a gambling device, the court must examine the characteristics of the machine itself and whether the three elements are present. Com. v. Two Elec. Poker Game Machines, 502 Pa. 186, 194, 465 A.2d 973, 977 (1983). With respect to the element of chance versus skill, Pennsylvania courts have employed the "predominate-factor test" stating that "for a game to constitute gambling, it must be a game where chance predominates rather than skill." Com. v. Dent, 992 A.2d 190, 193 (Pa. Super. Ct. 2010) (citations omitted). Simply because a machine involves a large element of chance, without more, is insufficient to find the machine to be a gambling device *per se*. Two Elec. Poker Game Machines, 502 Pa. 186 at 195, 465 A.2d at 977. Moreover, the outcome of a game does not need to be wholly determined by skill in order for the machine to fall out of the *per se* gambling device category. Id. Rather, courts must determine whether chance or skill predominates in any given machine.

---

[2] In its post-hearing submission, the Commonwealth argues that the POM Machines are illegal slot machines regardless of whether they are skill games or games of chance. However, this claim was not included in the Commonwealth's Answer to the Petition for Return of Property, nor was it included in the Commonwealth's Counterclaim for forfeiture of property. As such, the sole issue for this Court's consideration is whether the POM Machines are gambling devices.

4

In the instant matter, there is no dispute as to the actual gameplay of the POM Machines. As set forth in Petitioners' Proposed Findings of Fact in Paragraphs 14 through 26, each of the POM Machines has a single game with multiple game themes available for selection, although the gameplay is the same regardless of theme. Gameplay on each of the POM Machines commences after the player has inserted cash into the machine. The cash is converted into points with $1.00 being equal to 100 points. The player can adjust how many credits to commit to a given play, ranging from 8 credits, which is equal to $0.08 up to 400 credits, which is equal to $4.00. However, before initiating gameplay, the POM Machines allow a player to see the upcoming puzzle by pressing the "Next Puzzle" button, which allows the player the opportunity to see if the upcoming puzzle is a winning puzzle before committing any funds.

Once gameplay has commenced, the player is presented with nine symbols arranged in rows of three. The object is to match three like symbols in a row on as many pay lines as possible, arranged vertically, horizontally, and/or diagonally, similar to tic-tac-toe. Specifically, if possible, a player must turn one of the nine symbols wild by pressing it within thirty (30) seconds in order to complete three matching symbols in a row. Once the puzzle appears, one of three things can happen: 1) the puzzle can be correctly solved, resulting in an award equal to at least 105% of the points that were committed to play, known as a "win;" 2) the puzzle can be correctly solved, resulting in an award less than 105% of the points that were committed to play, known as a "hit;" or 3) the puzzle is incapable of being solved, known as a "loss."

If a player gets a hit or a loss, the player is always offered the opportunity to continue gameplay through the "Follow Me" feature of the game. The Follow Me feature does not require any additional points from the player but gives the player a chance to win back the money that they lost during the puzzle portion of the game plus an additional 5%. The Follow Me

5

feature requires the player to repeat a pattern of multiple, multi-colored circles in the same order in which the circles are displayed, similar to the electronic game "Simon." If the player successfully completes the pattern, the player is awarded with a total of 105% of the points committed to play depending on whether the player received a hit or a loss in the puzzle portion. In other words, if a player bets $4.00 and only wins $2.00 in the puzzle portion, that player can play the Follow Me game and, if completed successfully, get $2.20 in addition to the $2.00 that they won on the puzzle portion for a total of $4.20.

Once gameplay is complete, a player has the option of redeeming any remaining credits by pressing the Redeem button. Pressing this button will cause the POM Machine to dispense a ticket reflecting the dollar amount that is equivalent to the remaining credits. For instance, if a player has 1000 credits, pressing the Redeem button will result in the player getting a ticket for $10.00 which they can then exchange for cash. The POM Machines only award whole dollar amounts. Thus, pressing the Redeem button rounds the player's credits down to the nearest whole dollar and leaves any excess credits on the device. For instance, if a player has 1050 credits, pressing the Redeem button will result in a player getting a ticket for $10.00. The excess 50 credits (worth $0.50) then remain on the machine and may be used by that player or another player on future gameplay.

As stated above, in order for the POM Machines to be gambling devices *per se*, they must have the three elements of gambling, namely: 1) consideration; 2) chance; and 3) reward. We find that the first and third elements are present in the POM Machines. Specifically, you cannot play the POM Machines without depositing money and committing some of that money to a game. Additionally, a player has the opportunity to win more than they bet, thus obtaining a reward. However, the question remains as to whether the POM Machines in the instant matter are

6

predominately games of skill or are predominately games of chance. Based on the evidence that was presented at the Hearing, we find that the POM Machines at issue in this case are predominately games of skill.

All three of the Commonwealth witnesses opined that the three POM Machines were predominately games of chance. However, we do not find these opinions to be persuasive for a number of reasons. Initially, it is this Court's belief that the Commonwealth's investigation shows case bias. The Commonwealth is seeking to make all machines like the POM Machines into illegal gambling devices, and their whole approach and intent is to shut down the games regardless of the actual gameplay. The fact that Officer Wentsler never played the Follow Me feature while undercover is indicative of this. Thus, the Commonwealth as a whole is biased against the games, and their approach lacks case credibility.

Additionally, Officer Wentsler also showed case bias. He testified that he has conducted hundreds of investigations into these types of devices, and it is his opinion that every single machine that he investigated was a game of chance. This is not credible and shows that Officer Wentsler is biased towards finding that these machines are illegal gambling devices. It also shows that he was not objective in his investigation of the subject POM Machines. As such, we did not find his opinion persuasive.

We did find the opinion of Petitioners' expert, Olaf Vancura, to be persuasive. Dr. Olaf has worked as a consultant, author, and inventor in the gaming industry since 1995. He testified that a skillful player that plays the POM Machines can win, which is defined as making a net profit, on each and every play of the game. Furthermore, he opined that there is no feature or functionality of the game that could prevent a skillful and patient player from achieving that result in every single play. This opinion was rendered with 100% mathematical certainty.

7

Most importantly to our decision, all of the witnesses who testified, including the Commonwealth's expert witness, agreed that a patient and skillful player could win at least 105% of the amount played on each and every play by utilizing the Follow Me feature. The puzzle portion of the game is predominately reliant on chance. Although a player has the opportunity to interact with the game to place a wild symbol, there is nothing that a player can do to ensure that the reels show a puzzle that can be correctly solved. However, it cannot be disputed that the Follow Me feature can only be completed by a skillful player, and it does not depend at all on chance. Additionally, the Follow Me feature shows up every time a player wins less than 105% of the amount played. This eliminates the element of chance that is present in the puzzle portion by giving a player the opportunity to win back the money that they lost by utilizing skill.

The Commonwealth argues that this Court should not look at the machines as a whole but should instead consider how players actually utilize the machines. The Commonwealth directs this Court's attention to the case of Commonwealth v. Lund, 15 A.2d 839 (Pa. Super. 1940) as supporting this argument.

In Lund, a theater operator held a "bank night" at his two theaters wherein the theater operator would maintain a register with a list of the names of those persons who would like to win a cash prize with a corresponding number next to their names. Id. at 841. It did not cost anything to have your name placed on this register. Id. The theater then held a drawing where a number was picked out of a hopper. Id. If the person whose number was chosen was present at the theater at the time of the drawing, that person would win a cash prize. Id. If that person was not present at either theater, then no winner was chosen, and the cash prize would roll over into the next week. Id. People could also purchase proxy cards in the afternoon of the day of the drawing and could win the cash by proxy even if they were not present at the theater when their

8

number was chosen. Id. at 842. The theater owner and managers occasionally gave out free proxy cards to people, but they did not advertise this feature. Id.

The question that the Superior Court had to answer was whether the element of consideration was present for these so-called bank nights.[3] Id. at 843. In reviewing this question, the Court stated:

> The primary question in these "bank night" cases is not whether any individual attending a theatre on "bank night," paying for admission, or admitted free, present in person or by proxy, is acting in concert with the owner in operating a lottery, but rather whether the owner is maintaining and operating a lottery. This is to be determined by the character and practical operation of the scheme as a whole, and not by rare instances of departure from the general scheme and practice. The general character of the system is not to be determined by splitting it up into individual contracts between the theater owner and his patrons. This theory applied in the cases hereinbefore considered is a misleading one, since it diverts attention from the general public effect of the practice which is the evil the law seeks to prevent. It is an impractical one in that it would render extremely difficult, if not impossible, the control of the practice, though manifestly a public nuisance in its operation and effect, by permitting a few exceptional instances of free admissions and free chances to afford immunity to the whole.

Id. at 845. The Court thus determined that the element of consideration was present, and that the theater owner was operating an illegal lottery. Id. at 850.

We find that Lund is inapposite to the instant matter. In Lund, the owner of the theater was the one who was attempting to legitimize his "bank night" by giving away free tickets and attempting to remove the necessary element of consideration. However, in the instant matter, neither Petitioner has any control over how a player utilizes a subject machine. To hold that a machine is either an illegal gambling machine when a player chooses not to engage with the Follow Me feature or is a skill game when a player plays the Follow Me feature is untenable. For instance, if a player plays the Follow Me feature once, does that make the entire machine a skill game for

---

[3] The elements of chance and reward were conceded by the parties. Id.

that player? Or does it require the player to play Follow Me on every occasion? If the player starts playing Follow Me and then stops playing it, does it go from a game of skill to a game of chance while that same player is playing? The questions that would need to be asked to determine how the game is played by various players are endless. Furthermore, Petitioners do not have any control over how a given player plays the game. Rather, the chance is with the player rather than with the machine. For this reason, we specifically find that the question of whether these machines are games of skill or games of chance depends solely on the machines themselves and not on how a player plays them.

Even if we were to find Lund persuasive, the Commonwealth did not provide sufficient evidence to support a finding that the majority of players do not play the Follow Me feature. Officer Schoppe testified that there are approximately 10,000 of these types of machines in Pennsylvania. He observed approximately 100 people playing the subject POM Machines. Although we believe that Officer Schoppe did not observe any of those players playing the Follow Me Feature, we find that this is too small a sample size to make any determination as to how the average player plays these machines. As such, we find that the POM Machines are not gambling devices *per se*, and Petitioners are entitled to have the POM Machines returned to them. Additionally, since the Cash and Receipts are derivative of the legal POM Machines, they should also be returned to Petitioners.

For these reasons, we hereby enter the following Order:

Copies Distributed

Date 3-23-23

Initials

ORIGINAL

| | |
|---|---|
| IN RE:  THREE PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS OF |
| SKILL AMUSEMENT DEVICES, ONE | : DAUPHIN COUNTY, PENNSYLVANIA |
| GREEN BANK BAG CONTAINING | : |
| $525.00 IN U.S. CURRENCY, AND | : NO.  2022-CV-06333-MD |
| SEVEN RECEIPTS | |

## ORDER

**AND NOW**, this 23ʳᵈ day of ___March___, 2023, upon consideration of the

Petition for Return of Property that was filed by Petitioners Capital Vending Company, Inc. and

Champions Sports Bar, LLC, and any responses thereto, and having held a Hearing on September

30, 2022, November 22, 2022, and December 2, 2022, it is hereby ORDERED as follows:

 For the reasons set forth in the attached Memorandum Opinion, it is hereby

ORDERED and DECREED that the Petition for Return of Property is GRANTED.  It is further

ORDERED that, within five (5) days of the date of this Order, the Pennsylvania State Police,

Bureau of Liquor Control Enforcement shall return to Champions Sports Bar, LLC the following:

1) three Pennsylvania Skill Amusement Devices, 2) one green bag containing $525.00 in U.S.

Currency, and 3) seven receipts in the condition in which they were seized.

BY THE COURT:

Andrew H. Dowling, Judge

Distribution:
The Honorable Andrew H. Dowling
Christopher D. Carusone, Esquire, COHEN SEGLIAS PALLAS GREENHALL & FURMAN,
 P.C., 525 William Penn Place, Suite 3005, Pittsburgh, PA  15217
Matthew H. Haverstick, Esquire & Edward T. Butkovitz, Esquire, KLEINBARD, LLC, Three
 LoganSquare, 5ᵗʰ Floor, 1717 Arch Street, Philadelphia, PA  19103
Andrew J. Jarbola, IV, Esquire, OFFICE OF ATTORNEY GENERAL, 6400 Flank Drive, Suite
 1300, Harrisburg, PA  17112