UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., et al | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No.  2:22-cv-04434-MMB |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | April 12, 2023 |
| POM OF PENNSYLVANIA, LLC, et al | : | Time 11:04 a.m. to 12:06 p.m. |
| | : | |
| Defendant(s) | : | |

. . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION TO DISMISS HEARING
BEFORE THE HONORABLE MICHAEL M. BAYLSON
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):        Gary M. Samms, Esq.
                             Obermayer, Rebbmann, Maxwell &
                             Hippell, LLP
                             Centre Square West, 34th Floor
                             1500 Market Street
                             Philadelphia, PA 19102

For Defendant(s):            Marc F. Lovecchio, Esq.
                             McCormick Law Firm
                             835 West Fourth Street
                             Williamsport, PA 17701

                             Joshua Voss, Esq.
                             Kleinbard, LLC
                             Three Logan Square
                             1717 Arch St., 5th Floor
                             Philadelphia, PA 19103

Court Recorder:              Lori DiSanti
                             Clerk's Office
                             U.S. District Court

```
Transcription Service:        Precise Transcripts
                              45 N. Broad Street
                              Ridgewood, NJ 07450
```

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Proceedings started at 11:04 a.m.)

JUDGE MICHAEL M. BAYLSON:  Okay.  Good morning.

COUNSELS:  Good morning, Your Honor.

THE COURT:  Please be seated.  Okay.  We're here for -- this morning for oral argument in the case captioned Greenwood Gaming & Entertainment versus POM of Pennsylvania, civil action 22-4434.  Present for the plaintiff is Gary Samms and Richard Limburg.  Good morning.

COUNSEL GARY M. SAMMS:  Good morning, Your Honor.

THE COURT:  And for Pennsylvania -- POM of Pennsylvania, Joshua Voss, V-O-S-S and Shohin Vance.

COUNSEL JOSHUA VOSS:  Good morning, Your Honor.

THE COURT:  Good morning.  And for Miele -- did I pronounce that correctly, Miele?

COUNSEL MARC LOVECCHIO:  Miele Manufacturing, Your Honor.

THE COURT:  Miele.  Marc Lovecchio.

MR. LOVECCHIO:  Lovecchio.

THE COURT:  Okay.  Good morning.

MR. LOVECCHIO:  Good morning, Your Honor.

THE COURT:  Alright.  This is a -- there's a pending Motion to Dismiss under Rule 12 in this case.  I don't often have oral argument in Rule 12 motions but this is a, somewhat of a unique case in many ways procedurally

and substancely and I sent to counsel a list of questions and we're going to proceed initially with my asking the questions, giving you a chance to answer briefly.  And then, then I'll be happy to hear any supplemental argument that you want to make.  Alright.  So, I, I've, I've read the complaint.  I've read the briefs and I have read the Commonwealth Court decision that is the subject matter, has the subject matter of this dispute to some extent.  So, question number one, are there any pending cases regarding the legality of defendant's skill games pending before the Pennsylvania Supreme Court, Superior Court or Commonwealth Court?  If yes, please provide details.  Okay, Mr. Samms.

MR. SAMMS:  Do you want me to respond first, Judge?

THE COURT:  Yeah, yes.

MR. SAMMS:  It's their motion but I'm happy to proceed.

THE COURT:  Yes.

MR. SAMMS:  Thank you kindly, Your Honor.  Yes, Your Honor, there were two cases of original jurisdiction in the Commonwealth Court that POM had brought.  One was against the state police.  The other was against the City of Philadelphia and the Department of Revenue.  The one regard -- two simultaneous opinions were essentially issued at the same time.  Then the one case was dismissed just on February 8th.

So, the only case currently pending is the one that was with respect to the state police.  In that case --

THE COURT:  Well, wait, wait, wait, wait.  That's, that's a reported Commonwealth Court decision?

MR. SAMMS:  The -- no, no.  So, they dismissed the one, one cause of action on February 8th [unintelligible].

THE COURT:  Who dismissed it?

MR. SAMMS:  It was, it was withdrawn by the parties.  Is that correct, Mr. Voss?

MR. VOSS:  It -- the procedural posture there isn't, is not quite right.  I can tell, and Your Honor, if I might, it is a published decision.  The Commonwealth Court opinion you've read comes from a docket that I know as 418-MD-2018.  That, for various procedural reasons, is now on appeal to the Pennsylvania Supreme Court, including an appeal by the Parx Casino.

THE COURT:  Well, wait, wait one second.  Be sure I can hear everybody properly.

MR. SAMMS:  And, Your Honor, I apologize if I misspoke.  They discontinued it.

THE COURT:  Well, let, let, let me hear Mr. Voss first.  Okay?

MR. SAMMS:  Sure.

THE COURT:  Alright.

MR. VOSS:  Thank you.

THE COURT:  So, first of all, is there anything pending now in the Pennsylvania Supreme Court?  We've seen some docket entries that indicate there is.  It is there, is that correct?

MR. VOSS:  There is, indeed, Your Honor.  I'm happy to supply the docket numbers but I believe the most important of which is 12-EAP-2023 which is --

THE COURT:  Wait, 12E --

MR. VOSS:  Edward, Adam, Peter, EAP.

THE COURT:  Yeah.

MR. VOSS:  2023.  That is the appeal by, among others, the Parx Casino to the Pennsylvania Supreme Court. And the Commonwealth Court decision that, that you've read, Your Honor.  In that case -- and I'm holding their jurisdictional statement, which is a public filing, they asked the Pennsylvania Supreme Court to decide that the [unintelligible] game is a slot machine under the crimes code and then there's a separate latent question which is --

THE COURT:  Alright.  So you have a copy of that there?

MR. VOSS:  I, I do, indeed.  I'm happy to supply that to you.

THE COURT:  Can you lend it to me or do you have an extra for me?

MR. VOSS:  Yes.

THE COURT:  Alright.  Good.  We've seen that there's evidence of -- we've seen docket entries but I haven't been able to -- my law clerk was not able to pull this up from anything online.

MR. VOSS:  Unfortunately, Your Honor, the filings in the Pennsylvania Supreme Court, while publicly available, are not available online.  The handwriting you see on here is from the court.  This is a court document.  I downloaded this from the official docket.  So, as you see it is as it's filed in the Pennsylvania Supreme Court.  This is -- again, by multiple casinos but chiefly Parx Casino.  If you --

THE COURT:  Okay.

MR. VOSS:  -- jump to page five, you see the questions presented for review, which are, indeed, the core state law questions that are at issue in this case.

THE COURT:  Alright.  Now -- alright.  So, when was this juris-- this was filed March 20th, 2023, this jurisdictional statement?

MR. VOSS:  That is when it -- so, under Pennsylvania practice, you have to first file your jurisdictional statement to the Supreme Court and Commonwealth Court so that the filing that you see there is when it was filed in the Commonwealth Court.  I believe it was docketed that same day in the Pennsylvania Supreme Court.

THE COURT:  Alright.  So, this is basically a

request that the Pennsylvania Supreme Court allow this appeal, is that right?

MR. VOSS:  That's correct.  And in full disclosure to the court, Your Honor, this, this statement is, is attempting to convince the Supreme Court that it has jurisdiction to hear those questions.  We have challenged jurisdiction in that case.  We, being POM of Pennsylvania, LLC for [unintelligible] court again while this case is pending, we have asked the Supreme Court to send it back to the Commonwealth Court.

THE COURT:  Okay.  Do you have a copy of that?

MR. VOSS:  I, I do not have a copy of, of our jurisdictional answer with us, Your Honor.  It is, is a technical matter, we, we filed it a couple of days out of time.  So, we asked the Supreme Court to accept it notwithstanding the late filing, a pro tem filing.  So, our -- actually, I apologize, there's three related dockets and this one, our answer was timely filed.  I do not have a copy with me.  I'd be happy to get it supplied for Your Honor.

THE COURT:  Alright.  Now here, I've never seen this before but I'm looking at it.  Here -- listen, Mr. Samms, it looks like your client in this matter is represented by a different law firm, the Lamb McErlane Firm.  Is that right?

MR. SAMMS:  That's, that's correct.  Mr. Joel Frank from Lamb McErlane represents them.  But that case is

slightly different if I can address it, Your Honor.  We are not a party in that case.  We attempted to intervene and have not been accepted as an intervener.  There was a hearing in June or July regarding that very issue.

THE COURT:  Okay.

MR. SAMMS:  So, while there has been an appeal taken by a group of casinos, they're not even parties to the case at this point.  So --

THE COURT:  Yes.

MR. SAMMS:  That's why we believe that we're requiring jurisdiction here.  Or one of the reasons.

THE COURT:  Alright.  Well, you know, is there, is there anything else pending in the Supreme Court of Pennsylvania?

MR. VOSS:  In the Supreme Court of Pennsylvania, no. In Pennsylvania's Appellate Courts and other courts do have matters pending.

THE COURT:  And they have one going -- well, the Commonwealth Court we all know has both the original jurisdiction and appellate jurisdiction.  So, can you tell me briefly what's happening in the Commonwealth Court?

MR. VOSS:  So, as it concerns the Commonwealth Court, there were two companion cases as, as Mr. Samms said against different Commonwealth parties.  And if you'll bear with me, I'll, I'll refer to them by the docket numbers

because maybe that's a little easier.

THE COURT:  Alright.

MR. VOSS:  So, the, the jurisdictional statement you have in front of you relates to a case that's docketed at 418-ND-2018.  But there is a companion case docketed as 503-ND-2018 and that's POM versus the Bureau of Liquor Control Enforcement of the Pennsylvania State Police.  503 remains active pending ongoing, in discovery which is soon to end in [unintelligible].

THE COURT:  So, those are original jurisdiction Commonwealth Court cases?

MR. VOSS:  That is correct, Your Honor.

THE COURT:  Okay.

MR. VOSS:  But there is, based on a filing on Monday by the Commonwealth of Pennsylvania, we are led to believe the Judge Dowling [ph] opinion that, that we supplied to the Court out of Common Pleas of Dauphin County, is imminently about to be filed by the Commonwealth of Pennsylvania to the Commonwealth Court.

THE COURT:  So, that would be an appellate case to the Commonwealth Court?

MR. VOSS:  Correct, Your Honor.

THE COURT:  So, the Commonwealth Court has both an original jurisdiction case and maybe an appellate case?

MR. VOSS:  That is absolutely correct.  It's, it's

making -- in the sense that they filed the pleading in court on Monday, saying we are soon going to file. They have not done it yet.

THE COURT: Alright. Alright. Anything in the Superior Court?

MR. VOSS: There is, indeed, Your Honor. One of the other cases we rely on is a decision out of Monroe County Common Pleas. The Commonwealth in that case has appealed that matter to the Pennsylvania Superior Court. That matter is docketed at 840EDA, Edward, David, Adam, 2023.

THE COURT: 202? Alright. Do you have a citation of the trial court opinion?

MR. VOSS: We do, indeed, Your Honor. It's cited in our letter of surreply, document 28 on the docket. Actually, that mentions it but doesn't cite it so let's try it again. It's cited in our reply brief, document 25 on page two of our, of that reply brief.

THE COURT: Okay. Alright. Okay. So, that's one appeal to the Superior Court. Alright. Now, do any other defense counsel want to add anything, to correct anything?

MR. LOVECCHIO: No, Your Honor.

THE COURT: Okay. Alright. Mr. Samms, do you agree with that, what's going on in the Appellate Courts right now?

MR. SAMMS: Generally, Your Honor, yes, I believe that's correct. It is important to note that none of those

Common Pleas decisions that are being appealed currently deal with the issue that's before this Court.  First of all, obviously, they're not RICO claims, obviously, but secondly, they don't deal with the interpretation of the two statutes together, obviously, the gaming act and 50513.  And so, while those issues had to deal with motions to suppress the seizure actions, Your Honor, they had to do with -- one is the allegations deal with misconduct by the prosecuting attorneys.

THE COURT:  Wait, now --

MR. SAMMS:  They're not anything to do with this nor are we parties in those cases.  So --

THE COURT:  I know.  Next question.

MR. SAMMS:  [Unintelligible].

THE COURT:  Next, next question.  So, I looked at the complaint you filed in this case, which was removed.  It was filed in Philadelphia Common Pleas Court.  It was removed here.  Correct?

MR. SAMMS:  Correct, Your Honor.

THE COURT:  Now, that did have a Lanham Act claim but it did not have a RICO claim.

MR. SAMMS:  That is correct.

THE COURT:  Now --

MR. SAMMS:  RICO was part of the amended complaint.

THE COURT:  So, the amended complaint continued the

Lanham Act claim and added RICO.

MR. SAMMS:  That is correct.

THE COURT:  Did it add anything else?

MR. SAMMS:  It did not.

THE COURT: Okay.  Alright.  Thank you.  Now, the, the next question that I posed to counsel -- just one second here.  One second.  Okay.  Now, Mr. Voss, Mr. Samms contends that the issues presented in this case are not present in any of those cases.  What is your position?

MR. VOSS:  We, we wholly disagree with that.  The, the appeal to the Superior Court and the forthcoming appeal in the Commonwealth Court squarely deal with the question of legality under 5513 of the Crimes Code.  I think they're, frankly, on all fours.  Certainly, the, the matter that's pending in the Pennsylvania Supreme Court deals with, I call it Title 4, the Gaming Act.  It's squarely an issue so I'm not sure how those cases don't exactly address this case.  I think some of our confusion is we learned in the response brief that they don't believe that the Gaming Act is at issue withstanding mentioning it 28 times in the complaint.  So, we're sort of at a loss to put our finger exactly on the issue.  It seems to me the legality of our claims, which three courts of common pleas ruled in our favor on, and to the extent the sole question is that the 513, which is the Pennsylvania Crimes Code, that's absolutely at issue in the

Superior Court and the Commonwealth Court.  And, and soon to be in the Commonwealth Court when the original jurisdiction action completes.

THE COURT:  Alright.

MR. SAMMS:  May I, Your Honor?

THE COURT:  Well, let me go to -- yeah, okay.  Yeah. We, we -- Mr. -- I know your, your position is that your issues here are different because you're raising RICO and Lanham Act claims.

MR. SAMMS:  Correct.  But just to -- Counsel makes reference, for instance, to there Court of Common Pleas cases that have decided this issue.  Not true or accurate at all, Your Honor.  For instance, one of --

THE COURT:  Well, well, you're, you're right, they haven't decided a Lanham Act issue or RICO issue but they have --

MR. SAMMS:  That's correct but --

THE COURT:  -- made some decision --

MR. SAMMS:  -- but they ruled -- they, they have not focused, Your Honor, on 5513 or the Crimes Code.  What they have focused on is skill versus chance and that's what those decisions have been made on, whether they, they're -- things could be -- the machines could be seized because they were games of chance rather than skill under the Gaming Act. That's what all of those decisions are.  Not one of those

Court of Common Pleas decisions address 5513.  And in fact, it didn't even become an issue until the, the statues were amended in 2017 that changed the definition of slots.  So, the 2014 Beaver [ph] County decision, for instance, Your Honor, is not relevant nor obviously binding on this Court whatsoever.  So, I just wanted to -- those cases were decided on chance versus skill, nowhere near the Crimes Code interpretation that we're presenting to the Court.

MR. LOVECCHIO:  Your Honor, may I be heard on that, please?

THE COURT:  Yes, sir.

MR. LOVECCHIO:  Your Honor, I was actively involved in the Monroe County case and --

THE COURT:  Which case?

MR. LOVECCHIO:  The Monroe County case --

THE COURT:  Right.  But just give me the name of the case.

MR. LOVECCHIO:  It is -- what's the number?  It's in re Four Pennsylvania Skill Amusement devices 6673 civil 2021.

THE COURT:  Repeat that again.

MR. LOVECCHIO:  Yes.  6673 civil 2021.  The issue in that --

THE COURT:  In Monroe County.

MR. LOVECCHIO:  Sorry, Your Honor.

THE COURT:  Alright.  Now, is there a decision of

the court?

MR. LOVECCHIO:  Yes.

THE COURT:  Alright.  What's the -- is it reported?

MR. LOVECCHIO:  It's -- yes.  It's the decision that was appealed that Mr. Voss explained to you to the Superior Court.

THE COURT:  Okay.

MR. LOVECCHIO:  And that was a return of property matter and the issue in that case was whether the property that was seized was contraband per se.  That is the exact issue in connection with the Crimes Code.  It's whether the devices constitute illegal gambling devices.  The fact that you can frame it somewhat differently doesn't mean it's different.  You can call a horse a cow, it doesn't make it a cow.  In that particular case, it was clear that Judge Sibum ruled that it was not contraband.

THE COURT:  Alright.  Spell the name of that judge.

MR. LOVECCHIO:  Sibum, S-I-B-U-M, Your Honor.

THE COURT:  S-I-D-U-M.

MR. LOVECCHIO:  Right.  And she indicated that the devices were not contraband per se.  The, the plaintiff in this case says this, "this case concerns a long running and ongoing scheme to evade the Pennsylvania Gaming Act, violate the Crimes Code and undermine the regulated gaming industry through the manufacture, sale and distribution of illegal

slot machines." They're not illegal slot machines if they're not contraband per se. So, as I said, you can call a horse a cow, it doesn't make it a cow. In this particular case, the issues are exact.

THE COURT: Okay. Mr. Samms.

MR. SAMMS: Yes, Your Honor, that's -- well, with respect to my colleague, that's not exactly the point whatsoever. The machine has to be used for gambling purposes as this Court's well aware. So, just the machine itself [unintelligible] this 5413 argument was never raised period in that. There was a mention of it post decision but that's it. There was nothing during the actual discussion and litigation.

THE COURT: Okay. Alright. Next -- so, one of the questions that I have in this case, I have to be perfectly candid with you, is procedurally how to deal with this. Okay? So, one option I would have would be to put the case in what we call suspense status. Suspense means that it's basically stayed without any decision on the merits. And I, I do that, for example, when there's a party that files for bankruptcy, there's an auto-- as you probably all know, there's an automatic stay under Federal law. So, most judges, including myself, would put such a case in suspense because we're not allowed to do anything about it. So -- and -- but we revisit the status sometimes every 90 days or

sometimes once a year, it just depends. So, that's one option. Another option would be to make a ruling on the merits of the claim, that is to either grant the Motion to Dismiss and say that there's, there's no possible claim here for various reasons or to deny the Motion to Dismiss and say that plaintiff has stated federal claims RICO and Lanham Act, they were not decided in the Pennsylvania courts. So, this case should proceed as any other case. So, I have those, those two options. A third option, which I just want to tell you is in my mind, is, is sort of an in-between option. And that would be to deny the motion without prejudice. And to allow, to require an answer to be filed by the defendants, any counterclaims if they have any counterclaims they want to file and then to have very limited discovery. By that, I mean basically exchanging documents. And not -- but not having any depositions. Now, the advantage of that, in my mind, and I've done this in other complex cases, and this is potentially a complex case I must say. And now, of course, if I were to just grant the Motion to Dismiss with prejudice, it's no longer complex. It's, it's gone and it goes to the Third Circuit. I am frankly unlikely to do that because I, I think that there are important issues here and there is at least some question in my mind whether the -- so far, the decisions of the Pennsylvania courts would be res judicata of the plaintiff's claims. One advantage of what I called the

modify position is that the -- each side knows where the other stands on, on -- you now know what the plaintiff's claims are.  If you had to file an answer, then the plaintiffs would know what your affirmative defenses were.  They'd know if there are any counterclaims or not.  And the reason to exchange documents is to not get into issues three or four years from now if I were to stay the case or, or grant the Motion to Dismiss and the Third Circuit reversed me and the case came back here and all the sudden some of these documents have disappeared and so forth.  Now, we all know that the old days where discovery was limited to paper documents are over and that most exchanges of documents these days are done with electronic materials but they're still may be some paper documents that are not electronically preserved or filed.  And that gives the parties to know from each other's documents that they've received and sometimes there are motions to compel that are filed as part of this process and there are disputes and there may become disputes over assertions of privilege.  But it, it gets the document -- the Rule 34S that most cases basically ongoing and, and, and it, it may allow each side to reassess the strength or weaknesses of their cases if you have this production of documents.  And - but that's -- so, my question is -- you know, I put the question in here, should I put the, this case in suspense, question number four.  And question number five is related.

So, I'd like to know what your response is to that.  Mr. Samms, you can go first.

MR. SAMMS:  Yes, thank you, Your Honor.  We believe that the case should proceed in the normal course.  We appreciate the Court's consideration of the issues; however, as this Court has already pointed out, this involves RICO Act, it involves false advertising, unfair competition, the Lanham, the Lanham Act issue.

THE COURT:  But those are legal claims.

MR. SAMMS:  But those --

THE COURT:  The basis, the factual basis of the case is the business that each of your clients do.  And there are now decisions of the Pennsylvania courts that at least make some rulings on this topic.

MR. SAMMS:  There are no rulings, Your Honor, that decide the 5513 issue.  Not one court has ruled that way.  And that's why it's important we proceed.  The discovery we envision goes largely to our damages, Your Honor, which are -- we are dealing with every day.  That's the problem with putting it in a modified position, is that we accrue accumulating damages every day, significant damages.  In addition to dealing with in this other court, although there may be some small overlapping discovery issues, most of them are related to the mail and wire fraud.  Okay?  And the damages issues, those are damages or discovery that's not

going to be happening in any other court.  We are not a party in that case.  We don't get access --

THE COURT:  No, but --

MR. SAMMS:  -- to that discovery.

THE COURT:  -- none of us, none of us --

MR. SAMMS:  It might be overlapping.

THE COURT:  None of us know what the Pennsylvania Supreme Court is going to do or when it's going to do it. And, and we all know that the Pennsylvania Supreme Court does not operate under any time limits on how long it takes for them to make a decision.  And the history of that court shows that sometimes years can pass before a decision is made.

MR. SAMMS:  We don't disagree with the Court, Your Honor, on that.

THE COURT:  So -- but the fact that you're continuing to be damaged is, in my view, is not a strong argument to deny the Motion to Dismiss because there's no showing that any of the defendants are going out of business or are impecunious.  And your -- if your damages accrue sobeit.  But even if I were to deny the Motion to Dismiss, I envision discovery in this case is going to take, you know, many months and maybe at least a year and then we have a trial and there'll be an appeal.  If they were found liable, they'd post a bond.  So, your client is years away from recovery of any damages.  Frank -- I mean, I'm just being

22

candid.

MR. SAMMS:  Oh, and I appreciate, I appreciate the Court's insight on that and I believe you're probably exactly right, Your Honor.  However, because it's going to take years, if we delay that, every day we delay it -- sits -- if you put it into modified position for seven, eight months, a year, that just makes it longer and longer before we get the damages we would be entitled to.  And that is not fair to my client.

THE COURT:  Well, Mr. -- that's, you know, if you were right about that, then every trial should take place like five days after the complaint was filed instead of -- and if, you know, in this Court we used to have a backlog of five years.  And thankfully that has been eliminated and Court of Common Pleas has cleared up its backlog.  So, trials happen much more quickly now.

MR. SAMMS:  And I apologize, beg the Court's indulgence for one minute.  Again, the issues that are being dealt with in those other cases are declaratory judgments, acts is focusing on skill versus chance.  This is a completely different issue.  So, this discovery is different. It's going to be given differently to the different aspects, not just the RICO and the Lanham --

THE COURT:  Well, you know --

MR. SAMMS:  -- the structure of the organization.

THE COURT:  But you're --

MR. SAMMS:  None of that has been discussed in these other cases, Your Honor.

THE COURT:  You, you say your client's prejudiced by damages, you know, but it's going to be very expensive for the defendants to defend these claims.  And, you know, RICO is a very pervasive statute in terms of the issues that raised and discovery in it can be very broad and they claim they have no liability and the Pennsylvania courts have made some indication.  Although on different issues, you may be right about that but so far they're in the clear.  And Mr. Voss, what's your view on this option?

MR. VOSS:  Thank you, Your Honor.

THE COURT:  Procedurally?  Yeah.

MR. VOSS:  Well, we'll start with this.  We're, we're counsel in, in the Common Pleas case in Monroe and Dauphin.

THE COURT:  Yes.

MR. VOSS:  Judge [unintelligible] must've been confused that 5513 wasn't at issue since he cited it in his opinion.  We litigated it for three days, complete with expert witnesses.  So, I'm, I'm --

THE COURT:  Which, which decision was that you are referring to?

MR. VOSS:  That this -- the Judge [unintelligible]

opinion of Common Pleas Dauphin County.  It's attached to our surreply, document 28.

THE COURT:  Okay.

MR. VOSS:  I, I'm struggling to understand how we didn't litigate 5513 either.  I was there for two of the days.  So, I, I guess I, I don't know, I don't know what that representation is but --

THE COURT:  Well, what about that, Mr. Samms?  Isn't it correct that that decision cites 5513?

MR. SAMMS:  And I apologize if I have been unclear, Your Honor.  It cites 5513 for respective skill versus chance.  What we're saying in our argument is that you have to read, Your Honor, according to the Pennsylvania statutes, 1932 statutes in pari materia, "statutes or parts of statutes that are pari materia when they relate to the same persons or things or to the same class of persons of persons or things."  Okay?  So, here we're talking about slot machines.  Okay?  There is no definition of a slot machine in 5513 so you have to use the definition, read the statutes as one and it clearly says, Your Honor, in statute 1103 of 5513 that -- I'm sorry, of the Gaming Act.  Thank you, Mr. Limburg.  It's available to play or operate, the play or operation of which, whether by reason of skill or application of the element of chance or both.  So, what we're saying is our issue is, now that you read it with this definition, 5513 applies in a

different way than what they've been arguing skill versus chance.

THE COURT:  Well, I read somewhere in your briefs that, one or both of you may agree upon this, that the decision of whether one of these games is a question of skill or chance is a mixed question of fact and law.

MR. VOSS:  That's correct, Your Honor.  The Commonwealth Court [unintelligible] said that.

THE COURT:  Do you agree with that, Mr. Samms?

MR. SAMMS:  There's actually, Your Honor, a footnote in one of the decisions that says, "this issue has specifically not been addressed by the Commonwealth Court."

MR. VOSS:  Because it's question of fact is what the footnote says.

THE COURT:  Well, it's at least in part a question of fact.  That, that implies that if it's really goes, has to go to the merits, it's going to require a trial.  And that means it's going to require extensive discovery before we get to trial.  And the defendants are entitled to file Rule 56 Motion for Summary Judgment when the discovery is over, which, as you all know, happens probably about 90 percent of our cases.  And they take some time for district judges like myself to decide fairly because they, the decision can be appealable.  So, let me go through the other questions and we can come back to this.  Alright.  Question six, under Sandoz,

S-A-N-D-O-Z, does the decision on the pending Motion to Dismiss depend on whether the relevant legal principles are statute administrative regulation or court precedent. Alright.  Mr. Voss.

MR. VOSS:  Yes, Your Honor.  We had, we had occasion to look at that.  And, and while Sandoz certainly speaks of regulations, I would draw the Court's attention to page 231 of the decision where, and I'm going to start in the middle of the sentence because that's where it will make sense, but "the F, D and C Act and the FD, FDC Act do not create directly -- The Lanham Act does not create indirectly comma at least not in cases requiring original interpretation of these acts or their accompanying regulations."  I put emphasis on the or.  I think what the court was saying in Sandoz is we look at the regulation of drugs and we see [unintelligible] discretion issues raised.  We see a congressional commitment to the FDA to decide what's active or not, what's, what's safe, what's not.  We see a lot of discretion given the FDA and we don't want to step in here and step on this congressional commitment to the FDA by essentially making their decisions for them.  And we think that's the principle we're suggesting applies here.  The Crimes code, brace yourself, is enforced by law enforcement in Pennsylvania.  It's not enforced by private actors or private attorney generals.

THE COURT:  Well, the Crime code is an act of the legislature that's enforced by courts.

MR. VOSS:  That, that's right, Your Honor.  But in the first instance, you, you can't, as a private citizen, say, Court, find this person is, is, is a illegal gambler or not mafioso or whatever it is that we're purporting to do here.  It's the district attorneys.  And that's what happened in Dauphin County.  It's what happened in Monroe County.  It's what happened in Beaver County.  We get the district attorneys who say these things are in crime.  We are taking them from you.  Then we go to court and explain no they're not and we prevail three for three --

THE COURT:  Right.

MR. VOSS:  -- on, on that question.  So, according to Sandoz principle as it's posed in question six and, and question seven, the question you posed to us, we, we interpret the principle of that case as saying when there's a legislature commitment to discretion, we don't want the court stepping on that discretion.  And, and enforcement of the laws in the Commonwealth of Pennsylvania are by law enforcement agencies.  And frankly, Your Honor, we think this introduces the unique problem [unintelligible] because if they're going to pursue this theory that 5513 says whatever, I still don't understand it, whatever it says it says, I think we have some indispensable parties who aren't here.  We

28

need law enforcement agencies.  They have the first take on what, what these criminal statutes are and are not.  You can think about it this way, if, if you rule in our favor and say these devices on trial, Rule 56 Motion to Dismiss, what have you, these devices do not violate 5513, what if the district attorney of Philadelphia County disagrees and wants to pick one up tomorrow and charge with the crime.  Is he bound by that?  Was he prejudiced?  We're going to say well, wait a minute, Judge Baylson just told us we're the real McCoy, we're bonified under Pennsylvania law.  It's going to introduce a host of problems if this Court steps in and starts saying what the laws of the Commonwealth, the criminal laws of the Commonwealth are and are not under this, this guise of false advertising or for retail.  So, putting a button on it, as we interpret Sandoz, we think the Third Circuit is saying hey, don't step in when there's discretion afforded to an entity under statute.  We think that entity here would be the district attorneys or perhaps the Attorney General of the Commonwealth of Pennsylvania, who's not here.

THE COURT:  Alright.  Mr. Samms.

MR. SAMMS:  Thank you, Your Honor.  Your Honor, it is the Court's job to enforce and interpret the law.  This falls directly upon the Court.  Counsel is way overbroad in his position with respect to what the Sandof case, Sandoz case stands for.  In fact, Your Honor, in the POM Wonderful,

LLC versus Coca-Cola case which is cited at 679F third 1170, 1175, 76 specifically, Your Honor, the Ninth Circuit followed Sandoz's reasoning that allowing that plaintiff cannot sue to enforce an FDA regulation because the agency is uniquely positioned to decide such matters.  The Supreme Court reversed that holding and stated that the Lanham Act provides an independent basis on which to sue and the Courts may not deprive a plaintiff of a cause of action that Congress has given to them.  Moreover, the Sandoz case reliable to the special expertise of regulators with regard to labeling, which is no application in this case and parts it brought. We're talking about a Pennsylvania statute that this Court can interpret and that they do on an every-day basis.  And if I can kind of fold this into your next question, next question was number seven, Your Honor, asking if in fact are there cases applying Sandoz where the relevant legal principle is a state statute, not an administrative regulation, we could not find one case that applied the Sandoz reasoning to a statute --

THE COURT:  Alright.

MR. SAMMS:  -- which was not mentioned.  And in fact, I think, Your Honor, you'll find that POM essentially reverses the POM versus, POM Wonderful -- thank you -- the POM Wonderful case reverses it and I think, I think this is clear.

THE COURT: Okay. I'm going to skip number eight for the time being. Number nine, does Miele Manufacturing Amusement Division operate any location that has skilled machines and therefore actually or potentially competes directly with Parx Casinos? Yes, sir.

MR. LOVECCHIO: No, Your Honor. So, so you understand --

THE COURT: What, what's the answer?

MR. LOVECCHIO: No.

THE COURT: Answer no. Okay.

MR. LOVECCHIO: Miele Amusements, as you framed the question, is essentially a tradename. The defendant here is Miele Manufacturing, Inc.

THE COURT: Oh, okay.

MR. LOVECCHIO: Miele Manufacturing, Inc., as alleged in the complaint, which is correct, they make the machines. They put the software in it. They make the machines and what they do is they sell them to operators.

THE COURT: Right.

MR. LOVECCHIO: These -- and there's hundreds of [unintelligible]. These operators then place them in locations. But Miele doesn't do anything other than have a relationship with the operators. Does that answer your question?

THE COURT: Yes.

MR. LOVECCHIO:  Thank you.

THE COURT:  Well, Mr. Samms, do you dispute that?

MR. SAMMS:  We do, Your Honor.  We believe that they do operate them as well and we pled that in the, in the complaint.  In addition to that, Your Honor, that's not just what they do.  They are part of the whole concept of behavior.  Okay?  Of this criminal enterprise from beginning to end and they're involved in all aspect of controlling this.  And that's why they're appropriate here.

THE COURT:  Well, wait, wait, wait.  Let, let's, let's look at the complaint where you make the allegations against Miele?

MR. SAMMS:  If it please the Court, Your Honor --

THE COURT:  This is the original complaint.  Did you change those in the amended complaint?

MR. SAMMS:  I, I believe we did slightly, Your Honor.  And -- beg the Court's indulgence, Your Honor.

THE COURT:  That's alright.  Take your time.

MR. SAMMS:  Your Honor, if I could point the Court to 17.

THE COURT:  What?  Paragraph 17?

MR. SAMMS:  Paragraph 17 and paragraph 52.

THE COURT:  Alright.  The paragraph 17 -- this is the original complaint.  I don't have the amended complaint right in front of me.  Well, 16 alleges that Miele

distributes the Pennsylvania Skill branded slot machines and sublicenses the software and game skills used in the Pennsylvania Skill branded slot machines to operators who enter into operator agreements with POM and Miele and have exclusive territories.  POM licenses the trademarks to operators.  Alright.  Mr. Lovecchio, do you disagree with that?  Is that correct or incorrect?

MR. LOVECCHIO:  Well, Miele Amusements isn't named a defendant.  The defendant is Miele Manufacturing, Inc.

THE COURT:  Right.

MR. LOVECCHIO:  And if you look -- so, whatever they say about the Miele, Miele's Amusement Division doesn't apply.

THE COURT:  Well, if it, if it's -- wait a minute.  Just wait.  If it's a division of the defendant, then, then that's allowed as pleading.  They can, the plaintiff can plead that the activity of a division.

MR. LOVECCHIO:  Well, if you look at paragraph 22, Your Honor, this is in the amended complaint --

THE COURT:  Yeah.

MR. LOVECCHIO:  -- it says Miele is a manufacturing company that specializes in manufacturing electronic goods, etcetera, relevant here, Miele manufactures the physical cabinet that is made to Pace-O-Matic specifications for the illegal slot machines.

33

THE COURT:  Is that correct or not?

MR. LOVECCHIO:  Yes.  It's, it's what they do.

THE COURT:  Okay.

MR. LOVECCHIO:  But as I, as I said, if, if you look at -- let's see -- paragraph 35, after the claims that illegal slot machines are built, Miele sells the machines to operators, and this is paragraph 35, who enter into operator agreements with POM and Miele.  The signatory for these contracts are known as the operator.  The game software is licensed to Miele from Pace-O-Matic and then sublicensed by Miele to operators.

THE COURT:  Are you saying that's incorrect?

MR. LOVECCHIO:  No, that's correct.

THE COURT:  That's all correct?

MR. LOVECCHIO:  But nothing in the complaint says Miele is an operator.

THE COURT:  But you --

MR. LOVECCHIO:  Miele sells the machines to operators.  Miele Manufacturing, Inc., the named defendant, sells them to operators and it's the operators who place them in locations.

THE COURT:  Alright.  Mr. Samms.

MR. SAMMS:  You Honor, it may save us a little bit of time, if I direct the Court to paragraph 52 of the amended complaint, Your Honor.

THE COURT:  52?

MR. SAMMS:  And I'll read it for the Court since you don't have this copy in front of you, if you don't mind?

THE COURT:  Go ahead.

MR. SAMMS:  "Miele Amu--  Miele's Amusement Division operates the illegal slot machines and thus collects a portion of the revenue as an operator."  I -- that's pretty plain and direct, I believe.

THE COURT:  Well, do you realize that's incorrect?

MR. LOVECCHIO:  Well, I guess my concern with it, Your Honor, is they say A in one paragraph and they say B in another paragraph.

THE COURT:  We have inconsistent pleadings all the time.

MR. LOVECCHIO:  Well, I understand.  But what it says is "Miele Amusements operates the illegal slot machines and thus collects a portion of the revenue as an operator."  Not defendant Miele Manufacturing, Inc.

THE COURT:  Well, isn't Miele Amusements a division of the defendant?

MR. LOVECCHIO:  No.  It's a trademark.  Where, where they got it, Your Honor, I think, I think is there's a picture of these machines and it says "Miele Amusements" so they may have gotten it on the website.  That's just the trademark.  The only company at --

THE COURT:  Alright.  Well, is, is it that the, that the complaint is wrong or that it doesn't precisely define the part of the defendant that does the operation?

MR. LOVECCHIO:  It's wrong.  It's wrong because Miele Manufacturing, Inc., as they allege in their complaint, manufactures machines.  Now --

THE COURT:  And doesn't do any operating?

MR. LOVECCHIO:  Well, here's --

THE COURT:  No, wait, wait.  Answer this question.

MR. LOVECCHIO:  I answered that.

THE COURT:  Does any part of the named defendant operate the machines?

MR. LOVECCHIO:  None.

THE COURT:  Alright.

MR. LOVECCHIO:  And they will find --

THE COURT:  Well, did you, did you consider with your client in filing your -- you filed a Rule 12 Motion, right?

MR. LOVECCHIO:  Yes.

THE COURT:  Did you consider adding an affidavit or a document that would establish what you say is incorrect about the amended complaint?

MR. LOVECCHIO:  No, I didn't, Your Honor.  I, I basically --

THE COURT:  Well, do you understand you have that

option?

MR. LOVECCHIO:  Yes.

THE COURT:  Alright.  Well, one thing is just crossing my mind.  I didn't know any of this before, is that, you know, if Miele doesn't belong in this case at all, you know, and you can establish that by amending your Rule 12 Motion, I would, I would probably allow you to do that because it's an expensive -- this is going to be an expensive case to defend if it goes forward and -- whether today or a year from now.  Do you, do you want that option or not?

MR. LOVECCHIO:  Yes.  But let me -- I want to educate plaintiff so we don't have to engage in semantics.

THE COURT:  Yes.

MR. LOVECCHIO:  Just so you understand.  And maybe they want to add the appropriate defendant.  Miele, Miele Manufacturing, Inc. is the manufacturer.

THE COURT:  Yes.

MR. LOVECCHIO:  Miele has two other L&M Music, Inc. Now these are parties in other actions.

THE COURT:  Is this, these are wholly owned subsidiary or a division?

MR. LOVECCHIO:  Yes.  Yes, a wholly owned subsidiary of Miele.

THE COURT:  Yes.

MR. LOVECCHIO:  Does act as an operator.  L&M Music,

Inc. does as, act as an operator.  And I'm willing to share that information with Mr. Samms so he can make it correct. Like I said, there's hundreds of operators, there's divisions of Miele Manufacturing, there's wholly, two wholly owned subsidiaries and the other -- I, I forget the other name, Your Honor.

THE COURT:  Okay.

MR. LOVECCHIO:  I, I think what he would like to do, and I can give him this information if, if we proceed, is he can amend the complaint to add them as operators and that's fine.  I mean, I'm not here to hide the ball or anything.

THE COURT:  Okay.

MR. LOVECCHIO:  But Miele Manufacturing, Inc. is not an operator.  They manufacture them.

THE COURT:  Alright.  Well, Mr. Samms, I think you want to consider doing that, maybe add a stipulation, changing either the name of the party or expanding, clarifying the current allegations.

MR. SAMMS:  I, I appreciate that, Your Honor, and I appreciate my colleague's courtesies.  I would just only add that doesn't necessarily mean that Miele Manufacturing would be out.  They may not be an operator but we believe they're still involved if what counsel is saying is accurate.

THE COURT:  Well, look, I'll leave that for you. I'm, I'm not going to do anything here at least for two weeks

38

so you can --

MR. SAMMS:  The only thing I have left to say about that, Your Honor, if I may interrupt and I apologize --

THE COURT:  Yes.

MR. SAMMS:  -- with respect to this, they signed an operating agreement.  Okay?

THE COURT:  Yeah.

MR. SAMMS:  And -- well, I'll just leave it at that for now.  So, I think it's, at this level, at a 12B6 level, Your Honor, obviously, the Court must accept as true all well put allegations of the complaint and it think --

THE COURT:  Well, I, I understand that.  I'm -- but I'm just -- this argument has brought up an issue whether you sue the correct defendant.

MR. SAMMS:  All I'm saying in [unintelligible] --

THE COURT:  Now, I can deny the Motion --

MR. SAMMS:  -- of course, we want to get it right but I'm just not saying that it's the other automatically.  So --

THE COURT:  Alright.

MR. SAMMS:  But I appreciate counsel and the Court.

THE COURT:  Well, I'll leave it for the two of you to discuss and, you know, if you want to make a change, you ought to either come to a stipulation or something within 14 days.  Alright?

39

MR. SAMMS:  Thank you, Your Honor.

MR. LOVECCHIO:  I'm sure we can reach a stipulation.

THE COURT:  Alright.

MR. SAMMS:  Yes.  Appreciate it.

THE COURT:  Okay.  Thank you.  Alright.  Now, going back to my questions.  Let me look a second here.  Okay.  This is question 11.  If parts one and two, would it be able to buy skill machines from a manufacturer such as defendants and host the machines at its casinos?

MR. SAMMS:  Absolutely not, Your Honor.

THE COURT:  Why not?

MR. SAMMS:  The slot machines that we use have to be approved by the, the Gaming Board.  There's got to be testing requirements.  There's return rates that have to be promised and measured and tested and proved.  You know, so absolutely not.  We cannot use their skill games in our casino.

THE COURT:  Alright.  Any defense counsel disagree with that?

MR. VOSS:  We do not.

THE COURT:  Okay.  Alright.  12.

MR. VOSS:  I, I just -- I don't know, for Court record here --

THE COURT:  Yeah.

MR. VOSS:  -- he keeps saying slot machine and the legal -- we, of course, disagree with that wholly.  They are

not illegal nor a slot machine.

THE COURT:  Alright.

MR. VOSS:  For the sake of could we put our games in their casinos as it stands, we could not because they're not licensed or [unintelligible].

THE COURT:  Alright.

MR. LOVECCHIO:  Your Honor, if I may though.

THE COURT:  Yeah.

MR. LOVECCHIO:  Nothing prevents, and I agree 100 percent with Mr. Samms, Parx cannot put that in its casinos because all of the machines have to be regulated.  And these machines are not regulated.  And that's the other Commonwealth Court case that you're aware of.  But Parx could, if they wanted to, be an operator and they could buy the machines and they could place them in Joe's Bar and Grill or they could buy the machines and place them in a fraternal club.  Nothing prevents them from being an arbitrate- an operator if they choose to be, like any other operator.  But to the extent it's a casino, they're absolutely right.

THE COURT:  Alright.  Alright, 12.  Are plaintiff's allegations related to tax fraud reliant on alleged violations of the Pennsylvania Gaming Statute?  Mr. Samms.

MR. SAMMS:  Yeah.  No, Your Honor.  The tax fraud allegations rely on the fact that the tax returns are in furtherance of the illegal slots criminal enterprise with the

wire fraud and the mail fraud claims which makes money from offering PA skill games terminals to the public, it violates the Crimes Code.  So, no, it is not.

THE COURT:  Alright, 13.  What specific allegations does plaintiff make that defendants conducted their allegedly illegal enterprise with the specific intent to harm plaintiff's business relations?

MR. SAMMS:  Yes, I would refer you, yourself and your clerk, Your Honor, to the amended complaint, specifically paragraphs 116, 155, 156 and 205.

THE COURT:  Alright.  Okay.  Thank you.  Alright. I'm not going to pursue 8 or 10 because those are legal questions and we've already spent a lot of time on this. Okay.  Here's what -- I'm going to take this under advisement.  I want to look -- I'd like to -- what is the next step in front of the Pennsylvania Supreme Court?  When will the pleadings be right for that court to decide whether it wants to take the case?

MR. VOSS:  So, initially, when an appeal is filed in the Pennsylvania Supreme Court, we have to file the jurisdiction statement, which [unintelligible].

THE COURT:  Right.

MR. VOSS:  [unintelligible] without opposing it. So, what's left with the court to decide on is does it have jurisdiction.

THE COURT:  Yes.

MR. VOSS:  In our experience, this isn't by rule, this is just by personal experience, that's usually within the first 30 to 60 days they'll know whether they have jurisdiction or not.  And there's really a couple of options for them at that point.  They can say no jurisdiction and send it back to the Commonwealth Court.

THE COURT:  Yeah.

MR. VOSS:  They can note probably jurisdiction, which is, is we're going to go forward.  Or they can say probable jurisdiction but we want you to brief jurisdiction on the merits.

THE COURT:  I see.

MR. VOSS:  So, the short answer to your question is we think in the next 30-ish days we'll know what the Supreme Court thinks about jurisdiction and then it, depending on which of those avenues they go down, [unintelligible].

THE COURT:  If they, if they accept jurisdiction, they may identify specific questions that they want appealed, isn't that correct?

MR. VOSS:  Not -- no, because this isn't an allocator (ph) case.  It's a direct right of appeal so the appellants would control the questions presented.  The Supreme Court doesn't have discretion to decide what issues [unintelligible].

THE COURT:  Alright.  Alright.  Mr. Samms, has your client made a statement of the questions?

MR. SAMMS:  We made a [unintelligible] jurisdiction statement, Your Honor.  We are still not a party in the case. That's the other big issue in respect to this case.

THE COURT:  Well, but you've asked for leave to become a party, right?

MR. SAMMS:  Correct, which they have opposed and which there was a preliminary hearing where the judge indicated she was not leaning in that direction, and just to, to let them intervene, which is, again, another issue.  And maybe counsel, is that, do you know when that is, in June or July?

MR. VOSS:  That hearing just got set yesterday and I can't for the life -- I believe it's June 15th we're going to do intervention for [unintelligible].

MR. SAMMS:  Yeah.  So, I [unintelligible] that date but thank you.  So, that issue would be -- but we're not involved in that, Your Honor.  And I think you know, getting back to kind of the whole issue of whether or not it's appropriate to put a stay or modified issue on it, I think, you know, as the Colorado River case suggested and the recent cases that have come down from the Third Circuit on the [unintelligible] issues, they've clearly stated this Court has an [unintelligible] responsibility to go forward with,

44

with these cases.  And that's what we would strongly and vehemently request.

MR. VOSS:  Your, Your Honor, if I might.  I mean, you have their jurisdictional statement.

THE COURT:  Yes.

MR. VOSS:  They have posed questions to the Supreme Court.  They have -- were not permitted to intervene before that case ended under their [unintelligible].  The Court's going to hear them on that, those questions as pertains to jurisdiction.  So, this notion that they haven't posed questions in court and the court won't hear them out, that's not procedurally active.  I'm not alleging counsel misrepresented.  It's just there's a little procedural machinations that are going to go on.

THE COURT:  Right.

MR. VOSS:  But a lot of those questions to be presented and heard perhaps the Court will say we don't want to hear them but they're before the Court.

THE COURT:  Alright.

MR. SAMMS:  Well, Your Honor, they're not before the Court.  I apologize.  This Court knows me a long time.  I would never misrepresent anything.  We are not a party so they're not going to be heard in our interest.  Period.  That's the current status.

THE COURT:  Right.  Well, you want to become a

party.

MR. SAMMS:  If they'll stipulate they'll let us in now, I'll go call the other counsel in the case.

THE COURT:  Well --

MR. SAMMS:  [Unintelligible].

MR. VOSS:  It's, it's interesting to me that they're not in the Supreme Court.  This is their docket.  It's appeal of Greenwood Gaming.

THE COURT:  Right.  I hear you.

MR. VOSS:  This is -- they're master of this case.

THE COURT:  Okay.  Alright.  Thank you very much.

MR. VOSS:  Thank you, Your Honor.

THE COURT:  Just one second.  Well, let me ask -- question three, let me ask you this.  Would any potential preclusion of those issues be limited to POM's devices or would it apply to Miele Manufacturing or Pace-O-Matic products as well?

MR. VOSS:  So --

THE COURT:  Yeah.  Mr. Voss.

MR. VOSS:  For my purposes, Pace-O-Matic is the parent company.  POM of Pennsylvania, LLC is, is the sole licensee of Pace-O-Matic's [unintelligible] so that which applies to POM is going to imply to Pace-O-Matic.  And, and for --

MR. LOVECCHIO:  As well as Miele, Your Honor.

THE COURT: Alright.

MR. LOVECCHIO: They're all the same. Miele manufactures POM devices.

THE COURT: Alright. Mr. Samms, any reply?

MR. SAMMS: Yeah, Your Honor, Parx would not be estopped from litigating issues that are the subject of the final judgment between POM and the Commonwealth. Therefore, they wouldn't be able to preclude Parx from litigating issues that are the subject of the final judgment between POM and the Commonwealth and I would say Howard Hess Dental Labs versus Dentsply International, and it's 602 fed second 237, that's a Circuit, Circuit decision.

THE COURT: Yeah.

MR. VOSS: Well, if the question is as to estoppel, their claim is we say our devices are legal, which were three for three on, in Common Pleas Court. So, literally true. Their claim is well, that's not true under the Crimes Code. Well, there is not, in those criminal cases involving us, because the Commonwealth is the only entity that can bring those cases, it doesn't mean courts aren't finding our devices are legal, which is the thing they say we are saying falsely and the thing that's, which makes us quote unquote crime bosses, which is offensive given our track history of, of success here. And let me underscore it this way. Three days before Judge Dowling [ph] issued his opinion in Common

Pleas, the state police did another pickup of our devices. These things are legal. They picked them up. Judge Dowling's opinion came out. They gave them back, they gave them back because law enforcement said we just got Judge Dowling's opinion, we're going to give them back. We're in court this morning on that pickup to, to find out whether the judge will enter an opinion and he may have done on, on that subsequent pickup.

THE COURT: Alright.

MR. VOSS: But the point remains law enforcement decides whether these things are illegal and they have made those decisions. They've lost in court. They continue to lose in court and while they're not parties of those cases other than a matter of judicial stop that may not apply, it's absolutely going to go to the core of truth under the Lanham Act and legality [unintelligible].

THE COURT: Alright.

MR. SAMMS: Your Honor, in order to be estopped, it has to be the same issue. They are still hung up on the skill versus chance issue with these midwestern and western parts of the state's seizures. They are not presenting the issue that we are with respect to the reading of the statutes together that makes whether they are skill games or chance games illegal slots. And that has never been decided by any Court of Common Pleas, Your Honor.

48

MR. VOSS:  That, that's true as decided by the Commonwealth Court and the issue in on appeal.

THE COURT:  Alright.  Well, I, I have to interpret.

MR. VOSS:  [Unintelligible].

THE COURT:  Alright.  One -- I'm going to get the last word.  Either counsel are -- if any decisions come down that touch upon what we've been discussing here today, I would like you to send me a letter just with the citation.  Mr. Voss, you did that on March 24th.  So, I, I want to be up to date if anything comes down.  Now -- and I -- just because of other things I have going on and a trial I have next week, I will not be issuing any opinion on this for the next two weeks.  So, if -- and if you have any agreements as to Miele, you can document those as well.  I think it'd be in the interest of everybody to be accurate as to the named defendants.

MR. SAMMS:  We agree, Your Honor.  Thank you.

THE COURT:  If you can come to an agreement about that.  Okay.  Thank you very much for coming in and very interesting argument.  Appreciate it.

MR. VOSS:  Thank you, Your Honor.

THE COURT:  The Court is adjourned.  Thank you.

(Court adjourned at 12:06 p.m.)

CERTIFICATE

I, Pam Flores, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Pam Flores*

June 22, 2023